IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 05-297C |
| | : | (Senior Judge Margolis) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Sterling, Winchester & Long, L.L.C., respectfully submits this brief in support of its motion for summary judgment.

STATEMENT OF MATERIAL FACTS

The material facts upon which SWL bases its motion, as set forth with record citations in Plaintiff's Proposed Findings of Uncontroverted Fact, are as follows:

In March 2000, Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), submitted to the United States Postal Service ("USPS") an unsolicited proposal to produce official, licensed USPS calendars. After receiving that proposal, USPS referred SWL to Equity Management, Inc. ("EMI"), which USPS indicated was USPS' agent for negotiating agreements involving the sale of products bearing USPS copyrighted images or marks. EMI was under contract with USPS to assist in negotiating and developing a contract with SWL.

SWL entered into negotiations with EMI and provided EMI with information indicating that SWL planned to use USPS facilities as distribution channels for SWL's calendars. During the negotiations, EMI indicated that USPS branch post offices could not be included as a distribution channel.

USPS owns and operates Philatelic Centers that mainly cater to stamp collectors and offer for sale Philatelic products. A Philatelic Center operated by USPS is not considered the same thing as a post office or a branch post office. A Philatelic Center can be either a building, or a designated window, or the USPS fulfillment service office in Kansas City, which is a mail order center that supports stamp collectors. Each Philatelic Center is controlled 100% by USPS.

According to USPS Publication 32, "Glossary of Postal Terms," "philatelic center" is defined as follows: "A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called *Postique*, which is a USPS trademark.)"

USPS publishes a quarterly Philatelic Catalog. Products are offered for sale in the USPS Philatelic Catalog. The USPS Philatelic Catalog is controlled 100% by USPS.

In December 2000, SWL requested that USPS Philatelic Centers be included as a distribution channel. Robin Stemen of EMI, the principal drafter of the Contract between USPS and SWL, agreed to that request and sent SWL a proposed agreement that added "Philatelic centers" as a distribution channel.

On January 31, 2001, USPS executed USPS Contract No. 102592-01-U-1173 ("the Contract"). SW&L had signed the Contract earlier on January 4, 2001. The

Contract was executed on behalf of USPS by its contracting officer, H. Diane Fagan. Ms. Fagan read the Contract before she executed it. At the time she executed the Contract, Ms. Fagan was familiar with USPS Publication 32.

The Contract "grants to [SWL] a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods . . . ," subject to additional terms in the Contract.

Paragraph 2(a) of Exhibit B to the Contract authorizes SWL "to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles … ."

Paragraph 2 of the Contract identifies the "Licensed Articles" as follows: "An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commencing with calendar year 2002."

The Contract authorizes SWL to distribute the Licensed Articles through certain "Channels of Distribution," which Paragraph 5 of the Contract identifies to include the following: "Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores … ."

On March 2, 2001, J.G. Long of SWL contacted USPS Contracting Officer Diane Fagan about making arrangements for the distribution of SWL's calendars through the USPS Philatelic Centers and Philatelic catalog identified in the Contract as distribution channels for SWL's calendars. Ms. Fagan told Mr. Long that those USPS distribution channels should not have been included in the Contract and that they were not available, and would not be available, to SWL for the distribution of SWL's calendars.

After Mr. Long's March 2, 2001, conversation with Contracting Officer Fagan, SWL continued to seek access to the USPS distribution channels identified in the Contract, but USPS refused to allow SWL to use those USPS distribution channels in any way. By letter to USPS and EMI dated November 23, 2001, SWL again requested immediate access to the USPS Philatelic Centers and Philatelic Catalog and advised USPS that SWL considered denial of access to those distribution channels to be a breach of the Contract. USPS has continued to refuse access by SWL to those USPS distribution channels.

ARGUMENT AND CITATION OF AUTHORITIES

It is an undisputed fact that USPS has refused to allow SWL to use USPS Philatelic Centers and Philatelic Catalog for distribution of SWL's calendars. Thus, if the Contract authorizes SWL to use those "distribution channels," then USPS obviously has breached the Contract.

Contract interpretation begins with the language of the written agreement. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir.1993). When the contractual language is unambiguous on its face, the plain language of the Agreement controls. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040-1041 (Fed.Cir. 2003). The language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances. *Metric Constructors, Inc. v. NASA, 169 F.3d 747, 752 (Fed. Cir. 1999).*

Exhibit B, paragraph 2(c)(2) of the Contract provides that SWL "undertakes to make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles through the Channels of Distribution specified in the [Contract]." Paragraph 5 of

the Contract identifies those "channels of distribution" to include "Philatelic catalogs, Philatelic centers and merchandise stores … ."

During the negotiations with EMI, SWL requested that USPS Philatelic Centers be included as a distribution channel. EMI agreed to that request and revised Paragraph 5 of the Contract to add "Philatelic centers" as one of the authorized distribution channels.

USPS Publication 32, "Glossary of Postal Terms," defines the term "philatelic center" to be: "A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called *Postique*, which is a USPS trademark.)" USPS in fact owns and operates such Philatelic Centers that offer for sale philatelic products. At the time she executed the Contract, Contracting Officer Fagan was familiar with USPS Publication 32.

Paragraph 5 of the Contract also identifies "Philatelic catalogs" as an authorized distribution channel. USPS publishes a quarterly "Philatelic Catalog" that offers products for sale.

When SWL contacted Contracting Officer Fagan about making arrangements to use the USPS Philatelic Centers and Philatelic Catalog to distribute SWL's calendars, Ms. Fagan refused to give SWL any access to those USPS-controlled distribution channels on the basis that they "should not have been included" in the Contract. As Ms. Fagan's response clearly recognizes, however, the Philatelic Centers and Philatelic Catalog were included in the Contract as authorized distribution channels, notwithstanding Ms. Fagan's view about whether they should have been included.

The Contract unambiguously authorizes SWL to use "Philatelic catalogs" and "Philatelic centers" as distribution channels for SWL's calendars. A "reasonably intelligent person acquainted with the contemporaneous circumstances," *Metric Constructors, supra*, must conclude that such language authorizes SWL to use as distribution channels the "Philatelic catalogs" published by, and the "Philatelic centers" owned and operated by, the other contracting party, USPS. By refusing to permit SWL to use those authorized distribution channels, USPS breached the Contract.

## CONCLUSION

The plain and unambiguous language of the Contract authorizes SWL to use the Philatelic Centers and Philatelic Catalog controlled by USPS for distribution of SWL's calendars. USPS has refused, however, to permit SWL to use those authorized "channels of distribution." Therefore, USPS has breached the Contract. Accordingly, SWL respectfully requests that the Court grant its motion for summary judgment as to liability on SWL's breach of contract claim.

This 31st day of October, 2007.

Respectfully submitted,

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax

Attorneys for Plaintiff

CERTIFICATE OF FILING

I hereby certify that on October 31, 2007, a copy of the foregoing Brief in Support of Plaintiff's Motion for Summary Judgment was filed electronically. I understand the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax