IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | : | |
| Plaintiff, | : | |
| v. | : | No. 05-297C |
| | : | (Senior Judge Margolis) |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Plaintiff, Sterling, Winchester & Long, L.L.C., pursuant to RCFC 56(h)(1), submits the following proposed findings of uncontroverted fact:

1. In March 2000, Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), submitted to the United States Postal Service ("USPS") an unsolicited proposal to produce official, licensed USPS calendars. After receiving that proposal, USPS referred SWL to Equity Management, Inc. ("EMI") (Defendant's Answer ¶ 16), which USPS indicated was USPS' agent for negotiating agreements involving the sale of products bearing USPS copyrighted images or marks. (Affidavit of John G. Long ¶ 3).

2. EMI was under contract with USPS to assist in negotiating and developing a contract with SWL. (Defendant's Answer ¶ 7).

3. SWL entered into negotiations with EMI and provided EMI with information indicating that SWL planned to use USPS facilities as distribution channels

for SWL's calendars. During the negotiations, EMI indicated that USPS branch post offices could not be included as a distribution channel. (Affidavit of John G. Long ¶ 4).

4. USPS owns and operates Philatelic Centers that mainly cater to stamp collectors and offer for sale Philatelic products. (Deposition of Cindy L. Tackett, at 20-21, attached hereto as Exhibit 1).

5. A Philatelic Center operated by USPS is not considered the same thing as a post office or a branch post office. (Deposition of H. Diane Fagan, at 25, attached hereto as Exhibit 2; Deposition of Robin R. Pacheco, at 36, attached hereto as Exhibit 3).

6. A Philatelic Center can be either a building, or a designated window, or the USPS fulfillment service office in Kansas City, which is a mail order center that supports stamp collectors. (Deposition of Cindy L. Tackett, at 19-20, attached hereto as Exhibit 1).

7. Each Philatelic Center is controlled 100% by USPS. (Deposition of Cindy L. Tackett, at 25, attached hereto as Exhibit 1).

8. According to USPS Publication 32, "Glossary of Postal Terms," "philatelic center" is defined as follows: "A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called *Postique*, which is a USPS trademark.)" (See excerpted copy of Publication 32 attached hereto as Exhibit 5).

9. USPS publishes a quarterly Philatelic Catalog. (Deposition of Cindy L. Tackett, at 30, attached hereto as Exhibit 1).

10. Products are offered for sale in the USPS Philatelic Catalog. (Deposition of Cindy L. Tackett, at 29, attached hereto as Exhibit 1).

11. The USPS Philatelic Catalog is controlled 100% by USPS. (Deposition of Cindy L. Tackett, at 25-27, attached hereto as Exhibit 1).

12. Robin Stemen, an attorney employed by EMI, was the principal drafter of the Contract between USPS and SWL. (Deposition of Robin Stemen, at 12-13, attached hereto as Exhibit 4).

13. In December 2000, SWL requested that USPS Philatelic Centers be included as a distribution channel. Robin Stemen of EMI agreed to that request and sent SWL a proposed agreement that added "Philatelic centers" as a distribution channel. (Affidavit of John G. Long ¶ 5).

14. On January 31, 2001, USPS executed USPS Contract No. 102592-01-U-1173 ("the Contract"). SW&L had signed the Contract earlier on January 4, 2001. (Complaint ¶ 6; Defendant's Answer ¶ 6).

15. A true and correct copy of the Contract is attached to the Affidavit of John G. Long as Exhibit A. (Affidavit of John G. Long ¶ 6).

16. The Contract was executed on behalf of USPS by its contracting officer, H. Diane Fagan. Ms. Fagan, read the Contract before she executed it. (Deposition of Diane Fagan, at 18, attached hereto as Exhibit 2). At the time she executed the Contract, Ms. Fagan was familiar with USPS Publication 32. (Deposition of Diane Fagan, at 22, attached hereto as Exhibit 2).

17. The Contract "grants to [SWL] a license to use certain names, trademarks,

service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods . . . ,” subject to additional terms in the Contract. (Affidavit of John G. Long, Exhibit A at 1).

18. The Contract authorizes SWL “to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles … .” (Affidavit of John G. Long, Exhibit A at 8).

19. The Contract identifies the “Licensed Articles” as follows: “An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commencing with calendar year 2002.” (Affidavit of John G. Long, Exhibit A at 1).

