No. 05-297C
(Senior Judge Margolis)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STERLING, WINCHESTER & LONG, L.L.C.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

January 28, 2008

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Standard for Granting Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 5

B. The Plain Meaning Of A Contract Prevails . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Plain Language Of The License Agreement Does Not Grant SWL A Right Of Access To USPS Philatelic Centers And The USA Philatelic Catalog . . . . . . . . . 7

A. The License Agreement Merely Grants An Intellectual Property License 7

B. The License Agreement Does Not Refer To USPS Philatelic Centers Or The USA Philatelic Catalog . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C. The License Agreement Contains No Grant Of Access To Distribution Channels . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Consideration Of The Extrinsic Evidence, Should The Court Find It Necessary, Confirms That The License Agreement Did Not Grant SWL A Right Of Acess To Distribution Through USPS Philatelic Centers Or The USA Philatelic Catalog . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV. The United States Is Entitled To Summary Judgment In Its Favor On Its Counterclaim As SWL Has Failed To Pay The Royalties Required By The License Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

APPENDIX

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 5

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 5

City of Oxnard v. United States,
331 F.3d 891 (Fed. Cir.2003) . . . . . . . . . . 6, 14

Coast Federal Bank, FSB v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . . . . . . 6, 7

Corbetta Construction Co. v. United States,
461 F.2d 1330 (Ct. Cl. 1972) . . . . . . . . . . 6

Cray Research, Inc. v. United States,
44 Fed. Cl. 327 (1999) . . . . . . . . . . 6, 7

Curtis v. United States,
168 F. Supp. 213 (1958) . . . . . . . . . . 6

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996) . . . . . . . . . . 6

Hol-Gar Manufacturing Corp.,
351 F.2d 972 (Ct. C. 1965) . . . . . . . . . . 6

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . 6, 7

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . 5

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 5

Tulelake Irrigation District v. United States,
342 F.2d 447 (Ct. Cl. 1965) . . . . . . . . . . 7

United Int'l Investigative Serv. v. United States,
109 F.3d 734 (Fed. Cir. 1997) . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-297C (Senior Judge Margolis) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor and deny the plaintiff's motion for summary judgment because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon the pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Facts.[1]

---

[1] Sterling, Winchester & Long, LLC's Proposed Findings of Uncontroverted Fact will be cited as "Pl. F. ¶ _." Its exhibits will be cited as "Pl. Ex. _." Its motion will be cited as "Pl. Mot. _." Our Proposed Findings of Uncontroverted Fact will be cited as "Def. F. ¶ _." The exhibits set forth in the Appendix filed herewith will be cited as "Ex. _." Page numbers from the Appendix will be referred to as "A_." Although Sterling, Winchester & Long, LLC has included a copy of the License Agreement in its Appendix, we have reproduced the License Agreement as Exhibit 1 of our Appendix because the version of Sterling, Winchester & Long, LLC's Appendix available through the ECF system contains an ECF stamp across the middle of the page, rendering some of the text illegible. Parallel citations to our Appendix will be contained in square brackets.

## QUESTIONS PRESENTED

1. Is Sterling, Winchester & Long, LLC's claim precluded by the plain meaning of the License Agreement which only grants it intellectual property rights and not distribution access or sales?

2. Does the extrinsic evidence confirm the plain meaning of the License Agreement?

3. Did Sterling, Winchester & Long, LLC breach the License Agreement by failing to make the royalty payments set forth in the License Agreement?

## STATEMENT OF THE CASE

### I. Nature Of The Case

Sterling, Winchester & Long, LLC ("SWL"), executed a trademark license agreement with the United States Postal Service ("USPS" or "Postal Service") permitting SWL to use USPS intellectual property in connection with a calendar SWL intended to sell commercially. The License Agreement limited the exercise of the license to certain specified "Channels of Distribution," but did not grant access to distribution through those channels. Nevertheless, after the License Agreement was executed, SWL claimed that the "Channels of Distribution" were intended to grant SWL the right to access to distribution through certain USPS facilities, namely the USPS Philatelic Centers and the USA Philatelic Catalog. SWL has brought suit alleging that USPS breached the License Agreement by failing to permit it access to distribution through the USPS Philatelic Centers and the USA Philatelic Catalog, even though the License Agreement contains no reference to "USPS Philatelic Centers" or the "USA Philatelic Catalog."

SWL then breached the License Agreement by ceasing all of the royalty payments to the Postal Service required under the Agreement after being informed it would not be granted access to distribution through USPS facilities. The United States has brought a counterclaim seeking recovery of those unpaid royalties.

## II. Statement of Facts

For our statement of facts, we respectfully refer the Court to the accompanying Defendant's Proposed Findings of Uncontroverted Facts, but briefly summarize the facts here. Sterling, Winchester, and Long, LLC, approached the United States Postal Service with a proposal to produce an "Official U.S. Postal Service calendar collection" for sale in United States post offices and the website of the United States Postal Service in 1999 and 2000. Def. F. ¶ 1, 3. The United States Postal Service rejected SWL's proposals for sale of a calendar through USPS facilities, but referred SWL to Equity Management, Inc. ("EMI"), its licensing agent, if SWL wished to obtain the right to use USPS intellectual property in connection with the production of its own calendar. Def. F. ¶ 7. SWL continued to work directly with the USPS to obtain access to distribution through USPS facilities, but was unsuccessful on each attempt. See Def. F. ¶ 8. It was, however, able to negotiate, through EMI, a trademark license agreement permitting it to use USPS intellectual property in producing a calendar. Def. F. ¶ 25.

While negotiating the trademark license agreement with EMI, SWL emphasized on more than one occasion that it was separately negotiating with USPS for access to distribution through USPS facilities. See Def. F. ¶¶ 2, 9. EMI also made clear to SWL that the License Agreement being negotiated would not include access to distribution through USPS facilities. Def. F. ¶¶ 2, 11. The License Agreement did contain a list of "Channels of Distribution" that limited the

channels in which SWL could exercise its intellectual property license. In the last rounds of drafting the License Agreement, SWL asked that the term “Philatelic centers” be used to replace the term “merchandise stores” in the “Channels of Distribution.” Def. F. ¶¶ 22-24. SWL did not express to EMI that it intended the terms “Philatelic catalogs” and “Philatelic centers and merchandise stores” to refer to USPS facilities, and did not ask that “USPS” or “United States Postal Service” be inserted into the “Channels of Distribution. Def. F. ¶¶ 21-24. In lay terms, “philately” is the collection and study of postage and imprinted stamps, and “philatelic” refers to philately. Merriam-Webster’s Collegiate Dictionary, 10th ed.

After the License Agreement was executed, SWL informed USPS that it interpreted the License Agreement to grant it a right of access to distribution through USPS facilities. As USPS had never agreed to permit SWL access to distribution through USPS facilities, and the License Agreement did not embody such a right, USPS refused to grant this access. SWL’s complaint then ensued.

## SUMMARY OF THE ARGUMENT

Neither the plain language of the contract nor any of the extrinsic evidence in this case supports SWL’s novel contention that its trademark license agreement with the USPS also granted it a right of access to distribution through USPS facilities. Read individually and taken as a whole, the terms of the License Agreement only grant SWL the right to use USPS intellectual property. The “Channels of Distribution” term pointed to by SWL limited that grant, and does not embody a wholly separate grant of access to distribution through USPS facilities. Furthermore, the “Channels of Distribution” term only refers generically to “Philatelic catalogs” and “Philatelic centers and merchandise stores.” It therefore cannot be fairly read as referring

specifically to "USPS Philatelic Centers" and the "USA Philatelic Catalog." SWL is attempting to rewrite the contract to conform to its previously unexpressed intent. This is categorically prohibited by black letter contract law.

However, to the extent this Court determines that extrinsic evidence is needed to elucidate the License Agreement, the extrinsic evidence confirms that the License Agreement did not grant access to distribution through USPS facilities. SWL was told on numerous occasions that the License Agreement would not contain such a grant, and consequently SWL sought to obtain such a grant separately. Its efforts were unsuccessful, and it should not be permitted to distort the terms of the License Agreement to obtain what it could not obtain through negotiation.

Finally, because USPS did not breach the Agreement, SWL has no justification for failing to make its royalty payments, and has breached the License Agreement by failing to make royalty payments for the final two periods of the License Agreement.

## ARGUMENT

### I. Applicable Law

#### A. Standard for Granting Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining

whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

### B. The Plain Meaning Of A Contract Prevails

When interpreting government contracts, as with any contract, this Court is to determine the plain meaning of the contract's terms. NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("Contract interpretation begins with the language of the written agreement."); Coast Federal Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003). Accordingly, this Court determines the "meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." Hol-Gar Manufacturing Corp., 351 F.2d 972, 975 (Ct. C. 1965). For this reason, the contractual language prevails and the subjective, unexpressed intent of one of the parties is irrelevant. City of Oxnard v. United States, 851 F.2d 344, 347 (Fed. Cir. 1988); Corbetta Construction Co. v. United States, 461 F.2d 1330, 1336 (Ct. Cl. 1972); Cray Research, Inc. v. United States, 44 Fed. Cl. 327, 330 (1999) ("The contract will be interpreted to fulfill the principal objective purposes of the parties, since one party's subjective, unwritten intent cannot bind the other party."). In addition, the entire contract must be considered as a whole. NVT Technologies, 370 F.3d at 1159; Coast Federal Bank, 323 F.3d at 1038. When interpreting any particular contractual provision, therefore, the language of that provision must be read in the context of the entire agreement. Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996).

Where a contract is unambiguous, the plain language of the contract controls, and this Court should not resort to extrinsic evidence. Coast Federal Bank, 323 F.3d at 1040-41. Where, however, this Court finds that there are two reasonable interpretations of a contract, the contract is considered to be ambiguous and the language is interpreted against the drafter. Cray Research, 44 Fed. Cl. at 330. Where an agreement has been fully negotiated, however, any ambiguity in its terms should not be held against the government. Tulelake Irrigation District v. United States, 342 F.2d 447, 453 (Ct. Cl. 1965).

## II. The Plain Language Of The License Agreement Does Not Grant SWL A Right Of Access To USPS Philatelic Centers And The USA Philatelic Catalog

### A. The License Agreement Merely Grants An Intellectual Property License

The license agreement between SWL and the Postal Service is just that: a license agreement. It is not a sales agreement, it is not a purchase order, it is not a promise to make future purchases, and it is not a distribution agreement. Accordingly, SWL's attempt to hold the United States to a promise it never made must fail. One important canon of contract interpretation is that an agreement must be read as a whole, in its entirety. NVT Technologies, 370 F.3d at 1159; Coast Federal Bank, 323 F.3d at 1038. All of the provisions of the license agreement confirm that it only conveyed an intellectual property license to SWL and nothing more. As an initial matter, the agreement is entitled, "License Agreement." Pl. Ex. A, 1[A8]. In addition, the second paragraph of the agreement describes the purpose of the agreement as follows:

> In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below, and in the attached Exhibits A and B,

> incorporated herein by reference.

Similarly, Exhibit B defines the "Grant of License" as follows:

> Grant: Subject to the limitations set forth herein, USPS hereby grants to Licensee a non-transferable, non-exclusive license to design, manufacture, have manufactures, sell, distribute, and advertise Licensed Articles bearing the Licensed Properties in the Licensed Territory during the Contract Periods provided herein.

Pl. Ex. A, 8, ¶ 2 (a) [A8]. Further, the license agreement states explicitly that "USPS reserves any rights not expressly granted herein." Pl. Ex. A, 8, ¶ 2(b)(7) [A8]. USPS conveyed only an intellectual property license to SWL through the license agreement.

Despite the fact that the license agreement grants only an intellectual property license, SWL seeks to use one term of the license to contend that the license agreement also embodied an agreement to permit SWL to sell its calendars in USPS Philatelic Centers and through the USA Philatelic Catalog. As established above, the license agreement granted to SWL a license to use certain intellectual property of the USPS "on the terms and conditions specified below." Pl. Ex. A, 1. One of these "terms and conditions" is "Channels of Distribution." The agreement enumerates the channels of distribution in which SWL would be permitted to exercise its license of USPS intellectual property. As discussed further below, the "Channels of Distribution" contain no reference either to the USPS Philatelic Centers or the USA Philatelic Catalog. Even if it did, however, it is clear from the plain terms of the agreement and its context that the "Channels of Distribution" list does not grant SWL the right of access to those modes of distribution.

Even on its face, SWL's contention that the "Channels of Distribution" list comprises a grant of access to distribute through any of the facilities listed is not plausible. For example, the

"Channels of Distribution" include "bookstores" and "specialty stores." SWL must concede that the license agreement embodied no right of access to distribution through bookstores and specialty stores, and that USPS had no obligation to obtain distribution access to bookstores and specialty stores for SWL. Given that at least one portion of the "Channels of Distribution" does not grant the distribution right SWL seeks, to interpret the remaining portion of "Channels of Distribution" to embody precisely this right creates a conflict. Contracts are to be interpreted to avoid just such conflicts. See United Int'l Investigative Serv. v. United States, 109 F.3d 734, 737 (Fed. Cir. 1997). Yet a conflict is what SWL's interpretation creates: On the one hand, one portion of the "Channels of Distribution" list operates only as a limit on SWL's intellectual property license, but on the other hand, the other portion of the list grants a right of access to distribution through "Philatelic catalogs" and "Philatelic centers and merchandise stores." Such an interpretation does not preserve the plain meaning of the agreement and should be rejected.[2]

### B. The License Agreement Does Not Refer to USPS Philatelic Centers Or The USA Philatelic Catalog

Not only would SWL have this Court interpret a portion of the "Channels of Distribution" term to embody a grant of access to distribution, it would also have this Court revise the language of the License Agreement to refer to USPS Philatelic Centers and the USA Philatelic Catalog. The license agreement does not refer to either "USPS Philatelic Centers" or

---

[2] We also note that the references to "Philatelic catalogs" and "Philatelic centers and merchandise stores" in "Channels of Distribution" is preceded by "Wholesale to." Yet SWL seeks to revise "Wholesale to" to "Wholesale through," contending that USPS is not obligated to purchase its products, only provide a venue through which SWL can sell its products. Ex. 27 (SWL-EMI email correspondence), at A386 ("We are NOT asking or requesting that USPS purchase our product under any condition. All we are requesting is to market and sell our product through those USPS channels of distribution in our licensing agreement.").

the "USA Philatelic Catalog." Rather, it refers to "Philatelic catalogs" and "Philatelic centers and merchandise stores."

There is no indication that the "Philatelic centers and merchandise stores" referred to in the agreement are "USPS Philatelic Centers." There is no reference to the USPS in connection with the term "Philatelic centers and merchandise stores" and "centers" is not capitalized, suggesting that it is not a defined term. SWL contends that the USPS has defined "philatelic center" in its Publication 32, but this definition cannot be used to interpret the USPS-SWL License Agreement. The license agreement itself does not define "Philatelic centers and merchandise stores" nor does it refer to Publication 32. To contrast, several other terms that are intended to have a specific meaning are defined in Exhibit B of the License Agreement. Publication 32 states explicitly that it "defines words and phrases that are unique to, or have special meanings within, the U.S. Postal Service" (emphasis added) and that it "does not provide comprehensive or precise legal definitions." Ex. 32 (Glossary of Postal Terms), at A466. It is therefore inappropriate to use the definitions in this glossary to change the meaning of the License Agreement. Similarly, SWL ignores altogether the reference to "merchandise stores" in the "Channels of Distribution." Pl. Ex. A, 1. Assuming that "Philatelic centers" could otherwise refer to the defined term "philatelic centers", the phrase used in the agreement is "Philatelic centers and merchandise stores." The addition of the phrase "merchandise stores" which has no special meaning within the USPS system further demonstrates that "Philatelic centers" is not intended to refer to the term "philatelic center" in Publication No. 32.

The term "Philatelic catalogs" does not even appear in Publication No. 32, yet SWL contends that it must refer to the USA Philatelic Catalog. Just as with "Philatelic centers and

merchandise stores," the plain meaning of the agreement does not support this interpretation. The USPS does publish a catalog of philatelic products entitled, "USA Philatelic," sometimes referred to as the "USA Philatelic Catalog." Ex. 34 (USPS Website page on USA Philatelic Catalog). Just as with "Philatelic centers and merchandise stores," however, the fact that "catalogs" is not capitalized in the License Agreement suggests it is not intended to be a defined term. SWL has pointed to nothing which indicates that the term "Philatelic catalogs" is unique to the USPS. Rather, it appears that "Philatelic catalogs" may refer generally to various catalogs published by numerous entities for stamp collectors, i.e., philatelists. See Ex. 36 (Catalogs of Stamps and Philatelic Products).

### C. The License Agreement Contains No Grant Of Access To Distribution Channels

The license agreement lists the channels of distribution in which SWL may exercise its license, but does not grant to SWL the right to sell or distribute in any of the enumerated channels. As discussed above, it is contrary to the language and context of the agreement to interpret the list of channels of distribution, which are specifically a term and condition of the intellectual property license, to grant a separate right of access. Furthermore, the license agreement makes clear that the obligation to obtain access to the Channels of Distribution lies with SWL. Under "Grant of License," in Exhibit B, paragraph 2(c)(2) states:

> Licensee further undertakes to make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles through the Channels of Distribution specified in the Underlying Agreement.

As common sense also dictates, SWL was responsible for obtaining access to the various channels of distributions listed. As will be discussed in greater detail below, and as SWL well

knew, there was a separate process for obtaining access to USPS channels of distribution. The license agreement did not grant that access.

## III. Consideration Of The Extrinsic Evidence, Should The Court Find It Necessary, Confirms That The License Agreement Did Not Grant SWL A Right Of Access To Distribution Through USPS Philatelic Centers Or The USA Philatelic Catalog

Because the license agreement is clear on its face, this Court need not consider extrinsic evidence in order to interpret it. Coast Federal Bank, 323 F.3d at 1040-41. However, should the Court find the consideration of extrinsic evidence to be necessary, all of the extrinsic evidence demonstrates that the license agreement did not grant SWL a right of access to the USPS Philatelic Centers or the USA Philatelic Catalog. The most compelling pieces of evidence are the numerous instances in which SWL was told explicitly that USPS was not interested in carrying calendars in its facilities, that USPS would not purchase SWL's calendars, and that USPS would not grant SWL the ability to sell its calendars in post offices. For example, on July 12, 2000, USPS stated unequivocally to SWL that the Postal Service was rejecting SWL's proposal for a calendar to be sold through post offices. Ex. 11 (Jul. 12, 2000 letter). Further, USPS stated, "In this regard, we have rejected several other proposals for calendars. This same information has been provided to you by telephone and letter and, unfortunately, must stand as our final answer." Id.

Other aspects of the negotiating history of the agreement confirm this as well. The Term Sheet executed by the parties prior to the License Agreement makes no reference to distribution in USPS facilities. Ex. 12 (executed Term Sheet). In fact, in negotiating the proposed terms of the License Agreement, EMI specifically informed SWL that the License Agreement would not grant a right of access to distribution through USPS facilities: "Please remember, however, that

the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Ex. 10 (July 5, 2000 letter). Similarly, the initial draft of the License Agreement did not make any reference to USPS Philatelic Centers or the USA Philatelic Catalog. In response, SWL's counsel asked that a right of access to USPS post offices be added to the agreement, and EMI did not do so. See Ex. 16 (Aug. 18, 2000 letter); Pl. Ex. A. Later, J.G. Long, the president of SWL, and its principal negotiator, in a handwritten revision to the "Channels of Distribution" list asks EMI to add the term "Philatelic centers" to the agreement, explaining that it was the correct term for "merchandise stores." Ex. 21 (Long comments to redlined draft). There is no evidence that Mr. Long defined the term for EMI or explained to EMI that SWL intended "Philatelic centers and merchandise stores" to refer to the specialized meaning of "philatelic centers" within the USPS. Accordingly, the natural reading would be that dictated by the dictionary definition of "philatelic," namely centers and merchandise stores related to "philately," the collection and study of postage stamps. The fact that Mr. Long did not ask for any reference to be made to USPS and the fact that EMI did not include any reference to USPS further illustrate that the parties did not agree that SWL would be granted access to distribution through USPS facilities.

Therefore, pursuant to well-established principles of contract law, SWL's interpretation of the License Agreement must be rejected since even the extrinsic evidence fails to support it. To the contrary, the evidence shows that SWL well understood that there was a separate process (not handled by EMI) for placing products in USPS facilities for sale, and SWL availed itself of this process, albeit unsuccessfully. On at least four separate occasions, SWL contacted USPS

directly in writing and sought access to distribution through USPS facilities. See Ex. 2 (Oct. 1999 Unsolicited Proposal); Ex. 6 (Mar. 8, 2000 Unsolicited Proposal); Ex. 8 (May 22, 2000 letter); Ex. 13 (July 13, 2000 email). On each occasion, this request was rejected. Def. F. ¶¶ 1-13. In addition, SWL stated to EMI multiple times that it was in separate negotiations with the USPS directly for access to distribution through USPS facilities. Def. F. ¶¶ 2, 9. This illustrates SWL's clear understanding that the License Agreement did not cover access to distribution through USPS facilities.

Accordingly, the extrinsic evidence in the record demonstrates that the parties did not have a shared, express intent to grant SWL the right to distribute its products in USPS facilities. Because even the extrinsic evidence fails to support SWL's interpretation of the License Agreement, SWL's interpretation must be rejected. SWL should not be permitted to rewrite the License Agreement based upon its own alleged intent, never expressed to EMI or USPS. See City of Oxnard, 851 F.2d at 347 (unexpressed intent of one party is irrelevant).

## IV. The United States Is Entitled To Summary Judgment In Its Favor On Its Counterclaim As SWL Has Failed To Pay The Royalties Required By The License Agreement

The License Agreement required that SWL pay USPS a Guaranteed Minimum Royalty of $50,000 for each contract period, namely Contract Period 1 (July 1, 2000 through December 31, 2002), Contract Period 2 (January 1, 2003 through December 31, 2003), and Contract Period 3 (January 1, 2004 through December 31, 2004). As SWL admits, it did not make any royalty payments for Contract Period 2 or Contract Period 3. Answer to Counterclaim, ¶ 7. As was set forth in the Counterclaim of the United States, SWL's failure to pay the required royalties for the last two contract periods is a breach of the agreement, entitling the United States to damages.

SWL appears to contend that no royalties were required after Contract Period 1. This argument is without merit. SWL was only permitted to terminate the License Agreement, and avoid further royalty payments "if USPS [failed] to perform any material term or condition of [the License] Agreement." Pl. Ex. A, at Bates 1025 (Exhibit B, ¶ 9(b)). As demonstrated above, USPS did not breach the License Agreement in any way. Given that SWL received all that it bargained for in the License Agreement, namely, the right to use USPS intellectual property, USPS is entitled to the royalty payments SWL agreed to make.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter summary judgment in its favor on Sterling, Winchester, and Long's claims as well as on the counterclaim of the United States.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

January 28, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 28th day of January, 2008, a copy of the foregoing "DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah