Project 2001
List of Stamps For
2001 Calendar Series

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 48 | | | | | | |
| 49 | | | | | | |
| 50 | | | | | | |
| 51 | | | Black Heritage | | | |
| 52 | | | | | | |
| 53 | | | Ernest E. Just | | | |
| 54 | | | Whitney Moore Young | | | |
| 55 | | | Ralph Bunch | | | |
| 56 | | | Harriet Tubman | | | |
| 57 | | | Frederick Douglass | | | |
| 58 | | | Booker T. Washington | | | |
| 59 | | | Carter G. Woodson | | | |
| 60 | | | Bill Pickett | | | |
| 61 | | | Ida B. Wells | | | |
| 62 | | | Sojourner Truth | | | |
| 63 | | | Benjamin Banneker | | | |
| 64 | | | James Weldon Johnson | | | |
| 65 | | | Dr. George Washington Carver | | | |
| 66 | | | Benjamin O. Davis, Sr. | | | |
| 67 | | | Scott Joplin | | | |
| 68 | | | Jim Beckwiurth | | | |

Sterling, Winchester Long
Privilege and Confidential

THE LAW OFFICE OF
MARIA REICHMANIS
REGISTERED PATENT ATTORNEY

**To:** J. G. Long

**From:** Maria Reichmanis

**Subject:** USPS License Agreement

**Date:** August 11, 2000

As you requested, I have reviewed the USPS Proposed Terms Sheet, the July 5, 2000 letter from Equity Management, Inc. (EMI), and the License Agreement. First, allow me to congratulate you and your business associates on reaching this point in your negotiations with the USPS. I'm sure it's been a long and difficult process, and I hope your venture proves to be successful.

PROPOSED TERMS SHEET

The Proposed Terms Sheet looks quite reasonable overall; however, please note that you are in a better position than I am to judge the reasonableness of the minimum royalties. I have some concerns about the type of license, distribution channels, and licensed properties, as follows:

Type of License

Is a nonexclusive license acceptable? I don't know how willing the USPS would be to grant you an exclusive license; they may have a policy of only granting nonexclusive licenses. On the other hand, you originated the calendar concept, you have invested a great deal in developing the concept, and if you don't ask for an exclusive license you certainly won't get it. There may be other ways to accomplish the same thing: EMI suggested an exclusive for certain stamp designs; perhaps they would be willing to grant an exclusive license for the first year or two; negotiations with others could be very slow (as you know).

Distribution Channels

How about retail in post offices? It seems like this would be a good way to show/sell the product (but it doesn't seem like they will agree).

Licensed Properties (Schedule B)

The USPS owns several federally registered trademarks, including plain USPS, USPS.COM, and BIZ.USPS.COM. The fact that you could register your company's domain name will not necessarily protect you from a charge of dilution or infringement of

220 RICHLAND AVENUE WEST, P.O. BOX 3306, AIKEN, SC 29802
TEL. (803) 641-1900 FAX (803) 642-5622

the USPS registered marks. Therefore, I recommend including an acknowledgment that you will be using the domain name "uspscalendar-2001.com" for your web site.

EMI 07/05/00 LETTER

1. Type of Agreement

It certainly looks as though they won't consider an exclusive license. Perhaps the exclusive on certain stamp designs will help. Would you consider asking for a 1-year exclusive license on the ground of your investment in the concept, small business status, etc.?

2. Earned Royalty Percentage

Again, it would be nice if you could sell the calendars at post offices.

3. Jointly-Owned Stamp Designs

This makes sense. (I wasn't aware that there were "jointly-owned" stamp designs.)

4. Renewal

Note that the license can be renegotiated after the renewal term.

5. Product Approval

I believe you stated that this was taken care of (please let me know if I am mistaken).

LICENSE AGREEMENT

Firstly, let me repeat my concern about the domain name "uspscalendar-2001.com" and USPS's registered trademarks. Even though you could register the domain name, you might still be liable for dilution or infringement of their registered trademarks. Even though the license grants you the right to use "the USPS corporate signature" in connection with the calendar (see Exhibit B-3), I'm not sure that will cover the domain name. Therefore, I suggest you ask them to acknowledge your use of this (and similar) domain names in the license. If you wish, I can review all of the USPS registrations and current case law for you. Please let me know if you would like a formal analysis and opinion letter (the cost would be at least $500.00).

With respect to the proposed License Agreement, I will limit my comments to those paragraphs where you or I have some questions.

1. Licensed Properties

I would like to see, somewhere in Paragraph 1 or Exhibit A, an acknowledgment that they don't have a problem with your using "uspscalendar-2001.com" for your web site.

3. Licensed Territory

What about sales to foreign collectors? If you have a web site, you are inherently advertising to the world, not just the US. Would they agree to a world-wide license, to the extent that they can grant such?

4. Channels of Distribution

It would be nice if they added post offices. Or, will they buy the product from you for resale?

5. Renewal

Probably OK. If this turns out well, you will probably be able to renegotiate the contract after the renewal term.

7 & 8. Royalties

You can evaluate these better than I can.

13. Form of Copyright & Trademark Notices

It's reasonable for them to ask that you include some kind of notice.

17. Other Terms & Conditions

At this point, they probably will not consider any kind of exclusive other than what is stated in 17(a). However (as discussed the other day), you surely won't get it if you don't ask. . . You might consider asking them to consider a 1-year exclusive license, which would give you a "head start" of sorts. But please note that I don't know what effect such a request will have on your negotiations with them.

I'm not sure if they would agree to changing the last word of 17(b) to "approved." They will probably want to reserve the right to "approve" or "disapprove," especially since there may be delays due to the system. Again, it can't hurt to ask. N.B. It's not uncommon to say "if I don't hear from you by {date}, I will assume you have no objection to {something}."

EXHIBIT A

OK, but suggest you clarify the "uspscalendar-2001.com" question.

EXHIBIT B

Most of these terms are fairly standard to "big company" licenses.

B-2(a) You are correct, this is inconsistent with the EMI letter. Ask them to clarify.

B-2(4) This means that they are free to grant other licenses if they choose. This is typical for a *nonexclusive* license. OK as long as you get the exclusive right to certain stamp designs. Again, you can ask for a different deal, but don't be surprised if they turn you down.

B-2(b)(5) is a possible concern. No problem with foreign resellers, but do you want to turn down collectors who live outside the US and who try to buy via your web site? If it's important enough to your business, I suggest you ask them about sales to individual collectors outside the US.

B-2(b)(6) You could ask them to delete television sales, and computer and/or other electronic publishing sales. As it stands, this section would likely prevent you from selling on the Internet. Suggested revision:

"No license is granted hereunder for use of the Licensed Properties in connection with or on premium sales, direct mail, close-outs, door-to-door, give-aways, souvenirs, fund raisers, infomercials, contest products, combination sales, or any similar methods of merchandising.

B-(4)(c) 3% over prime may not be all that bad - some states allow for over 20% on an annual basis. Alternatively, you might suggest a fixed rate of 1% or 1.5% per month.

B-4(d) suggests that they will buy the product for resale in post offices. Correct?

Another concern is the royalty payments. You need to be certain that the "royalty" part of the price paid by USPS, no matter how computed, is deducted from the minimum royalties due on page 2. That is, sales to the USPS should "count" for purposes of computing the royalties due, even if you "pay" by deducting the royalty amount from the amount you charge for products sold to them. Pls. call to discuss if I'm not being clear.

B-5 and B-5(a) I'm not sure what you mean here. I see these paragraphs as giving them the right to approve the product prior to distribution. You could suggest that they change to this:

"The nature and quality of all products or services offered for sale under this Agreement, the appearance and use of all marks licensed under this Agreement, and the

appearance and use of all advertising and promotion for the products or the marks covered by this Agreement shall be governed by applicable USPS guidelines."

B-5(c)(2) Consider asking for ten (10) day turnaround, with an additional five (5) days upon written notice. Also, consider asking to change "disapproved" to "approved" (but don't be surprised if they disagree).

B-5(d) This could be interpreted to give them the copyrights in your calendars. Suggest you add a statement to the effect that the copyright in the calendar will be owned by SWL.

B-8 This covers intellectual property rights. Basically, they retain rights in the Licensed Properties, you can ask them to get copyright or trademark protection in other countries (at your expense), and you will not knowingly harm their rights. Fairly standard.

B-9 Termination provisions. Again, fairly standard. They can terminate with written notice under the listed conditions.

Would your company want the right to terminate the agreement? For example, upon 90 days written notice . . . ?

B-11 The dispute resolution process looks reasonable.

The remaining provisions are standard "boilerplate" and probably not really negotiable. Note B-20, which states that you cannot transfer the agreement without their consent (for example, if you sell the business).

Please let me know if you would like me to recast these notes as a formal opinion letter. Good luck with your negotiations, and please let me know if you have any questions.

**Marcie Chick**

**From:** J G Long - SW & L [Long@SWL-LLC.com]
**Sent:** Tuesday, December 12, 2000 5:47 PM
**To:** Marcie Chick; rstemen@equitymanagementinc.com
**Subject:** Re: Agreement

Marcie, we are in receipt of both the fax and mailed copies of the draft agreement. We are reviewing the new language for materiality and of course the extent of our legal obligation.

I hope to respond to Robin by the first of next week.

Thanks,

JG

SANFORD LOYD
CERTIFIED PUBLIC ACCOUNTANT
PC

360 Bay Street, Suite 100 • Augusta, Georgia 30901
706/722-6105 FAX#: 706/722-6118

**FAX COVER SHEET**

DATE: 12-20-2000

COMPANY: EMI FROM: Sanford

ATTENTION: Robin Stemen FAX NUMBER: 858-558-2507

NO. OF PAGES: 3 incl cover TELEPHONE NUMBER:

COMMENTS: Please read enclosed letter from our Attorney. This is the info J. G. indicated you would be Receiving

IF YOU HAVE ANY QUESTIONS OR IF THERE ARE ANY PROBLEMS WITH THE FAX PLEASE CALL.

1097

THE LAW OFFICE OF
**MARIA REICHMANIS**
REGISTERED PATENT ATTORNEY

220 RICHLAND AVENUE WEST
AIKEN, S.C. 29801
TELEPHONE (803) 641-1900

POST OFFICE BOX 3306
AIKEN, SC 29802
FAX (803) 642-5622

# DRAFT

December 20, 2000

Mr. J. G. Long
Mr. Sanford Loyd
Sterling, Winchester & Long, LLC
P.O. Box 211299
Martinez, GA 30907

Fax (706) 868-0216
Fax (706) 722-6118

Subject: Draft USPS License Agreement
File No.: 00-2040

Dear Mr. Long and Mr. Loyd:

As requested, I have reviewed the latest draft agreement; my comments concerning Section 18(b) follow.

As I understand the situation, USPS is unable to confirm its sole ownership of one-third to one-half of the stamp designs listed in Exhibit E; these include many designs that relate to specific calendar themes. USPS is willing to grant the equivalent of a quitclaim deed to these designs, but would like for you to bear the expenses of obtaining permission to use those designs from any third parties that might assert their ownership interests.

In my opinion, your acceptance of Section 18(b) as written may expose you to potential liability for copyright infringement. USPS may have records detailing their ownership rights. Without those records, it would be essentially impossible for *you* to determine what *their* rights are. This kind of uncertainty could adversely impact your ability to attract investors and even obtain business insurance for this venture.

The copyright status of any given design may depend on exactly when it was first published or created: for example, designs published before 1978, without a copyright notice, are not protected by copyright. For designs published on or before March 1, 1989, the omission of a copyright notice could be cured by registering the copyright either before publication or within 5 years after publication, and by adding the notice to copies published in the US after the omission was discovered. For designs published on or after March 1, 1989, lack of a notice does not necessarily prove that the design is in the public domain.

Available Copyright Office records may indicate whether or not copyrights in any of the designs in question were registered, but would not necessarily show current ownership. In addition, researching those records could be difficult and expensive, and you could never be *certain* that no third party would ever accuse you of copyright infringement. See enclosed copies of (i) Copyright Office Circular 22, "How to Investigate the Copyright Status of a Work"; and (ii) "It Takes Two to Tango" about the Seattle Symphony's liability for "innocent" infringement of a publicly-displayed sculpture.

I recommend that you discuss Section 18(b) with EMI. They (or USPS) may have records that confirm USPS ownership of the designs in question; alternatively, USPS should be willing to assume the risk (or adjust the contract price accordingly).

Please let me know if you have any further questions about the proposed revisions. As I mentioned yesterday, I will be out to town from December 21 through January 2, so please contact me before 2PM tomorrow if you would like to discuss this matter further.

Sincerely,

Maria Reichmanis

MR/
Encl.

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1355 |
| CONNECTION TEL | 12148197125ppp4044 |
| SUBADDRESS | |
| CONNECTION ID | USPS DALLAS P&MS |
| ST. TIME | 02/05 11:44 |
| USAGE T | 02'12 |
| PGS. SENT | 18 |
| RESULT | OK |

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| Robin Pacheco | Dallas PMSC | 214.819.7125 |

Total pages: **18**, including this page

Date: February 5, 2002

From: Robin M. Stemen
Associate Counsel

**Re: Sterling, Winchester & Long/USPS**

Please see attached letter from Russell V. Mobley of Fulcher, Hagler, Reed, Hanks & Harper. Call me if you have any questions.

cc: Linda Paine-Powell - Fax No. 202.268.5329

Exhibit for identification
No. 33
Frauke Kuo, N.P.
Date: 4/26/06
Deponent: R. STEMEN

PLAINTIFF'S EXHIBIT 33

430

33

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1356 |
| CONNECTION TEL | 12022685329ppp4044 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 02/05 11:46 |
| USAGE T | 04'11 |
| PGS. SENT | 18 |
| RESULT | OK |

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| Robin Pacheco | Dallas PMSC | 214.819.7125 |

Total pages: **18**, including this page

Date: February 5, 2002

From: Robin M. Stemen
Associate Counsel

**Re: Sterling, Winchester & Long/USPS**

Please see attached letter from Russell V. Mobley of Fulcher, Hagler, Reed, Hanks & Harper. Call me if you have any questions.

cc: Linda Paine-Powell - Fax No. 202.268.5329

FULCHER, HAGLER, REED, HANKS & HARPER, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ATTORNEYS AT LAW

POST OFFICE BOX 1477
AUGUSTA, GEORGIA
30903-1477

520 GREENE STREET
AUGUSTA, GEORGIA
30901-1499

TELEPHONE (706) 724-0171
TELECOPIER (706) 724-4573

DAVID H. HANKS, P.C.
JOHN I. HARPER, P.C.
ROBERT C. HAGLER, P.C.
MICHAEL B. HAGLER, P.C.
JAMES W. PURCELL, P.C.
J. ARTHUR DAVISON, P.C. (S.C. ALSO)
MARK C. WILBY, P.C. (S.C. ALSO)
N. STATEN BITTING, JR., P.C. (FLA. ALSO)
DAVID P. DEKLE, P.C.
SCOTT W. KELLY, P.C.
ELIZABETH A. McLEOD, P.C.
BARRY A. FLEMING, P.C. (S.C. ALSO)
RUSSELL V. MOBLEY, P.C.

WILLIAM M. FULCHER (1902-1993)
GOULD B. HAGLER (RETIRED)
WILLIAM C. REED (RETIRED)
RONALD C. GRIFFETH (1935-1998)

STEPHEN H. BROWN
SUSAN CARTER LOVETT
MARY BRYAN MURPHY
SONJA R. TATE (S.C. ALSO)
JOHN A. DONSBACH (AL. ONLY)
TUCKER S. PLAYER (S.C. ONLY)

August 18, 2000

**VIA TELEFAX (858-558-2507)**
**AND REGULAR MAIL**
Equity Management, Inc.
ATTN: Robin M. Stemen, Esquire
4365 Executive Drive, Suite 1000
San Diego, California 92121

RE: Sterling, Winchester and Long, LLC License Agreement
with United States Postal Service
Our File No. 4312/1

Dear Ms. Stemen:

Sterling, Winchester and Long, LLC asked us to review the first draft of the License Agreement. In this letter we will provide our comments regarding the Agreement.

**LICENSE AGREEMENT**

**Introduction.** The introduction should state the Agreement is effective as of July 1, 2000 since it was not actually signed on July 1, 2000.

2. **Licensed Articles.** The phrase "appointment books and other related items" should be inserted in front of the word "including."

The following sentence should be added to the end of this section:

"Licensee anticipates preparing a documentary or similar production detailing the subject matter of each year's calendar during the Contract Periods. Any such documentary or production shall be made only with the prior approval of USPS, which shall not unreasonable withheld."

4. **Channels of Distribution:**

This section should be expanded to permit sales of the calendar in approved Post Offices. Remember, the more calendars that are sold, the more royalties that will be paid to USPS.

The following language should be added immediately following the word "website": "uspscalendar2001.com" and "uspsofficialcalendar.com."

11. **Notices to Licensee Shall Be Sent to:** Please add the following to the bottom of this section:

"cc: Fulcher, Hagler, Reed, Hanks & Harper, LLP

ATTN: Russell V. Mobley, Esquire

Post Office Box 1477

Augusta, Georgia 30903-1477."

14. **Marketing Dates:** The deadline for initial manufacturing run should be changed to September 12, 2000.

17. **Other Terms and Conditions:**

(b) The following phrase should be inserted after the word "calendar": "and subsequently produced calendars."

(b) The time period for making a decision on the approval or disapproval should be five days.

(b) The default rule if USPS fails to make a decision on the approval or disapproval should be for approval. The contract should contain an appeals procedure or some other mechanism for USPS to communicate, in writing, to Licensee about any objections the USPS has for the calendar. The standards for approval should be in writing and in the

Agreement. The Licensee should know why its product was not approved and should be given an opportunity to cure the problem.

This section should also be amended to state USPS shall not unreasonably disapprove any calendar submitted by Licensee. The decision should be based on a reasonable standard not on an arbitrary basis.

**<u>EXHIBIT A - LICENSED PROPERTIES</u>**

The following sentence should be added to the third paragraph: "USPS shall fully cooperate with Licensee by providing it with the names, addresses and other pertinent information concerning any joint owners of stamp designs to enable Licensee to contact the joint owners to obtain their consent to obtain a license to use jointly-owned stamps.

The last paragraph should be deleted.

**<u>EXHIBIT B - STANDARD TERMS AND CONDITIONS</u>**

2. **<u>Grant of License:</u>**

---

Robin M. Stemen, Esquire
August 18, 2000
Page 5

a.. **Grant:** The word "non-exclusive" should be changed "exclusive."

The following phrase should be added to the end of this section: "during the Contract Periods provided herein."

b. **Limitations on Grant:**

(1) The following phrase should be added to the end of this sentence: "which shall not be unreasonably withheld."

(4) The following should be added to the end of this section: "Notwithstanding the above, USPS shall not grant any license for the use of the Licensed Properties for the manufacture, distribution, shipment, labeling, sale, advertising, promotion or sale of any calendar, appointment book or similar product in nature during the Contract Periods and all renewals thereof." Please keep in mind Sterling, Winchester and Long is a small, minority-owned, business. If a license is granted to a larger company for the production and sale of calendars or appointment books, the larger company could easily sell its products at a much lower cost and quickly put Sterling, Winchester and Long out of business.

~~(5) The words "or are likely" should be deleted.~~

The following sentence should be added at the end of this section: "Notwithstanding the above, Licensee shall not be precluded from selling the Licensed Articles on its web site regardless of the origin of purchase."

(6) This section should be deleted. Sterling, Winchester and Long should be permitted to market its products in a manner which will maximize its sales. Section 5 gives USPS the right to approve Licensee's marketing and sales strategies.

c. **Licensee's Obligations:** This section should be deleted. It is unnecessary to state Licensee shall aggressively market its calendars. The success of this business venture hinges on its ability to sell the calendars.

4. **Payment:**

a. The word "non-refundable" should be deleted.

b. **Guaranteed Minimum Payment:** This section should be amended to state: "During the initial term, if either party terminates the Agreement, USPS is owed the greater of the prorated portion of the Guaranteed Minimum Royalty Payment or the Royalty Payments ~~during the time the Agreement was in effect. In the event the Guaranteed Minimum Royalty~~

Payment paid at the inception of this Agreement exceeds the Royalty Payments due USPS hereunder, said excess shall be refunded to Licensee."

c. Statements and Payments: The 15-day period for providing payments and accounting reports for the royalties should be increased to 30 days. Fifteen days is not long enough to allow Licensee to satisfy the record keeping requirements.

The third sentence concerning interest should be deleted. There is no need to charge interest, especially at an exorbitant rate.

The fourth and fifth sentences should also be deleted. If calendars are returned to Licensee by customers, no royalties should be paid on the sale. Adjustments for returned items should be made in the quarter in which the Licensed Articles are returned.

5. Approvals and Quality Control. The first sentence should be deleted and replaced with the following: "USPS shall be permitted to approve or disapprove the nature and quality of all products and services offered for sale under this Agreement, the appearance and use of all marks licensed under this Agreement, which such approval shall not be unreasonably withheld."

a. USPS Approval of Licensed Articles. The following phrase should be added to the end of the first sentence: ", which such approval shall not be unreasonably withheld."

The second sentence should be deleted. The approval process in Section 5 gives USPS the opportunity to evaluate the quality and reputation of the Licensed Articles.

b. Licensee Compliance with Applicable Law:

The following phrase should be inserted at the beginning of this section: "Licensee shall exercise reasonable efforts to assure ..."

c. Delivery and Approval of Samples. (1) At the end of this section, the following phrase should be added: "which such approval shall not be unreasonably withheld."

(2) The initial approval process should be limited to five days. There should be no extension period. If no decision is made within this period of time, the default decision should be approval. No such approval should be unreasonably denied. A small business like Licensee's needs quick answers to survive.

This section should state in the event a product or procedure is disapproved, USPS should state in writing the reasons for such disapproval. The reasons should be based on a reasonable standard. Licensee should be given an opportunity to change the item and resubmit the product or procedure, and start a new five-day approval process.

(3) In the first sentence, the word "materially" should be inserted in front of the word "depart."

In the second sentence, the word "material" should be inserted in fromt of the word "departure."

d. **Use of Property:** This section should be deleted. USPS has the opportunity under Section 5 to review all products and procedures. Consequently, there is no need for this section.

7. **Records:** The next to last sentence should be changed from 3% to 10%. Three percent is immaterial. Also, the word "reasonable" should be inserted in front of the word "cost."

~~The last sentence in this section should be deleted.~~

8. **Intellectual Property Rights:** Licensee's Intellectual Property attorney will contact you regarding any changes to this section.

(9) Termination.

a.(1) This section should be amended to read as follows: "Licensee shall fail to make any payment due hereunder, which such payment is not in dispute, or to deliver any of the statements herein referred to, and if such default shall continue for a period of ten (10) calendar days after written notice of such default is received by Licensee."

(3) The cure time in this section should be extended to thirty days after written notice is received by Licensee.

b. This Section should be amended to allow for estimated returns of calendars or other products upon which royalties are owed in this Agreement. The past record of returns should serve as a benchmark for calculating any estimated returns of the calendars. An allowance for estimated returns should reduce the total sales figures upon which the royalties shall be paid.

~~The following should be added at the end of Section 9:~~

"c. Without prejudice to any other rights it may have by operation of law, and in addition to any other termination rights provided elsewhere in this Agreement, Licensee may terminate this Agreement upon thirty (30) days' prior written notice to USPS. Upon any such termination by Licensee, the only remaining obligation of Licensee to USPS shall be the payment of any accrued but unpaid Royalty Payments or Guaranteed Minimum Royalties."

10. <u>Disposal of Stock/Sell-off Period:</u>

b. This section should be deleted. Licensee should be permitted to sell the articles at prices it determines. It is in Licensee's best interest to obtain the highest price possible for its products. However, under certain circumstances, reductions in the purchase price may be in Licensee's best interest. The decision should be left to Licensee.

e. The word "lower" should be changed to "higher."

f. This section should be deleted. If USPS terminates the Agreement, Licensee should be permitted to dispose of the calendars as it so determines.

12. <u>Consent to Jurisdiction.</u> This section should be deleted and replaced with the following:

"This Agreement and the parties hereto shall be governed by the laws of the State of Georgia. Any action, suit or proceeding relating to, arising out of, or in connection with this Agreement may be brought by any party hereto against any other party hereto in the appropriate federal or state court in Richmond or Columbia Counties, Georgia. All parties hereby waive any objection to jurisdiction or venue in any such proceeding before said courts."

13. **Choice of Law.** This section should be deleted since it is addressed in the Section 12 above.

14. **Indemnification.** This Section should be deleted or USPS should indemnify Licensee for the same breaches.

If the provision is not deleted, indemnification should not apply to any actions or items which are insured or insurable by Licensee.

The indemnitee should have the right to defend any such claim or suit only if the indemnitor fails to reasonably defend such action.

15. **Insurance.**

In the first sentence, the phrase "after a period of two (2) years thereafter," should be deleted. There is no need for this provision if Licensee obtains an occurrence-based incident policy.

The requirement to carry a policy by a company acceptable to USPS should be deleted. So long as Licensee obtains a policy with a reputable courier, USPS' interests are protected.

19. **Enforcement of Licensed Properties:** Licensee's Intellectual Property attorney will contact you regarding any changes to this section.

20. **No Assignment.** The last sentence in this section should be deleted. The Agreement should not limit any business transactions or other corporate strategic planning by Licensee.

The following additional Sections should be added to Exhibit B:

24. **Days.** For purposes of this Agreement, all references to "day" or "days" shall refer to calendar days, not working days.

25. **Time Is of the Essence.** Time is of the essence in this contract.

26. **Further Assurances.** The parties hereby agree to (a) furnish upon request to each other such further information, (b) execute and deliver to each other such other documents, and (c) do such other acts and things, all as the other party hereto may reasonable request for the purpose of carrying out the intent of this Agreement.

27. **Covenant Not to Compete.** Upon the termination of this Agreement, USPS shall not, in the Licensed Territory, design, manufacture, distribute, ship, label, sell, distribute, advertise or promote 12-month calendars, appointment books or other products sold by Licensee under this Agreement for two (2) years following the date this Agreement is terminated. In the event USPS competes against Licensee as prescribed in the preceding sentence, USPS hereby agrees to pay Licensee the total amount of all Guaranteed Minimum Royalties paid by Licensee for all periods in this Agreement as liquidated damages. The parties agree damages caused by breach of the foregoing covenant not to compete are difficult or impossible to accurately estimate. The parties agree they intend for the above provision to measure damages to Licensee in the event of such a breach to be a provision for liquidated damages and not a penalty. The

parties agree the amount stipulated is a reasonable pre-estimate the probable loss to Licensee from potential future sales. The parties agree Licensee shall not be entitled to collect from USPS any damages other than the amount prescribed in this Section even though actual damages from such breach may prove greater than the amount specified. The parties agree the liquidated damages, as stated herein, shall be the maximum as well as minimum amount that can be collected and, if paid, the next succeeding paragraph shall not apply.

The Licensee shall have the right to seek and obtain in any court of competent jurisdiction an injunction to restrain a violation or alleged violation by USPS of this covenant. In no case shall a waiver by the Licensee of its right to seek relief under this Section constitute a waiver of any other relief or a waiver to enjoin further violations.

This covenant on the part of USPS shall be construed as an agreement independent of any provision of this Agreement and the existence of any claim or cause of action of Licensee against USPS, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Licensee of said covenants.

The provisions of this covenant not to compete shall be deemed severable and the invalidity and unenforceability of any provision hereof shall not affect the validity and enforceability of the remainder of this Agreement. In the event the (a) time period, (b) territory

or (c) scope of the restrictions of USPS not to compete against Licensee shall be deemed to be unreasonable, such (a) time limit, (b) territory or (c) scope shall be construed in a manner so as to restrict such (a) time limit, (b) territory or (c) scope to ones which are reasonable.

## EXHIBIT C - FORM OF ROYALTY STATEMENTS

Licensee's Intellectual Property attorney will contact you regarding any changes to this section.

In the interest of time, I forwarded this letter to you prior to sending it to Sterling, Winchester and Long. Therefore, it is subject to their comments.

After you have reviewed this letter, please contact me. I look forward to your reply.

I am with personal regards,

Very truly yours,

Russell V. Mobley
For the Firm

RVM:sf
cc: ~~Mr. J. G. Long (Via Telefax 868-0216)~~
Ms. Marci Chick (Via Telefax 858-558-2507)

# EQUITY MANAGEMENT INC.®

OFFICES IN: SAN DIEGO · DETROIT · CHICAGO · NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

August 18, 2000

Via Facsimile

Russell V. Mobley, Esq.
Fulcher, Hagler, Reed, Hanks & Harper, LLP
520 Greene Street
Post Office Box 1477
Augusta, GA 30903-1477

Re: Sterling, Winchester & Long/USPS Trademark License Agreement
Your File No: 4312/1

Dear Mr. Mobley:

Thank you for your letter of today's date concerning the above matter. Please call me anytime after 8:30 a.m. PST on Monday so that we might discuss your comments. In the meantime, I thought you might find it helpful to review the enclosed letter, which was sent to your client on July 5, 2000 following a lengthy telephone conference.

I look forward to hearing from you on Monday.

Sincerely,

Robin M. Stemen
Associate Counsel

cc: Marcie Chick

INC.

OFFICES IN: SAN DIEGO · DETROIT · CHICAGO · NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

July 5, 2000

Via Facsimile

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service Licensing Program

1429

Dear J.G.:

It was a pleasure speaking with you this morning concerning the issues raised in your June 30th fax. Pursuant to your request, I am writing this letter to summarize our discussion concerning each of the issues you raised.

1. Type of Agreement: You requested an exclusive deal. However, as we explained, exclusive licenses are only granted under very limited circumstances, none of which are present here. As an accommodation, we would recommend to the USPS that it grant you the exclusive right to use certain specified wholly-owned stamp designs on a 2001 calendar. In other words, the USPS could still license someone else to produce a 2001 calendar but that other licensee could not use the same stamp designs as your 2001 calendar. This accommodation would apply only to 2001 calendars and only to wholly-owned stamp designs; the USPS does not have the ability to extend this offer as to jointly-owned stamp designs. It would be your responsibility to specifically identify for Marcie those stamp designs you intend to use on your 2001 calendar.

2. Earned Royalty Percentage: The standard form license agreement states that the licensee does not pay royalties on sales directly to the USPS. Please remember, however, that the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices.

3. Jointly-Owned Stamp Designs: You inquired as to the reason for a provision giving the USPS the absolute right to terminate the license as to any jointly-owned stamp design upon 10 days notice. This provision is necessary in light of the USPS' agreements with the third-party owners. However, the provision relates only to jointly-owned stamp designs and, even if the right was exercised, it would not affect your status as a licensee or your right to use wholly-owned stamp designs.

4. Renewal: You requested unlimited renewal terms. This is not something we can recommend to the USPS.

5. Product Approval: You requested that the agreement require product approval within 72 hours. As we explained, this would be physically impossible. We are, however, prepared to recommend to the USPS that we modify the language in the standard agreement to call for approval within ten business days rather than thirty days.

We hope that this adequately answers your questions and that we have been able to alleviate your concerns. Please feel free to contact me, or to have your attorneys contact me, if you have any other questions.

Sincerely,

Robin M. Stemen
Associate Counsel

cc: Marcie Chick

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| Russell V. Mobley, Esq. | Fulcher, Hagler | (706) 724-4573 |

Total pages: 2, including this page

Date: August 18, 2000

From: Robin M. Stemen, Esq.
Associate Counsel

1431

IMPORTANT NOTICE: THIS INFORMATION IS CONFIDENTIAL AND PRIVILEGED

~~This communication, which includes all the pages which are part of this transmission, is intended for the use of the individual or entity to which~~ it was intended to be delivered. It may contain information that is privileged, proprietary, confidential and exempt from disclosure under applicable law. If the recipient or reader of this communication is not the intended recipient, or the employee or agent responsible for delivery of the communication to the intended recipient, you are hereby notified that any use, application, revelation, disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, destroy all copies and return the original communication to us at the above address via mail or courier delivery.

Thank you! For information regarding this fax please call the number above.

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4587 |
| CONNECTION TEL | 17067244573ppp4044 |
| SUBADDRESS | |
| CONNECTION ID | Fulcher Law Firm |
| ST. TIME | 08/18 16:11 |
| USAGE T | 01'09 |
| PGS. SENT | 4 |
| RESULT | OK |

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| Russell V. Mobley, Esq. | Fulcher, Hagler | (706) 724-4573 |

Total pages: 2, including this page

Date: August 18, 2000

From: Robin M. Stemen, Esq.
Associate Counsel

# EQUITY MANAGEMENT INC.®

OFFICES IN: SAN DIEGO · DETROIT · CHICAGO · NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

October 24, 2000

Via Facsimile

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service License Agreement

Dear Mr. Long:

Enclosed please find a draft of the above referenced agreement, which has been revised to incorporate the changes we discussed in the conference call on October 18, 2000. As we indicated during the call, these changes have not yet been reviewed or approved by USPS and are therefore subject to change.

Once you have had an opportunity to review the agreement, please contact either Dana Smith, Jeff Olian or myself with any questions or concerns.

Sincerely,

Robin M. Stemen
Associate Counsel

Encl.

cc: Dana Smith (w/o encl.)
Jeff Olian (w/o encl.)
Ilene Kent (w/o encl.)
Marcie Chick (w/o encl.)

PRIVILEGED & CONFIDENTIAL

EMI USPS 000515



CORPORATE HEADQUARTERS · 4365 EXECUTIVE DRIVE, SUITE 1000 · SAN DIEGO, CALIFORNIA 92121 · (858) 558-2500 · FAX (858) 558-2507

USPS Contract No. ____________

# LICENSE AGREEMENT

THIS AGREEMENT is made effective as of the 1st day of July 2000, by and between the UNITED STATES POSTAL SERVICE ("USPS"), an independent establishment of the United States government, and STERLING, WINCHESTER & LONG ("Licensee"), a South Carolina corporation with its principal place of business at 1022 Dunbarton Road, Williston, SC 29853-1718.

In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights to Licensee in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below and in the attached Exhibits A and B, incorporated herein by reference. Definitions of the various terms used below are listed in Exhibit B:

1. Licensed Properties: The Licensed Properties are the trademarks, service marks, trade dress and/or copyrights listed on Exhibits A and E to this Agreement.

2. Licensed Articles:

   An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, including but not limited to, a series of calendars such as USPS National and State History, Black Heritage, USPS Commemorative Stamps, Kids World, and Celebrate the Centurycommencing with calendar year 2002. Licensee must use the stamps in the thematic groupings set forth on Exhibit A and may only use each stamp design once during the Initial Term.

3. License Type: Non-exclusive; provided, however, that subject to the terms set forth herein, Licensee shall have the exclusive right to use the stamp designs listed on Exhibit E on the Licensed Articles. Nothing contained herein shall preclude USPS from producing, or licensing others to produce, calendars utilizing stamp designs not listed on Exhibit E, or from using, or licensing others to use, the stamp designs listed on Exhibit E on items other than calendars.

3.4. Licensed Territory:

   United States, its territories and possessions.

PRIVILEGED & CONFIDENTIAL

4.5. Channels of Distribution:

Wholesale to bookstores, specialty stores, Philatelic catalogs and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph 1718(c) below.

56. Initial Term: July 1, 2000 through December 31, 20034. Contract Period 1 shall commence July 1, 2000 and shall end December 31, 20012. Each consecutive twelve month period thereafter shall be deemed a Contract Period.

67. Renewal: See attached Exhibit D.

PRIVLEGED & CONFIDENTIAL

78. Royalty Rate: 8% of Net Sales of Licensed Articles sold at wholesale prices and 5% of Net Sales of Licensed Articles sold at retail prices. The term "Net Sales" is defined in Exhibit B to this Agreement.

8.9. Guaranteed Minimum Royalty and Schedule: Licensee shall pay the following Guaranteed Minimum Royalties for the Initial Term:

| | |
|---|---|
| Contract Period 1 [7/1/00-12/31/02] | $50,000.00* |
| Contract Period 2 [1/1/023-12/31/03] | $ 50,000.00 |
| Contract Period 3 [1/1/034-12/31/04] | $ 50,000.00 |

*The Guaranteed Minimum Royalty for Contract Period 1 shall be paid upon execution of this Agreement. The Guaranteed Minimum Royalty for Contract Periods 2 and 3 shall be paid in equal quarterly installments, as described in Section 4(c) of the attached Exhibit B.

~~In the event that Licensee elects to produce one or more 2001 calendars, the Guaranteed Minimum Royalties for Contract Period 1 shall be increased by the amount of Royalties actually generated by the sale of said calendar(s). These additional Guaranteed Minimum Royalties shall be paid quarterly.~~

910. Payments and Royalty Statements Shall Be Sent to:

USPS Licensing Program
PO Box 7247-7087
Philadelphia, PA 19710-7087

1011. Notices to USPS Shall Be Sent to USPS and its Licensing Agent as Follows

USPS notice:
U.S. Postal Service
Licensing Program/Stamp Development
475 L'Enfant Plaza SW, Rm 4474E
Washington, DC 20260-2437

Representative notice:
Equity Management Inc.
4365 Executive Drive, Ste. 1000
San Diego, CA 92121
Attn: Manager of USPS Licensing Program

1112. Notices to Licensee Shall Be Sent to:

PRIVILEGED & CONFIDENTIAL

Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853-1718
Attn. J.G. Long

~~With a copy to:~~

~~Fulcher, Hagler, Reed, Hanks & Harper, LLP~~
~~Attn: Russell V. Mobley, Esq.~~
~~Post Office Box 1477~~
~~Augusta, GA 30903-1477~~

~~12~~13. Insurance: $1,000,000 U.S. with a deductible that does not exceed 10%.

~~13~~14. Form of Copyright And Trademark Notices: See Exhibit A to this Agreement.

~~14.~~15. Marketing Dates:

| | |
|---|---|
| Deadline for prototypes to Licensor: | 7/31/00 |
| Deadline for initial manufacturing run: | ~~Not applicable~~12/31/01 |
| Deadline for submission of advertising and promotion materials: | ~~Not applicable~~12/31/01 |
| Initial sale to Distribution Channel: | ~~Not applicable~~12/31/01 |

~~15~~16. Standard Terms And Conditions: See Exhibit B to this Agreement, which is incorporated herein by reference.

~~16~~17. Licensee Federal Tax Identification Number: 57-1099225

~~17~~18.~~-~~Other Terms And Conditions:

~~(a)The USPS shall not use or license others to use in connection with a 2001 calendar those stamp designs identified in the attached Exhibit E that are wholly owned by the USPS.~~

~~(b)Notwithstanding the time parameters set forth in Section 5 of Exhibit B, the USPS shall approve or disapprove any 2001 calendar within ten (10) business days of submittal by Licensee pursuant to Section 5 of Exhibit B. All other terms and conditions set forth in Section 5 of Exhibit B shall remain in full force and effect.~~

~~(c)~~Prior to execution of this Agreement Licensee registered the following domain names containing Licensed Properties belonging to the USPS:

"uspscalendar2001.com"

PRIVILEGED & CONFIDENTIAL

"uspscalendar2002.com"
"uspscalendar2003.com"
"uspscalendar2004.com"
"uspscalendar2005.com"
"uspscalendar.com"
"uspsofficialcalendar.com"

Upon EMI's receipt of satisfactory documentation of said registrations and the cost thereof, Licensee shall be entitled to recoup any registration fees actually incurred and paid prior to September 1, 2000 in the form of an offset against its Guaranteed Minimum Royalties in Contract Period 2. Any other expenses related to said domain names, including registration fees incurred or paid after September 1, 2000, and the cost of development and maintenance of any websites associated with those domain names, shall be the sole responsibility of Licensee. All webites shall be subject to the review requirements set forth in this Agreement and to any USPS policies or procedures governing websites.

Licensee hereby irrevocably assigns all rights, title and interest it has in said domain names to USPS and agrees to execute any additional documentation that might be necessary to formalize said assignment. USPS hereby grants to Licensee the exclusive right to use the domain names "uspscalendar2002.com," "uspscalendar2003.com," "uspscalendar2004.com" and "uspscalendar2005.com" during the term of this Agreement for the sole purpose of selling the Licensed Articles. Licensee may not use the domain names "uspsofficialcalendar.com" or "uspscalendar.com" at any time for any purpose. USPS shall not, during the Initial Term or any renewal term, use, or license others to use, the above listed domain names for any purpose.

Licensee represents and warrants that it has not registered any other domain names containing Licensed Properties belonging to the USPS and that it shall not register any other domain names containing Licensed Properties belonging to the USPS without USPS' prior written permission.

~~(d)Licensee is under no obligation to produce a 2001 calendar and any decision whether or not to do so shall be in Licensee's sole discretion. In the event Licensee elects to do so, Licensee shall pay the additional Guaranteed Minimum Royalties set forth in Paragraph 8 above.~~

IN WITNESS WHEREOF, duly authorized representatives of USPS and Licensee have executed this Agreement, including the terms and conditions set forth in the attached Exhibits A and B.

USPS

STERLING, WINCHESTER & LONG

PRIVILEGED & CONFIDENTIAL

By:________________________

Name: ______________________

Title: _______________________

Date: _______________________

By:________________________

Name: ______________________

Title: _______________________

Date: _______________________

PRIVLEGED & CONFIDENTIAL

## EXHIBIT A -- LICENSED PROPERTIES

"Licensed Properties" shall mean the following United States Postal Service trademarks, service marks, trade dress and/or copyrights:

United States Postal Service® (USPS) Corporate Signature
Postal Seals (1782-1993 [® or ™])
Postmark USA™

Those wholly-owned ~~All~~ USPS stamp designs ~~to which USPS holds copyright~~listed on Exhibit E [© ____ (year first publ.)]

LICENSEE shall insert the appropriate designation indicated above into the following notice, which is to be used in conjunction with any and all use of the Licensed Properties: "[® or ™ or © ____ (year first publ.)] © USPS 2000. All rights reserved." Licensee shall display the marks listed above only according to the specifications provided by USPS.

~~Licensee acknowledges and agrees that some stamp designs are jointly owned by the USPS and a Joint Owner(s) (defined in Exhibit B) and as such will require a separate contract between the Licensee and the Joint Owner(s). It is the Licensee's sole responsibility to obtain all necessary agreements from the Joint Owners to use such designs, and to provide proof of same to USPS, prior to design and production of the Licensed Articles. Upon Licensee's request, USPS shall make reasonable efforts to provide Licensee with contact information for Joint Owners, provided, however, that USPS' failure or inability to provide such information shall not constitute a breach of this Agreement.~~

~~USPS, at its option and in its sole discretion, may prospectively terminate the license as to any Jointly-Owned stamp design at any time upon ten (10) days' written notice.~~

**Concurrence (Initial)** ________

PRIVILEGED & CONFIDENTIAL
USPS

## EXHIBIT B -- STANDARD TERMS AND CONDITIONS

These Standard Terms and Conditions shall be deemed fully incorporated in the License Agreement ("Underlying Agreement") to which this Exhibit B is attached, and these Standard Terms and Conditions and the Underlying Agreement shall hereinafter collectively be referred to as the Agreement. All terms used in these Standard Terms and Conditions shall, unless expressly provided to the contrary herein, have the same respective meanings as set forth in the Underlying Agreement. Unless expressly provided to the contrary herein, to the extent that any provision of these Standard Terms and Conditions conflicts with any provision of the Underlying Agreement, the Underlying Agreement shall control.

1. **Definitions:** For purposes of this Agreement, the following terms shall have the following specified meaning:

a. "Close-Out" means the sale of merchandise at a very low price in order to reduce inventory in a short time, which shall be permitted during the Sell-Off period under the terms and conditions specified herein.

b. "Collateral Materials" means packaging, cartons and containers, packing and wrapping material, tags and labels.

c. "Net Sales" mean the Licensee's gross sales, less only sales taxes and returns actually allowed by Licensee.

d. "Jointly-Owned Stamp Designs" means those United States postage stamp designs featuring trademarks, copyrights, or rights of publicity that are owned or controlled by USPS and a Joint-Owner(s).

e. "Joint-Owner(s)" means an entity, other than USPS or Licensee, recognized by USPS as owning rights in a stamp design.

PRIVILEGED & CONFIDENTIAL

f. "Premium" means any article used for the purpose of increasing the sale, promoting, or publicizing any other product or any service, including but not limited to incentives for consumers, sales forces, members of the trade, or fund-raising.

g. "Promotional Materials" means all advertising and sales materials, including but not limited to sales sheets, brochures, direct mail, and catalog layouts.

h. "Sell-Off Period" means the ninety (90) day period commencing after the termination of the Agreement, during which Licensee may dispose of excess inventories of Licensed Articles.

i. Unless otherwise stated herein, all references to "day(s)" shall refer to calendar days, not business days.

The terms identified in the Underlying Agreement shall have the meanings specified herein for purposes of this Agreement.

2. **Grant of License**:

a. Grant: Subject to the limitations set forth herein, USPS hereby grants to Licensee a non-transferable, non-exclusive license to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles bearing the Licensed Properties in the Licensed Territory during the Contract Periods provided herein.

b. Limitations on Grant:

(1) Licensee shall not have the right to grant sublicenses of any or all of its rights under this Agreement unless it first obtains USPS's prior written consent to each sublicense, which consent shall not be unreasonably withheld.

(2) No license is granted hereunder for the use of the Licensed Properties for any purpose other than upon or in connection with the Licensed Articles.

PRIVILEGED & CONFIDENTIAL

(3) USPS licenses Licensee to use the USPS corporate signature identified in Licensed Properties only in connection with the sale of Licensed Articles displaying Licensing Properties that are stamp designs and only for the purpose of indicating that the use of the Licensed Properties are authorized by USPS.

(4) Except as set forth in the Underlying Agreement, Nnothing in this Agreement shall be construed to prevent USPS from granting any other licenses for the use of the Licensed Properties in any manner whatsoever.

(5) Licensee shall not sell or distribute the Licensed Articles in any country outside the Licensed Territory and will not knowingly sell the Licensed Articles to persons who intend or are likely (based on information known to Licensee) to resell them in any country outside the Licensed Territory. Notwithstanding the foregoing, Licensee may sell and ship Licensed Articles outside the Licensed Territory in response to orders placed via Licensee's website provided that no such individual order is for more than five (5) of any one Licensed Article.

(6) No license is granted hereunder for use of the Licensed Properties in connection with or on premium sales, close-outs, door-to-door, television sales (excluding home shopping television networks), infomercials, contest products, combination sales, computer and/or any other electronic publishing and/or delivery systems or any similar methods of merchandising.

(7) USPS reserves any rights not expressly granted herein.

PRIVILEGED & CONFIDENTIAL

c. Licensee's Obligations:

(1) Licensee agrees to use its best efforts to sell, distribute and supply the Licensed Articles within the Licensed Territory. Licensee must begin the bona fide manufacture, distribution, and sale of the Licensed Articles on a Licensed Territory-wide basis on or before the date specified in the Underlying Agreement. Failure by the Licensee to timely engage in full and regular distribution and active marketing of the Licensed Articles is considered a material breach of this Agreement. If Licensed Articles are out of distribution in any country of the Licensed Territory for more than twelve (12) months, USPS may terminate the Agreement with respect to those specific Licensed Articles and country or countries of the Licensed Territories, at any time, in its sole discretion, and any and all rights in and to those Licensed Articles in those countries within the Licensed Territory revert immediately to USPS. If any rights with respect to some, but not all specific Licensed Articles or countries within the Licensed Territory shall revert to USPS pursuant to this paragraph, all of the remaining terms and conditions of this Agreement shall remain in full force and effect, including, but not limited to, payment of specified Royalty Payments and Guaranteed Minimum Annual Royalty.

(2) Licensee further undertakes to make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles through the Channels of Distribution specified in the Underlying Agreement. Licensee agrees to maintain adequate inventories of the Licensed Articles as an essential part of its distribution program. All Close-outs shall be sold only through retail outlets and traditional and accepted dealers in such merchandise and upon such terms and conditions as USPS,

PRIVILEGED & CONFIDENTIAL

in its reasonable discretion, determines appropriate, and shall not be sold to any person or entity which Licensee knows, or has reason to know based on information known to Licensee, will export such Close-outs from the Licensed Territory.

3. **Term**: This Agreement shall be for the period set forth in the Underlying Agreement, unless sooner terminated in accordance with the terms and conditions set forth herein.

4. **Payment:**

a. Royalty Rate: Licensee agrees that it will pay USPS a non-refundable royalty equal to the percentage set forth in the Underlying Agreement on Licensee's Net Sales of Licensed Articles made during the Term of this Agreement, any extensions or renewals, and any Sell-off Period ("Royalty Payments").

b. Guaranteed Minimum Payment: Licensee agrees to pay USPS the Guaranteed Minimum Royalty set forth in the Underlying Agreement, according to the payment schedule set forth therein. The Guaranteed Minimum Royalty Payment is an advance against and is deducted from the Royalty Payments due during the Initial Term. No portion of the Guaranteed Minimum Royalty Payment is refundable under any circumstance. If this Agreement is terminated as a result of a material breach of the Agreement by Licensee, the greater of all Guaranteed Minimum Royalty Payments and/or earned Royalty Payments due for the remainder of the Initial Term of the Agreement and any agreed-upon renewals thereof shall immediately become due and payable.

PRIVILEGED & CONFIDENTIAL

c. Statements and Payments: On or before the fifteenth (15th) day of the month following each calendar quarter, Licensee shall submit a full, accurate, and detailed statement in the format outlined in Exhibit C, signed by an authorized officer of Licensee, and certified as accurate, and simultaneously shall make all payments thereon. Such statements and payments shall be made payable to the U.S. Postal Service Licensing Program at the address in the Underlying Agreement, with a copy to USPS's representative at the address in the Underlying Agreement. Interest shall be charged against Licensee at the rate of one and one-half percent (1½%) over the current prime rate (CitiBank) or the maximum rate permitted by law, whichever is lower, and shall accrue on each unpaid amount from the first day payment becomes due through the date of payment. Licensee hereby waives all claims to the return of any royalty payments once made, including but not limited to claims for refund of payments for returns of Licensed Articles in subsequent reporting periods. Licensee shall furnish such statements to USPS whether or not any Licensed Articles were sold during the Period.

d. Sales to the Postal Service: Licensee shall not be required to make royalty payments on sales of Licensed Articles to USPS, whether for promotional use or retail sale, but Licensee shall reduce the sales price paid by USPS by an amount equal to the royalty. Licensee shall identify all sales to USPS on its quarterly statements.

5. **Approvals and Quality Control**: USPS shall have the right to approve or disapprove the nature and quality of all products or services offered for sale under this Agreement, the appearance and use of all marks licensed under this Agreement, and the appearance and use of all advertising and promotion for the products or the marks

PRIVILEGED & CONFIDENTIAL

covered by this Agreement, which approval shall not be unreasonably withheld.

a. USPS Approval of Licensed Articles: The styles, designs, packaging, contents, workmanship, and quality of all Licensed Articles and associate materials must be approved by USPS prior to the distribution or sale thereof. USPS maintains the right to take all reasonable actions which it deems necessary to ensure that Licensed Articles manufactured or sold hereunder are consistent with the high quality and reputation of the Licensed Properties.

b. Licensee Compliance with Applicable Law: All Licensed Articles shall be manufactured, sold, labeled, packaged, distributed, and advertised in accordance with all applicable laws and regulations.

c. Delivery and Approval of Samples:

(1) Licensee shall, before selling or distributing any Licensed Articles, furnish to USPS free of cost, for written approval, one each of concept art, final art, mock-ups, and prototypes of the Licensed Articles, and all designs which Licensee intends to use in connection with the Licensed Properties, to be followed by six (6) production samples of each Licensed Article, together with its Collateral Materials, and any additional samples as may be reasonably required. Licensee shall also submit all Promotional Materials for prior written approval by USPS. The Licensed Articles, Collateral Materials, and Promotional Materials shall be of a standard of quality, appearance, and style approved in writing by USPS prior to any advertising, sales, distribution or use of same taking place. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

PRIVILEGED & CONFIDENTIAL

(2) Any item submitted for approval shall be approved or disapproved within twenty (20) calendar days after receipt. USPS may extend the approval period an additional ten (10) calendar days by giving written notice to Licensee. Any disapproval shall include a written explanation of the reason(s) for the disapproval, and shall be without prejudice to Licensee's right to modify the item and re-submit it for review. If Licensee has not received approval or disapproval within the provided time frame, the submission shall be deemed disapproved. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

(3) ~~A failure by USPS to affirmatively approve or disapprove a submitted item within 120 calendar days of formal submission of said item pursuant to this provision shall be a material breach of this Agreement.~~

~~(4)~~ After samples of the Licensed Articles, Collateral Materials, and Promotional Materials have been approved pursuant to this paragraph, Licensee shall not depart therefrom without written consent by USPS. In the event there is a departure from the approved samples, USPS shall have the right in the reasonable exercise of its sole discretion to withdraw its approval of such Licensed Articles, Collateral Materials, or Promotional Materials or terminate this Agreement unless Licensee cures such breach within thirty (30) calendar days of written notice of same.

d. Use of Property: License shall not use any other trademark or design in combination with any Licensed Property on any Licensed Article without USPS's prior written approval. Licensed Articles shall not be sold or otherwise distributed by Licensee under any mark other than the Licensed Properties. Licensee shall cause to

PRIVILEGED & CONFIDENTIAL

appear on all Licensed Articles produced hereunder, and on their tags, packaging, and the like such legends, markings, disclaimers, and trademark and copyright notices as USPS may specify. Whenever Licensee reproduces the stamp designs set forth in Exhibit A, it must reproduce them in their entirety on the Licensed Articles and licensee shall make no alterations, additions, subtractions, or modifications to such stamp designs without USPS's prior written approval. If any such alterations, additions, subtractions, or modifications result in the creation of a new or derivative work within the meaning of copyright law, Licensee hereby assigns any and all rights to such works, including but not limited to any and all copyrights, to USPS.

6. **Confidentiality:** Any information or documents received or learned by Licensee in any form related to USPS's stamp program, future stamp images, or any postal programs or initiatives not publicly available, shall constitute Confidential Information. Until such time as Licensee releases a Licensed Article, the specific design features of the Licensed Articles shall constitute Confidential Information, but Licensee's identity and the general nature of the Licensed Articles shall not constitute Confidential Information. The parties are strictly prohibited from disclosing any Confidential Information. Failure to adhere to this requirement is a material breach of contract.

7. **Records:** Licensee agrees to keep accurate books of account and records covering all transactions relating to this Agreement. USPS and its duly authorized representatives shall have the right at all reasonable hours to examine such books of account and records in Licensee's possession or under its control with respect to the subject matter and terms of this Agreement, and shall have free and full access thereto for such purposes and for the purpose of making copies thereof. All such books of

PRIVILEGED & CONFIDENTIAL

account and records shall be kept available for at least three (3) years after the termination of this Agreement. Licensee further agrees, in order to facilitate inspection of its books and records with respect to amounts due, that it will designate a symbol or number that will be used exclusively in connection with Licensed Articles and with no other articles which Licensee may manufacture, sell or distribute. In the event that USPS or USPS's duly authorized representatives shall discover a discrepancy in favor of USPS of six percent (6%) or more on any Royalty Statement, Licensee shall pay to USPS the reasonable cost of such examination. The fee for said examination shall be Five Hundred Dollars ($500) per day, but in no event shall Licensee be charged in excess of Three Thousand Dollars ($3000) for any individual examination.

8. **Intellectual Property Rights:**

a. Licensee recognizes the great value of the goodwill associated with the Licensed Properties and acknowledges that all rights therein and goodwill attached thereto belong exclusively to USPS, and that all use of the Licensed Properties will inure to the benefit of USPS.

b. USPS may seek, in its own name and at its own expense, appropriate trademark and/or copyright protection for the Licensed Properties. USPS shall retain all right, title, and interests in the Licensed Properties, including any modifications or improvements made to the Licensed Properties by Licensee, but expressly excluding any calendar design developed by Licensee for use with the Licensed Articles provided that such design does not incorporate or include the Licensed Properties or any designation, insignia or mark which is the same as or confusingly similar to the Licensed

PRIVILEGED & CONFIDENTIAL

Properties.

c. In the event that Licensee requests that USPS obtain copyright, trademark, or other such protection for a particular item or in a particular country where USPS had not heretofore obtained such protection, USPS agrees to take reasonable steps to obtain such protection, provided, however, that Licensee shall reimburse USPS for the costs of filing, prosecuting, and maintaining same. Nonetheless, USPS shall own such copyright, trademark, or other such protection for a particular item or in a particular country and License shall make any assignments of rights to USPS necessary to transfer ownership of such copyrights, trademarks or other protection to USPS.

d. Licensee agrees that, during the term of this Agreement or thereafter, Licensee will not contest, harm, misuse, or bring into disrepute any of USPS's rights, in and to the Licensed Properties, or contest the validity of this Agreement. Licensee acknowledges and agrees that USPS would not have an adequate remedy at law and would be irreparably harmed in the event Licensee were to misuse, harm, or bring into disrepute any of USPS's Licensed Properties or if Licensee were to breach any term of this Agreement concerning the proper use of the Licensed Properties. Accordingly, it is agreed that, in the event of any breach or threatened breach of this paragraph or any term or condition of this Agreement concerning the proper use of the Licensed Properties, USPS, in addition to any other remedies at law or in equity, shall be entitled to equitable relief, including but not limited to immediate injunctive relief without the requirement of posting a bond or other security and without resorting to Arbitration herein.

PRIVILEGED & CONFIDENTIAL

9. **Termination:**

a. Without prejudice to any other rights, and in addition to any termination rights provided elsewhere in this Agreement, USPS shall have the right to terminate this Agreement upon written notice to Licensee at any time if:

(1) Licensee shall fail to make any payment due hereunder, which such payment is not in dispute, or to deliver any of the statements herein referred to, and if such default shall continue for a period of ten (10) calendar days after written notice of such default is given in accordance with Section 17, below;

(2) Licensee shall fail to perform any other material term or condition of this Agreement and, unless otherwise provided herein, does not cure such failure within thirty (30) calendar days after written notice is given in accordance with Section 17, below; or

(3) Licensee files a petition in bankruptcy, or is adjudicated a bankrupt, or if a petition in bankruptcy is filed against Licensee, or if Licensee becomes insolvent, or makes an assignment for the benefit of its creditors or an arrangement pursuant to any bankruptcy law, or if Licensee discontinues its business, or if a receiver is appointed for Licensee or its business. In the event this Agreement so terminates, neither Licensee nor its receivers, representatives, trustees, agents, administrators, successors, and/or assigns shall have any right to manufacture, distribute, sell, exploit or in any way deal with any of the Licensed Articles except with and pursuant to USPS' prior written consent.

b. Licensee shall have the right to terminate this Agreement upon thirty (30)

PRIVILEGED & CONFIDENTIAL

days prior written notice to USPS given in accordance with Section 17, below, if USPS shall fail to perform any material term or condition of this Agreement unless, within the notice period, USPS cures the breach or provides Licensee with notification that the breach cannot reasonably be cured within that period and provides reasonable assurances that the breach will be cured in a period acceptable to Licensee.

c. Termination of this license under the provisions of this paragraph shall be without prejudice to any rights which either party may otherwise have against the other party.

d. Upon the termination of this Agreement by USPS, notwithstanding anything to the contrary herein, all royalties on sales theretofore made shall become immediately due and payable and no Royalty Payments and Guaranteed Minimum Royalties shall be repayable, and any balances owed on Guaranteed Minimum Royalties shall be immediately due and payable. Notwithstanding any termination or expiration of this Agreement, USPS shall have and hereby reserves all rights and remedies which it has or which are granted to it by operation of law, to enjoin the unlawful or unauthorized use of the Licensed Properties.

10. **<u>Disposal of Stock/Sell-Off Period</u>:**

a. After expiration or termination of this Agreement, Licensee shall have no further right to manufacture, advertise, distribute, sell, or otherwise deal in any Licensed Articles except as hereinafter provided.

b. It is specifically understood that Licensee shall not sell or dispose of any such Licensed Articles in job lots at reduced prices, other than is customary in the ordinary course of business.

PRIVILEGED & CONFIDENTIAL

c. After expiration or termination of this Agreement, the parties shall follow the procedures set forth below:

(1) Licensee shall prepare a complete, written inventory list and submit same to USPS within ten (10) days of the expiration or termination of this Agreement. Such list must include orders on hand, work in process, and finished Licensed Articles.

(2) USPS shall have thirty (30) days thereafter to decide whether to purchase any or all inventory at the lower of Licensee's cost or fair market value. If USPS exercises such right of purchase, Licensee shall deliver the inventory referred to in USPS's notice of purchase within ten (10) days after USPS's said notice with the exception of inventory necessary to fulfill orders on hand. USPS shall pay Licensee for such delivered inventory as is in marketable condition within thirty (30) days after its receipt thereof.

(3) If USPS does not elect to purchase any or all of the inventory as set forth above, Licensee, on a non-exclusive basis, may dispose of Licensed Articles which are on hand or in process at the time of such expiration or termination, for a period of not more than ninety (90) days thereafter, provided all royalty payments with respect to that ninety (90) day period are made in accordance with provisions herein. Licensee shall have no right to dispose of Licensed Articles if this Agreement is terminated under Paragraphs 9.a.1, 9.a.3 or 9.a.4 herein.

PRIVILEGED & CONFIDENTIAL

d. Except as specifically provided in this Agreement, on the expiration or termination of this Agreement, all of the rights of Licensee under this Agreement shall terminate herewith and shall revert immediately to USPS. All royalties on sales made shall become immediately due and payable, and Licensee shall discontinue all use of the Licensed Properties and shall promptly transfer to USPS, free of charge, all registrations, filings and rights with regard to the Licensed Property which Licensee may have possessed at any time. The underlying rights, including but not limited to any and all trademarks and copyrights to all artwork, photographs, drawings, illustrations, forms, patterns and similar items developed by Licensee in the manufacture, sale or distribution of Licensed Articles, are the property of USPS.

11. **Dispute Resolution:** If a dispute arises out of or relates to this Agreement, or the breach thereof, and if the dispute cannot be settled through direct discussions, the parties agree first to endeavor to settle the dispute in an amicable manner by negotiation between the parties at the level of contracting officer. If the dispute cannot be settled at that level within 30 calendar days of the start of such negotiations, then the parties may, by mutual agreement, conduct a non-binding mediation proceeding under such rules and procedures as they may agree upon. Thereafter, any unresolved controversy or claims arising out of or relating to the Agreement, or the breach thereof, may be brought by a party in the appropriate judicial forum as further defined herein.

12. **Consent To Jurisdiction:** With respect to any suite, action or other proceeding relating to the Agreement that has not been resolved by negotiation or mediation (collectively "Proceedings"), the parties each irrevocably submit to the exclusive personal jurisdiction of the United States District Court for the District of Columbia and

PRIVILEGED & CONFIDENTIAL

waive any objection that it may have at any time to the laying of venue of any Proceedings brought in such court, waive any claims that such Proceedings have been brought in an inconvenient forum and further waive claims the right to object, with respect to such Proceedings, that such court does not have personal jurisdiction over such party.

13. **Choice Of Law:** This Agreement shall be governed by and construed in accordance with principles of federal common law, or if there is found to be no such common law, then the law of the State of New York. Further, the parties each agree and acknowledge that neither the provisions of the USPS Purchasing Manual nor the Contract Disputes Act of 1978, 41 USC §601 et seq., shall apply to this Agreement, and the parties waive any and all express and implied remedies, recourse or administrative procedures provided or created thereby.

14. **Indemnification:** Excluding claims based upon use of the Licensed Properties, Licensee agrees to defend, indemnify and hold USPS and/or any of its agents and assignees harmless against any and all claims, demands, causes of action, liability, loss, damage, judgments or expense (including reasonable attorneys' fees and court costs) arising out of Licensee's design, manufacture, distribution, shipment, labeling, sale, distribution, advertisement, or promotion of the Licensed Articles or the labeling, packaging, advertising and promotional materials for the Licensed Articles. USPS shall have the right to defend any such claim or suit through counsel of its own choice.

15. **Insurance:** Licensee shall, throughout the term of this Agreement, including extensions, and for a period of two (2) years thereafter, obtain and maintain at its own cost and expense a third-party liability insurance policy with a recognized insurance

PRIVILEGED & CONFIDENTIAL

carrier acceptable to USPS (such acceptance not to be unreasonably withheld), naming USPS and Equity Management Inc., Inc. as "Additional Named Insureds" or the like, including a waiver of subrogation in favor of USPS. The amount of coverage shall be in accordance with the amount set forth in the Underlying Agreement. This insurance shall provide for at least sixty (60) days prior written notice to USPS and Licensee of the cancellation or any material change or modification in the terms and conditions of the policy. Licensee shall, not more than thirty (30) days after the signing of this Agreement and, thereafter, from time to time upon reasonable request by USPS, promptly furnish to USPS the requisite certificates of insurance, or, upon USPS's request, certified copies of said insurance policies, satisfactory to USPS, as to the maintenance of the insurance described above. Licensee shall not distribute or sell the Licensed Articles prior to receipt by USPS of such evidence of insurance.

16. **Renewal:** Until ~~six~~ three (~~6~~3) months prior to the expiration of the Initial Term of the Agreement, Licensee shall have the option to renew this Agreement for the First Renewal Term provided in the Underlying Agreement. Any renewal pursuant to this paragraph is subject to the following conditions: (i) this Agreement has not been terminated in accordance with the provisions hereof, and (ii) Licensee ~~has achieved the Minimum Net Sales set forth in the Underlying Agreement."~~met the conditions set forth in Exhibit D.

17. **Notices:** All notices and statements to be given and all payments to be made hereunder, shall be given or made at the respective addresses of the parties as set forth in the Underlying Agreement unless notification of a change of address is given in writing. Any notice shall be sent by registered or certified mail, and shall be deemed to

PRIVILEGED & CONFIDENTIAL

have been given on the third business day after it is mailed.

18. **Joint Ventures:** Nothing herein contained shall be construed to place the parties in the relationship of partners or joint venturers or agents, and ~~Licensee~~ neither party shall have ~~no~~ the power to obligate or bind ~~USPS~~ the other party in any manner whatsoever. Licensee warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Licensee for the purpose of securing business. For breach or violation of this warranty, USPS shall have the right to terminate this Agreement without ~~liability~~ or in its discretion, to recover the full amount of such commission, percentage, brokerage or contingent fee. No member of, or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this Agreement or to any benefit that may arise therefrom; but this prohibition shall not be construed to extend to this Agreement if made with a corporation for its general benefit.

19. **Enforcement of Licensed Properties:**

a. Licensee agrees to cooperate with and assist USPS in protecting and enforcing USPS's rights to the Licensed Properties. Licensee shall promptly inform USPS of any infringement or other violations of the Licensed Properties that come to its attention. USPS shall have the sole right at its own expense to determine whether or not any action shall be taken on account of any such infringement or violations. USPS shall receive all amounts awarded as damages, profits, settlement proceeds or otherwise in connection with such claims or suits.

PRIVILEGED & CONFIDENTIAL

b. Licensee agrees not to contest or otherwise challenge or attack USPS's rights in the Licensed Properties or the validity of the license granted herein during the term of this Agreement and thereafter. Licensee further agrees not to do anything either by act of omission or commission which might impair, jeopardize, violate or infringe the Licensed Properties, or to misuse or bring into dispute the Licensed Properties.

c. Licensee shall not use any of the Licensed Properties as part of its company name, corporate name or trade name, and shall not attempt to register any of the Licensed Properties or confusingly similar marks or substantially similar designs in the Licensed Territory or elsewhere during the term of this Agreement or thereafter, or aid or abet anyone else in doing so.

d. The administrative and judicial defense of the Licensed Properties in the Licensed Territory shall be undertaken solely by USPS. Licensee agrees to furnish USPS or its designated legal representative with all proof and commercial, technical or other information or assistance required and which Licensee is able to furnish, as well as such other assistance as USPS or its lawyers may reasonably require for this purpose. Licensee shall, if requested by USPS, join USPS in the aforementioned administrative and judicial defense of the Licensed Properties, the cost of which shall be borne exclusively by USPS.

PRIVILEGED & CONFIDENTIAL

e. Licensee agrees to cooperate with USPS in any effort that USPS may deem advisable to record Licensee as a registered user or the like. Upon expiration or termination of this Agreement for any reason, Licensee shall similarly cooperate with USPS in expunging any such recordations that may exist. All expenses associated with such recording and expungement of recordations shall be borne by USPS.

20. **<u>No Assignment</u>:** This Agreement shall be binding upon and inure to USPS and its successors and assigns, but may not be assigned, transferred, or delegated by Licensee in whole or in part with respect to any right or obligation herein without the prior written consent of USPS, which consent shall not be unreasonably withheld. Any assignment without USPS consent shall be void. A transfer of the legal and/or beneficial ownership, whether by operation of law or otherwise, of more than 25% of the voting equity of Licensee (other than transfers of voting equity among the present shareholders or owners of Licensee) shall be deemed an assignment or transfer of the license hereunder that shall require the prior written consent of USPS.

21. **<u>Force Majeure</u>**: It is understood and agreed that in the event that an act of the government, or war conditions, or fire, flood or labor trouble in the factory of Licensee or in the factory of those manufacturing Licensed Articles, prevents the performance by Licensee of the provisions of this Agreement, then such nonperformance by Licensee shall not be considered as grounds for breach of this Agreement and such nonperformance shall be excused while the conditions herein prevail and for two (2) months thereafter.

PRIVILEGED & CONFIDENTIAL

22. **Miscellaneous**: This Agreement constitutes the entire Agreement and understanding between the parties hereto and terminates and supersedes any prior Agreement or understanding relating to the subject matter hereof between USPS and Licensee. USPS and Licensee are not relying upon any statements, warranties, or representations except those contained in this Agreement. The paragraph and other headings contained herein are for reference purposes only and will not affect the meaning of interpretation of this Agreement. None of the provisions of this agreement can be waived or modified except in writing signed by both parties, and there are no representations, promises, agreements, warranties, covenants or undertakings other than those contained herein.

23. **No Reliance On Other Representations**: The parties have not relied on any representations, promises, warranties, covenants, statements, or undertakings by the other party or its counsel other than those contained in this Agreement.

24. **Time Is Of The Essence**: Time is of the essence in this Agreement.

**Concurrence (Initial)** ________

PRIVILEGED & CONFIDENTIAL

**EXHIBIT C -- FORM OF ROYALTY STATEMENTS**

EQUITY MANAGEMENT INC.

SALES AND ROYALTY REPORT

**To:** Equity Management Inc.
Attn: Contract Administration
4365 Executive Dr., Suite 1000
San Diego, CA 92121

**From:** (Licensee) ______________________

**Equity:** (Licensor) ______________________

**Licensed Territory:** ______________________
(Report required for each country in which the Licensed Products were sold)

**Quarter:** From: ____________ To: ____________

| ( a ) Item No. | ( b ) Description | ( c ) Unit Price | ( d ) Units Sold | ( e ) Total Unit Sales |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| ( f ) | Totals | | | |

( g ) Royalty Rate ______%; Total Earned Royalties $ ________

( h ) Unapplied Advance at Quarter Start $ ________

( i ) Difference; Subtract (h) from Line (g) $ ________

( j ) Annual Guaranteed Royalties (divided by 4) $ ________

( k ) Payment Accompanying this Report $ ________
(pay greater of Line (i) or (j))

The above Report is certified to be true and correct by the above named Licensee

By: ____________

Name: ____________

Title: ____________

Date: ____________

PRIVILEGED & CONFIDENTIAL

A228

EMI USPS 000544

## EXHIBIT D -- RENEWAL TERMS

Type of Renewal: Automatic

Renewal Hurdle Minimum:

Licensee's Net Sales during the four quarters beginning 10/1/03 and ending 9/30/04 must generate a minimum of $60,000 in earned royalties in order for Licensee to qualify for an automatic renewal.

Number of Renewals: One

Renewal Term: Three Years

Special Renewal Conditions: Not Applicable

Renewal Term Earned Royalty Percentages: 8% of Net Sales.

Guaranteed Minimum Royalties:

The following Guaranteed Minimum Royalties for the Renewal Term shall be paid in equal quarterly installments:

| | | |
|---|---|---|
| Contract Period 4 | 1/1/05 – 12/31/05 | The greater of $60,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 5 | 1/1/06 – 12/31/06 | The greater of $70,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 6 | 1/1/07 – 12/31/07 | The greater of $80,000 or 75% of the royalties due for Contract Period 3. |

Renewal Licensed Properties:

Licensee shall submit to USPS by no later than July 1, 2004, a list of the 270 wholly-owned stamp designs that Licensee desires to use on the Licensed Articles during the Renewal Term. Said list must be in the form of the list set forth in Exhibit E. Approval of the list is in the sole discretion of the USPS. USPS shall notify Licensee of its decision concerning the list within 90 days of receipt thereof.

PRIVILEGED & CONFIDENTIAL

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO              0782
CONNECTION TEL          17068680216ppp4044
SUBADDRESS
CONNECTION ID
ST. TIME              10/24 18:11
USAGE T               13'26
PGS. SENT              32
RESULT                OK
```

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| JG Long | SW&L | (706) 868-0216 |

Total pages: , including this page

Date: October 24, 2000

From: Robin M. Stemen, Esq.
Associate Counsel

PRIVILEGED & CONFIDENTIAL

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| JG Long | SW&L | (706) 868-0216 |

Total pages: , including this page

Date: October 24, 2000

From: Robin M. Stemen, Esq.
Associate Counsel

PRIVILEGED & CONFIDENTIAL

**IMPORTANT NOTICE: THIS INFORMATION IS CONFIDENTIAL AND PRIVILEGED**

This communication, which includes all the pages which are part of this transmission, is intended for the use of the individual or entity to which it was intended to be delivered. It may contain information that is privileged, proprietary, confidential and exempt from disclosure under applicable law. If the recipient or reader of this communication is not the intended recipient, or the employee or agent responsible for delivery of the communication to the intended recipient, you are hereby notified that any use, application, revelation, disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, destroy all copies and return the original communication to us at the above address via mail or courier delivery.

**Thank you!** For information regarding this fax please call the number above.

FULCHER, HAGLER, REED, HANKS & HARPER, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ATTORNEYS AT LAW

POST OFFICE BOX 1477
AUGUSTA, GEORGIA
30903-1477

520 GREENE STREET
AUGUSTA, GEORGIA
30901-1499

TELEPHONE (706) 724-0171
TELECOPIER (706) 724-4573

DAVID H. HANKS, P.C.
JOHN I. HARPER, P.C.
ROBERT C. HAGLER, P.C.
MICHAEL B. HAGLER, P.C.
JAMES W. PURCELL, P.C.
J. ARTHUR DAVISON, P.C. (S.C. ALSO)
MARK C. WILBY, P.C. (S.C. ALSO)
N. STATEN BITTING, JR., P.C. (FLA. ALSO)
DAVID P. DEKLE, P.C.
SCOTT W. KELLY, P.C.
ELIZABETH A. McLEOD, P.C.
BARRY A. FLEMING, P.C. (S.C. ALSO)
RUSSELL V. MOBLEY, P.C.

WILLIAM M. FULCHER (1902-1993)
GOULD B. HAGLER (RETIRED)
WILLIAM C. REED (RETIRED)
RONALD C. GRIFFETH (1935-1998)

STEPHEN H. BROWN
SUSAN CARTER LOVETT
MARY BRYAN MURPHY
SONJA R. TATE (S.C. ALSO)
JOHN A. DONSBACH (AL. ONLY)
TUCKER S. PLAYER (S.C. ONLY)

August 31, 2000

PRIVILEGED & CONFIDENTIAL

**VIA TELEFAX (858-558-2507)**
**AND REGULAR MAIL**
Equity Management, Inc.
ATTN: Robin M. Stemen, Esquire
4365 Executive Drive, Suite 1000
San Diego, California 92121

RE: Sterling, Winchester and Long, LLC License Agreement with United States Postal Service
Our File No. 4312/1

Dear Robin:

As we discussed over the telephone yesterday, I am submitting to you language for inclusion in the License Agreement to keep the Postal Service from refusing to approve or disapprove of a sample product or procedure with impunity. I think the following paragraph could be added to Section 5c.(2).

"It is mutually agreed by the parties, in the event USPS fails to provide Licensee with written approval or disapproval of the Licensed Articles, Promotional Materials or Collateral Materials within the time frame provided hereinabove, Licensee may resubmit said items for approval. The resubmission shall start a new 10 day or 20 day (as the case may be) approval period. In the event USPS fails to respond within the required time frame on the resubmitted items, USPS shall be deemed in default under this Agreement. Upon any such default, Licensee may terminate this Agreement by written notice to USPS. Upon any such termination, Licensee shall have (1) no further obligations to USPS hereunder and (2) all rights and remedies available to it by operation of law."

After reviewing this letter, please contact me. I look forward to your reply.

I am with personal regards,

Very truly yours,

Russell V. Mobley

Russell V. Mobley w/permission by pg
For the Firm

RVM:pg
cc: Mr. J. G. Long (Via Telefax 868-0216)
Ms. Marci Chick (Via Telefax 858-558-2507)

EQUITY MANAGEMENT INC.®

OFFICES IN: SAN DIEGO • DETROIT • CHICAGO • NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

October 24, 2000

Via Facsimile

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service License Agreement

Dear Mr. Long:

Enclosed please find a draft of the above referenced agreement, which has been revised to incorporate the changes we discussed in the conference call on October 18, 2000. As we indicated during the call, these changes have not yet been reviewed or approved by USPS and are therefore subject to change.

Once you have had an opportunity to review the agreement, please contact either Dana Smith, Jeff Olian or myself with any questions or concerns.

Sincerely,

Robin M. Stemen
Associate Counsel

Encl.

cc: Dana Smith (w/o encl.)
Jeff Olian (w/o encl.)
Ilene Kent (w/o encl.)
Marcie Chick (w/o encl.)

USPS Contract No. ______________

# LICENSE AGREEMENT

THIS AGREEMENT is made effective as of the 1st day of July 2000, by and between the UNITED STATES POSTAL SERVICE ("USPS"), an independent establishment of the United States government, and STERLING, WINCHESTER & LONG ("Licensee"), a South Carolina corporation with its principal place of business at 1022 Dunbarton Road, Williston, SC 29853-1718.

In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights ~~to Licensee~~ in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below and in the attached Exhibits A and B, incorporated herein by reference. Definitions of the various terms used below are listed in Exhibit B:

1. Licensed Properties: The Licensed Properties are the trademarks, service marks, trade dress and/or copyrights listed on Exhibits A and E to this Agreement.

2. Licensed Articles:

An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, ~~including but not limited to, a series of calendars such as USPS National and State History, Black Heritage, USPS Commemorative Stamps, Kids World, and Celebrate the Century~~commencing with calendar year 2002. Licensee must use the stamps in the thematic groupings set forth on Exhibit A and may only use each stamp design once during the Initial Term.

*[Handwritten in margin:] Want the ability use stamps in other thematic grouping if stamp falls within that them.*

3. License Type: Non-exclusive; provided, however, that subject to the terms set forth herein, Licensee shall have the exclusive right to use the stamp designs listed on Exhibit E on the Licensed Articles. Nothing contained herein shall preclude USPS from producing, or licensing others to produce, calendars utilizing stamp designs not listed on Exhibit E, or from using, or licensing others to use, the stamp designs listed on Exhibit E on items other than calendars.

*[Handwritten:] [illegible]*

~~3.~~4. Licensed Territory:

United States, its territories and possessions.

USPS

*[Handwritten:] Where is the provision that allows us to request to use Non-exclusive wholly-own and Joint ownership stamps*

*[Handwritten initials:] SWL*

SWL 714