20. The Contract authorizes SWL to distribute the Licensed Articles through certain “Channels of Distribution,” which include the following: “Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores … .” (Affidavit of John G. Long, Exhibit A at 1).

21. On March 2, 2001, J.G. Long of SWL contacted USPS Contracting Officer Diane Fagan about making arrangements for the distribution of SWL’s calendars through the USPS Philatelic Centers and Philatelic catalog, both of which are identified in the Contract as distribution channels for SWL’s calendars. Ms. Fagan told Mr. Long that those USPS distribution channels should not have been included in the Contract and that they were not available, and would not be available, to SWL for the distribution of SWL’s calendars. (Affidavit of John G. Long ¶ 7; Complaint ¶ 19; Defendant’s Answer ¶ 19).

22. After Mr. Long's March 2, 2001, conversation with Contracting Officer Fagan, SWL continued to seek access to the USPS distribution channels identified in the Contract, but USPS refused to allow SWL to use those USPS distribution channels in any way. (Affidavit of John G. Long ¶ 8).

23. By letter to USPS and EMI dated November 23, 2001, SWL again requested immediate access to the USPS Philatelic Centers and Philatelic Catalog and advised USPS that SWL considered denial of access to those distribution channels to be a breach of the Contract. (Affidavit of John G. Long ¶ 9 & Exhibit B thereto). Thereafter, USPS continued to refuse access by SWL to those USPS distribution channels. (Affidavit of John G. Long ¶ 9; Complaint ¶ 22; Defendant's Answer ¶ 22)).

This 31st day of October, 2007.

Respectfully submitted,

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax

Attorneys for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STERLING, WINCHESTER & LONG, )
L.L.C., )
Plaintiff )No. 05-297C
vs. )
UNITED STATES OF AMERICA )
Defendant )

Deposition of Cindy L. Tackett

Washington, D.C.

July 27, 2007

Reported by: Bonnie L. Russo

JOB NO. 182392

P-R-O-C-E-E-D-I-N-G-S

CINDY L. TACKETT,

being first duly sworn, to tell the truth, the whole truth and nothing but the truth, testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. WRIGHT:

Q. Would you state your name, please.

A. Cindy Lee Tackett.

Q. And what's your address, Ms. Tackett?

A. My home address?

Q. Yes, please.

A. 8331 Idulwood, I-d-u-l-w-o-o-d Road, Vienna, Virginia 22182-5139.

Q. Are you currently employed?

A. Yes, sir.

Q. By whom?

A. United States Postal Service.

Q. And you consent today to testify on behalf of the defendant in this lawsuit?

A. (Witness nodding head.)

the plaintiff, Sterling, Winchester & Long and the postal service that is the subject matter of this case?

A. No.

Q. And you have no -- not necessarily just firsthand knowledge, but you don't really know anything about that agreement?

A. (Witness shaking head.)

No.

Q. You've got to state your answer.

A. Oh. No, I don't.

Q. Okay. Can you just explain to me generally -- and to the extent you have already touched on this, I apologize. But I would -- if you don't mind, would you just explain generally what is a Philatelic Center as operated by the postal service?

A. Okay. A Philatelic Center can be one of several things. It could be a designated building. It could be a designated window. Or it could be our Philatelic -- our Stamford fulfillment service office in Kansas

City is a mail order center that supports stamp collectors.

But what mainly the Philatelic Centers do is they cater to stamp collectors. They have the current stamp issues and older stamp issues available in the facility and they also sell them, I guess you could say, in plate box and different formats that collectors usually like to buy their stamps in. But it's primarily, you know -- at Philatelic Centers, some of the things that collectors look for is the centering of stamps and the perforations and the different formats of a stamp issue. Because sometimes we issue one stamp image, but in many different formats. It could be a paint of stamps; it could be a booklet of stamps; it could be a coil, and so collectors collect different formats of all those.

Q. Do the Philatelic Centers offer for sale any products other than stamps themselves?

A. They offer Philatelic products, which Philatelic products primarily they have

stamps in the products. Okay? The only exception to that would be this Postal Service Guide to U.S. Stamps, which is a Philatelic product and it doesn't have stamps. It depicts all the stamps that we have ever issued by the postal service.

This publication depicts every single stamp we have ever issued in it.

Q. Oh, really?

A. It lists it by prices. It has prices in it. We use Scott's pricing for collectors to use as they are valuing their collections and stuff.

Q. Uh-huh.

So that guide, the guide that you lists every -- depicts every stamp ever issued by the postal service?

A. Right. That's why it's the annual publication. Every year we add the next year's in there and we have to change the values.

Q. So it gets bigger every year?

A. It gets bigger every year.

Q. So the stamp would come separately. It would all be part of the sale, but it would be a poster and a stamp?

A. Right. Together.

Q. Separate?

A. Right.

Q. Okay. All right. So to the best of your knowledge, then, are there any other products that do not consist of stamps themselves that have been sold in the Philatelic Centers, other than what you have already mentioned?

A. Not that I'm aware of.

Q. Okay. The Philatelic Centers that are listed there on -- in Exhibits 101 through 105, those -- each one of those is 100 percent controlled by the postal service; is that correct?

A. Correct.

Q. Now, are you familiar with a Philatelic catalog published by the postal service?

A. Uh-huh. Yes. That comes out of our office.

Q. And is that also 100 percent controlled by the postal service?

MS. EWUSI-MENSAH: I would just interpose an objection, that the topic that she's -- was prepared to speak about are specifically Philatelic Centers and not the Philatelic catalog that was in that topic. So she can speak as to her personal knowledge, but that testimony would be all.

MR. WRIGHT: Oh, I agree. I just -- since she said she's familiar with it I thought --

MS. EWUSI-MENSAH: I just want the record to be clear that that is only as to her personal knowledge, not on behalf of the postal service.

MR. WRIGHT: That's fine.

THE WITNESS: Okay. The question?

Am I familiar with the catalog, yes, I am.

BY MR. WRIGHT:

Q. And is the catalog, as you understand it, controlled 100 percent by the postal service?

A. Yes, it is.

Q. Did you say your office is in charge of the catalog?

A. Our -- yeah. We -- our office, stamp services produces the catalog and the fulfillment house, which is our -- out of Kansas City, falls under stamp services, which is part of our group.

Q. Now, what's the purpose of the catalog?

A. The catalog is another channel in order for collectors to purchase their stamps. The catalogs mailed on a quarterly basis to a mailing list, usually the collectors that purchase the stamps through the catalog. They get the catalog on a quarterly basis. And then also we send it to like stamp shows and things like that for people to use as reference.

ask you this: Are products offered for sale in the Philatelic catalog?

A. Are products offered for sale?

Q. Yes, ma'am.

A. Yes.

Q. What kinds of products are offered for sale in the catalog?

A. There are Philatelic products. There is -- each of the formats of the stamps, every time we issue a stamp, there's many different formats. There are what we call first day covers. Well, they're Philatelic products. Commemorative -- there are first day issue covers, which are Philatelic products. We sell those in there postmarked. They have the actual first day of issue postmark on them.

And then other Philatelic products that our department produces, meaning year books. We have an annual yearbook that includes each of the stamps that are issued in a commemorative yearbook, each of the stamps that are issued for that year. We sell that

product and we sell other topical products based on -- you know, we have stamped cards. We have stamped stationery. We have -- lets see, what else do we have in there? I'm trying to make a visual -- oh, we sell subscription programs to our collectors. We have American commemorative collectibles program offers collectors opportunities to subscribe to programs. We sell that in there.

Q. Okay. And it's published quarterly?

A. Yes.

Q. Is there any version of the catalog available for viewing online?

A. No, not yet. Eventually there will be. We have been working on that.

Q. Okay. What about -- let me just jump back really quickly to these lists of Philatelic Centers. I know that only went up through 2003.

Could one find similar lists in the guides for the subsequent years, 2004 through 2007?

IN THE UNITED STATES COURT

OF FEDERAL CLAIMS

-----------------------------------x

STERLING, WINCHESTER & LONG, LLC )

Plaintiff ) Case No.:

v.

) 05-297C

UNITED STATES OF AMERICA, )

Defendant ) PAGES 1-38

-----------------------------------x

DEPOSITION OF HORATIA DIANE FAGAN

Thursday, July 13, 2006

Washington, DC

Reported by: Sherry L. Brooks

Job No. 175664

P R O C E E D I N G S

HORATIA DIANE FAGAN

was called for examination by counsel and, after having been duly sworn by the Notary, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. WRIGHT:

Q. Would you state your name, please?

A. Horatia Diane Fagan.

Q. All right. Thank you, Ms. Fagan. I've never met you before until just right now. My name is Fred Wright and I represent the Plaintiff in this case, Sterling, Winchester & Long, and I just am going to ask you some questions. Have you ever had your deposition taken before?

A. Not that I remember.

Q. Well, I'm just going to ask you some questions and I don't want to in any way mislead or confuse you, so if you don't understand what I'm asking you, please just say so, okay?

A. I will.

Q. I am trying to communicate clearly, even

though at times it might not seem that way to you. What's your address, please?

A. 5013 East Capitol Street, Southeast, Washington, DC 20019-5327.

Q. All right. Thank you. You, as I understand, are no longer employed by the US Postal Service; is that correct?

A. Correct.

Q. When did your employment at the postal service terminate?

A. I retired January 30th, 2002.

Q. And how long had you been employed at the postal service?

A. 33 1/2 years.

Q. I don't want to cover 33 1/2 years in great detail, but if you would, please, just tell me when you started, what your position was, and how you progressed during -- just basically, you know, what jobs you held during your time with the postal service.

A. Okay. I was hired on September 16th, 1968 as a clerk-typist. I moved from clerk-typist to

all right, I just sign it. If I had any questions about it, then I would go back to Pam York's group and ask questions.

Q. Okay. Do you recall with respect to this particular agreement what you did once it came to you whether you did any of those things, called, asked any questions, anything like that?

A. No, I don't. I don't remember.

Q. Okay. Do you recall reading the agreement before you signed it?

A. I'm quite sure I did.

Q. Okay. Do you not recall whether you had any questions about it or do you recall that you did not have any questions about it?

A. I don't recall whether I had any questions about it.

Q. Okay. Before you signed the contract, did you discuss with anyone for any reason the Paragraph 5 as it appears on the first page of Plaintiff's Exhibit 1, the channels of distribution provision?

A. I don't remember.

Q. Okay. At the time that you signed the

A. Yes, I did.

Q. At the time that you signed Plaintiff's Exhibit 1 -- well, in fact, let's come at this more directly. Let me hand you what's been marked Plaintiff's Exhibit 6, and you can see there it says -- on its face on the first page that it says glossary of postal terms, May 1997, Publication 32. Are you familiar with that?

A. Not offhand. I would have to see it, but not offhand. Publication 32, Corporate Publishing, if I saw a copy of it, I could tell you.

Q. Well, I don't have, of course, a nice -- the way that it comes I'm sure when it's printed, but I do have, if you want to look at it, something I printed off of the internet, which is the entire glossary of postal terms. That's not an exhibit. I was handing it to you to let you look at it.

MR. WRIGHT: If anyone wants to make it an exhibit, we can.

MS. FLOYD: Yes. Can we make it an exhibit?

MR. WRIGHT: Sure. That's the only copy

I've got with me, but we can --

MS. FLOYD: Sure. We can make a copy at a break.

MR. WRIGHT: Sure. That's no problem.

THE WITNESS: Yes, I'm familiar with this.

BY MR. WRIGHT:

Q. Were you familiar with that at the time that you signed Plaintiff's Exhibit 1?

A. Yes.

Q. All right. If you would turn in there --

MR. WRIGHT: We will make that an exhibit, and I think it's going to be 59. Let's just go ahead and do that right now. Can we put a sticker on there right now and just mark that 59?

(Exhibit Number 59 was marked for identification and was attached to the deposition.)

BY MR. WRIGHT:

Q. All right. We've now marked that document that I handed you as Plaintiff's Exhibit 59, which is a Postal Service Publication 32. If you would turn to -- I don't know what page it is, but it's in alphabetical order of course -- the P section. It's

Q. I guess my question just simply is, based on what you understand that definition of philatelic center to be in Plaintiff's Exhibit 59, would you understand a philatelic center to be the same thing as a branch post office?

A. Would I believe -- say that again.

Q. That's fine. Based on the definition that you have read in Plaintiff's Exhibit 59, the definition of philatelic center, do you understand that a philatelic center, as defined in Plaintiff's Exhibit 59, would be the same thing as a branch post office?

A. No.

Q. All right. Now, after the contract was signed, at some point you were contacted by Mr. Long, J.G. Long with Sterling, Winchester & Long, about placing calendars in postal service facilities. Is that true?

A. I believe I talked to him one time after --

Q. I mean --

A. -- the contract.

IN THE UNITED STATES COURT

OF FEDERAL CLAIMS

-----------------------------------x

STERLING, WINCHESTER & LONG, LLC )

Plaintiff ) Case No.:

V.

) 05-297C

UNITED STATES OF AMERICA, )

Defendant ) PAGES 1-106

-----------------------------------x

DEPOSITION OF ROBIN RENEE PACHECO

Wednesday, July 12, 2006

Washington, DC

Reported by: Sherry L. Brooks

Job No. 175663

P R O C E E D I N G S

ROBIN RENEE PACHECO

was called for examination by counsel and, after having been duly sworn by the Notary, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. WRIGHT:

Q. Would you state your name, please?

A. Robin Renee Pacheco.

Q. Ms. Pacheco, as we've been introduced shortly before we began today, I'm Fred Wright and I represent the Plaintiff in this lawsuit, Sterling, Winchester & Long, against the postal service, and I just want to ask you a few questions today.

Some of it may seem silly to you that I would have to ask you that, but I'm just trying to establish a record just to establish what the facts are of the case, okay?

So if you don't understand any of my questions, please just tell me and I'll try to rephrase it. I'm not trying to be in any way confusing or anything like that. I want us to

communicate clearly and just to find out what you know, okay?

A. Okay.

Q. Would you state your address, please?

A. My home address?

Q. Yes.

A. 5313 Holiday Court, Fort Worth, Texas 76180.

Q. Now, you're currently employed by the postal service?

A. Yes, sir.

Q. And of course anytime I say postal service, you'll understand that I mean the United States Postal Service, right?

A. Yes, sir.

Q. When were you first employed by the postal service?

A. I believe it was 1984.

Q. And what was your position at that time?

A. Rural carrier relief or RCR.

Q. What does that mean?

A. I was a temporary rural carrier. I

A. Yes, sir.
Q. And are you saying that until I handed that to you just now you had never even seen this?
A. I have not seen this.
Q. And you were not aware that the postal service had a publication that defined the term philatelic center?
A. No.
Q. Okay. So I mean -- I know this answer seems like it might be obvious, but let me just ask you: Is it fair to say, then, that you do not know how many philatelic centers are operated by the postal service?
A. No, I do not know.
Q. Do you know whether a philatelic center operated by the postal service is considered the same thing as a post office?
A. No. They are not.
Q. Do you know whether a philatelic center operated by the postal service is the same thing as a branch post office?
A. No. It is not.

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., Plaintiffs, | ) | |
| vs. | ) | Case No. 05-297C |
| UNITED STATES, Defendants. | ) | |

DEPOSITION OF ROBIN STEMEN

San Diego, California

Wednesday, April 26, 2006

Reported by:
FRAUKE KUO
CSR No. 6283

JOB No. SD42449/ATL4340889

Hillyer & Irwin, which is a local law firm in San Diego, and I left there to join EMI.

Q. Okay. You have at least some general understanding of what this lawsuit that we are here today for involves; do you not?

A. I have a general understanding, yes.

Q. Would you just explain for me what that understanding is.

A. It's my understanding that the plaintiff believes the Postal Service has breached the License Agreement and has brought a lawsuit on that basis.

Q. And let me hand you --

MR. WRIGHT: Let's just go off the record for one second.

(Off the record.)

MR. WRIGHT: All right.

(Plaintiff's Exhibit No. 1 was marked for identification by the court reporter.)

BY MR. WRIGHT:

Q. Let me hand you what I have marked as Exhibit SWL 1.

A. (The witness complied.) I don't believe that -- this is SWL and the date.

Q. Okay.

The document is now marked SWL 1, and I ask you

if that is the License Agreement that you just referred to in your answer, I believe, to my previous question.

A. Yes, it is.

Q. Would it be fair to say that you were the principal draft person -- draftsperson -- you were the principal drafter of SWL 1?

A. Yes.

Q. And by that I don't mean to include any attachments, or exhibits, or anything that may be incorporated, but just the first five pages of the document.

A. In large part, yes.

Q. This is an agreement between the United States Postal Service and Sterling, Winchester & Long; right?

A. Correct.

Q. Now, would you explain why EMI was involved in the drafting of this agreement, since EMI was not party to the agreement.

A. EMI and United States Postal Service entered into an agreement whereby EMI was responsible for managing the USPS licensing program.

Q. And as a part of that relationship between EMI and USPS -- when you say "USPS," that's shorthand for United States Postal Service --

A. Yes.

UNITED STATES
POSTAL SERVICE®

# Glossary of Postal Terms

Publication 32 May 1997

A. **Purpose.** This glossary defines words and phrases that are unique to, or have special meanings within, the U.S. Postal Service. Automatic data processing terms that are specific to the Postal Service have also been incorporated. This glossary does not provide comprehensive or precise legal definitions. In any contradiction between a term in this glossary and a Postal Service directive, the directive supersedes the definition.

B. **Requisition.** To obtain additional copies submit Form 7380, *MDC Supply Requisition*, to your material distribution center.

C. **Questions and Comments.** Questions and comments, including suggestions for a term that you wish to be included in future editions, should be sent to:

PUBLICATION 32 EDITOR
CORPORATE PUBLISHING & INFORMATION MANAGEMENT
US POSTAL SERVICE
475 L'ENFANT PLZ SW RM 2800
WASHINGTON DC 20260-1540

D. **Cancellations.** All previous issues of Publication 32 and Publication 32-A are obsolete.

E. **Effective Date.** This publication is effective May 1997.

Richard D Weirich

*Richard D. Weirich*
*Vice President*
*Information Systems*

Exhibit for identification
No. 6
Frauke Kuo, N.P.
Date: 4/26/06
Deponent: R. STEMEN

SWL
6

SWL 1389

# Glossary of Postal Terms

Publication 32, *Glossary of Postal Terms,* defines words and phrases that are unique to, or have special meanings within, the U.S. Postal Service. This glossary does not provide comprehensive or precise legal definitions. In any contradiction between a term in this glossary and a current USPS directive, the directive supersedes the definition. Publication 32-A, *USPS Glossary of ADP Terms,* is now obsolete. Postal-specific automatic data processing terms have been incorporated into this version of Publication 32.

This glossary was first published in 1974 and has been updated several times since then to reflect the changing terminology and technology within the USPS. Most obsolete terms have been deleted, but others that might still appear in print are retained and cross-referenced to the current term. Moreover, many new terms have been added.

If you wish to suggest a term to be included in future editions, send the term and definition to:

PUBLICATION 32 EDITOR
CORPORATE PUBLISHING & INFORMATION MANAGEMENT
US POSTAL SERVICE
475 L'ENFANT PLAZA SW RM 2800
WASHINGTON DC 20260-1540
Fax (202) 268-2839

## Capitalization

Terms that are the equivalent of proper names or represent code words are capitalized; terms that are general — applying to a group or category — are not capitalized. For example, the proper names of specific systems, services, and computer programs are capitalized herein, as are the names of specific committees and boards. However, most entries

# P

**philatelic center** — A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called *Postique,* which is a USPS trademark.)

**Philatelic Fulfillment Service Center** — A postal unit that supplies philatelic product orders (stamps and other products) by subscription or mail/telephone order. It also handles orders for personalized imprinted stamped envelopes and applies the first-day-of-issue stamp and other special cancellations. It is located in Kansas City, MO.

**philately** — The collection and study of the postage stamp and postal stationery for pleasure and profit.

**pickup service** — A service available for a fee from designated post offices for Parcel Post (if scheduled); Priority Mail at single-piece rates; and certain types of Express Mail.

**pickup table** — (See *facing table.*)

**pictorial cancellation** — (See *hand-stamped cancellation.*)

**pie cart/pie rack** — (informal) (See *tray cart.*)

**piece** — An individually addressed mailpiece. This definition also applies when piece is used in eligibility standards. Quantities indicated for optional or required sortations always refer to pieces unless specifically excepted.

**piece count** — A calculation of mail volume that provides the actual number of mailpieces processed. It is generated by machine meter, machine printouts, or actual counts. If these methods are not feasible, the weights, number of containers, or linear feet of mail are multiplied by a national conversion factor to determine the number of mailpieces.

**piece rate** — In bulk mail, the postage charged for each mailpiece in addition to the pound rate charge, if applicable, for the entire mailing.

**pigeonhole** — One opening or section for sorting mail into a distribution case.

**piggyback** — To move a single tractor-trailer onto a special rail flatcar. (Also called *trailer-on-flatcar service.*)

CERTIFICATE OF FILING

I hereby certify that on October 31, 2007, a copy of the foregoing Plaintiff's Proposed Findings of Uncontroverted Fact was filed electronically. I understand the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax