~~4~~5. Channels of Distribution:

Wholesale to bookstores, specialty stores, Philatelic catalogs and ~~merchandise stores~~; Retail via Licensee's website, subject to the conditions set forth in Paragraph ~~17~~18~~(c)~~ below.

~~5~~6. Initial Term: July 1, 2000 through December 31, 200~~3~~4. Contract Period 1 shall commence July 1, 2000 and shall end December 31, 200~~1~~2. Each consecutive twelve month period thereafter shall be deemed a Contract Period.

~~6~~7. Renewal: See attached Exhibit D.

USPS

~~7~~8. Royalty Rate: 8% of Net Sales of Licensed Articles sold at wholesale prices and 5% of Net Sales of Licensed Articles sold at retail prices. The term "Net Sales" is defined in Exhibit B to this Agreement.

~~8.~~9. Guaranteed Minimum Royalty and Schedule: Licensee shall pay the following Guaranteed Minimum Royalties for the Initial Term:

| | |
|---|---|
| Contract Period 1 [7/1/00-12/31/02] | $50,000.00* |
| Contract Period 2 [1/1/0~~2~~3-12/31/03] | $ 50,000.00 |
| Contract Period 3 [1/1/0~~3~~4-12/31/04] | $ 50,000.00 |

*The Guaranteed Minimum Royalty for Contract Period 1 shall be paid upon execution of this Agreement. The Guaranteed Minimum Royalty for Contract Periods 2 and 3 shall be paid in equal quarterly installments, as described in Section 4(c) of the attached Exhibit B.

~~In the event that Licensee elects to produce one or more 2001 calendars, the Guaranteed Minimum Royalties for Contract Period 1 shall be increased by the amount of Royalties actually generated by the sale of said calendar(s). These additional Guaranteed Minimum Royalties shall be paid quarterly.~~

~~9~~10. Payments and Royalty Statements Shall Be Sent to:

USPS Licensing Program
PO Box 7247-7087
Philadelphia, PA 19710-7087

~~10~~11. Notices to USPS Shall Be Sent to USPS and its Licensing Agent as Follows

USPS notice:

U.S. Postal Service
Licensing Program/Stamp Development
475 L'Enfant Plaza SW, Rm 4474E
Washington, DC 20260-2437

Representative notice:

Equity Management Inc.
4365 Executive Drive, Ste. 1000
San Diego, CA 92121
Attn: Manager of USPS Licensing Program

~~11~~12. Notices to Licensee Shall Be Sent to:

Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853-1718
Attn. J.G. Long

~~With a copy to:~~

~~Fulcher, Hagler, Reed, Hanks & Harper, LLP~~
~~Attn: Russell V. Mobley, Esq.~~
~~Post Office Box 1477~~
~~Augusta, GA 30903-1477~~

~~12~~13. Insurance: $1,000,000 U.S. with a deductible that does not exceed 10%.

~~13~~14. Form of Copyright And Trademark Notices: See Exhibit A to this Agreement.

~~14.~~15. Marketing Dates:

| | |
|---|---|
| Deadline for prototypes to Licensor: | 7/31/00 |
| Deadline for initial manufacturing run: | ~~Not applicable~~12/31/01 |
| Deadline for submission of advertising and promotion materials: | ~~Not applicable~~12/31/01 |
| Initial sale to Distribution Channel: | ~~Not applicable~~12/31/01 |

~~15~~16. Standard Terms And Conditions: See Exhibit B to this Agreement, which is incorporated herein by reference.

~~16~~17. Licensee Federal Tax Identification Number: 57-1099225

~~17~~18. Other Terms And Conditions:

~~(a)The USPS shall not use or license others to use in connection with a 2001 calendar those stamp designs identified in the attached Exhibit E that are wholly owned by the USPS.~~

~~(b)Notwithstanding the time parameters set forth in Section 5 of Exhibit B, the USPS shall approve or disapprove any 2001 calendar within ten (10) business days of submittal by Licensee pursuant to Section 5 of Exhibit B. All other terms and conditions set forth in Section 5 of Exhibit B shall remain in full force and effect.~~

~~(c)~~Prior to execution of this Agreement Licensee registered the following domain names containing Licensed Properties belonging to the USPS:

"uspscalendar2001.com"

M SWL Calendar.com

"uspscalendar2002.com"
"uspscalendar2003.com"
"uspscalendar2004.com"
"uspscalendar2005.com"
"uspscalendar.com"
"uspsofficialcalendar.com"

Upon EMI's receipt of satisfactory documentation of said registrations and the cost thereof, Licensee shall be entitled to recoup any registration fees actually incurred and paid prior to September 1, 2000 in the form of an offset against its Guaranteed Minimum Royalties in Contract Period 2. Any other expenses related to said domain names, including registration fees incurred or paid after September 1, 2000, and the cost of development and maintenance of any websites associated with those domain names, shall be the sole responsibility of Licensee. All webites shall be subject to the review requirements set forth in this Agreement and to any USPS policies or procedures governing websites.

Licensee hereby irrevocably assigns all rights, title and interest it has in said domain names to USPS and agrees to execute any additional documentation that might be necessary to formalize said assignment. USPS hereby grants to Licensee the exclusive right to use the domain names "uspscalendar2002.com," "uspscalendar2003.com," "uspscalendar2004.com" and "uspscalendar2005.com" during the term of this Agreement for the sole purpose of selling the Licensed Articles. Licensee may not use the domain names "uspsofficialcalendar.com" or "uspscalendar.com" at any time for any purpose. USPS shall not, during the Initial Term or any renewal term, use, or license others to use, the above listed domain names for any purpose. (?) Frist rights

Licensee represents and warrants that it has not registered any other domain names containing Licensed Properties belonging to the USPS and that it shall not register any other domain names containing Licensed Properties belonging to the USPS without USPS' prior written permission.

~~(d)Licensee is under no obligation to produce a 2001 calendar and any decision whether or not to do so shall be in Licensee's sole discretion. In the event Licensee elects to do so, Licensee shall pay the additional Guaranteed Minimum Royalties set forth in Paragraph 8 above.~~

IN WITNESS WHEREOF, duly authorized representatives of USPS and Licensee have executed this Agreement, including the terms and conditions set forth in the attached Exhibits A and B.

USPS STERLING, WINCHESTER & LONG

USPS



SWL 718

A238

By:______________________ By:______________________

Name: ____________________ Name: ____________________

Title: ____________________ Title: ____________________

Date: ____________________ Date: ____________________

USPS

## EXHIBIT A -- LICENSED PROPERTIES

"Licensed Properties" shall mean the following United States Postal Service trademarks, service marks, trade dress and/or copyrights:

United States Postal Service® (USPS) Corporate Signature
Postal Seals (1782-1993 [® or ™])
Postmark USA™

Those wholly-owned All USPS stamp designs to which USPS holds copyrightlisted on Exhibit E [© ____ (year first publ.)]

LICENSEE shall insert the appropriate designation indicated above into the following notice, which is to be used in conjunction with any and all use of the Licensed Properties: "[® or ™ or © ____ (year first publ.)] © USPS 2000. All rights reserved." Licensee shall display the marks listed above only according to the specifications provided by USPS.

~~Licensee acknowledges and agrees that some stamp designs are jointly owned by the USPS and a Joint Owner(s) (defined in Exhibit B) and as such will require a separate contract between the Licensee and the Joint Owner(s). It is the Licensee's sole responsibility to obtain all necessary agreements from the Joint Owners to use such designs, and to provide proof of same to USPS, prior to design and production of the Licensed Articles. Upon Licensee's request, USPS shall make reasonable efforts to provide Licensee with contact information for Joint Owners, provided, however, that USPS' failure or inability to provide such information shall not constitute a breach of this Agreement.~~

~~USPS, at its option and in its sole discretion, may prospectively terminate the license as to any Jointly-Owned stamp design at any time upon ten (10) days' written notice.~~

**Concurrence (Initial)** ________



SWL 720

## EXHIBIT B -- STANDARD TERMS AND CONDITIONS

These Standard Terms and Conditions shall be deemed fully incorporated in the License Agreement ("Underlying Agreement") to which this Exhibit B is attached, and these Standard Terms and Conditions and the Underlying Agreement shall hereinafter collectively be referred to as the Agreement. All terms used in these Standard Terms and Conditions shall, unless expressly provided to the contrary herein, have the same respective meanings as set forth in the Underlying Agreement. Unless expressly provided to the contrary herein, to the extent that any provision of these Standard Terms and Conditions conflicts with any provision of the Underlying Agreement, the Underlying Agreement shall control.

1. <u>Definitions</u>: For purposes of this Agreement, the following terms shall have the following specified meaning:

a. "Close-Out" means the sale of merchandise at a very low price in order to reduce inventory in a short time, which shall be permitted during the Sell-Off period under the terms and conditions specified herein.

b. "Collateral Materials" means packaging, cartons and containers, packing and wrapping material, tags and labels.

c. "Net Sales" mean the Licensee's gross sales, less only sales taxes and returns actually allowed by Licensee.

d. "Jointly-Owned Stamp Designs" means those United States postage stamp designs featuring trademarks, copyrights, or rights of publicity that are owned or controlled by USPS and a Joint-Owner(s).

e. "Joint-Owner(s)" means an entity, other than USPS or Licensee, recognized by USPS as owning rights in a stamp design.



SWL

f. "Premium" means any article used for the purpose of increasing the sale, promoting, or publicizing any other product or any service, including but not limited to incentives for consumers, sales forces, members of the trade, or fund-raising.

g. "Promotional Materials" means all advertising and sales materials, including but not limited to sales sheets, brochures, direct mail, and catalog layouts.

h. "Sell-Off Period" means the ninety (90) day period commencing after the termination of the Agreement, during which Licensee may dispose of excess inventories of Licensed Articles.

i. Unless otherwise stated herein, all references to "day(s)" shall refer to calendar days, not business days.

The terms identified in the Underlying Agreement shall have the meanings specified herein for purposes of this Agreement.

2. **Grant of License:**

a. Grant: Subject to the limitations set forth herein, USPS hereby grants to Licensee a non-transferable, non-exclusive license to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles bearing the Licensed Properties in the Licensed Territory during the Contract Periods provided herein.

b. Limitations on Grant:

(1) Licensee shall not have the right to grant sublicenses of any or all of its rights under this Agreement unless it first obtains USPS's prior written consent to each sublicense, which consent shall not be unreasonably withheld.

(2) No license is granted hereunder for the use of the Licensed Properties for any purpose other than upon or in connection with the Licensed Articles.

(3) USPS licenses Licensee to use the USPS corporate signature identified in Licensed Properties only in connection with the sale of ~~Licensed~~ Articles displaying Licensing Properties that are stamp designs and only for the purpose of indicating that the use of the Licensed Properties are authorized by USPS.

(4) Except as set forth in the Underlying Agreement, ~~N~~nothing in this Agreement shall be construed to prevent USPS from granting any other licenses for the use of the Licensed Properties in any manner whatsoever.

(5) Licensee shall not sell or distribute the Licensed Articles in any country outside the Licensed Territory and will not knowingly sell the Licensed Articles to persons who intend or are likely (based on information known to Licensee) to resell them in any country outside the Licensed Territory. Notwithstanding the foregoing, Licensee may sell and ship Licensed Articles outside the Licensed Territory in response to orders placed via Licensee's website provided that no such individual order is for more than five (5) of any one Licensed Article.

(6) No license is granted hereunder for use of the Licensed Properties in connection with or on premium sales, close-outs, door-to-door, television sales (excluding home shopping television networks), infomercials, contest products, combination sales, computer and/or any other electronic publishing and/or delivery systems or any similar methods of merchandising. except as provided in pp 5 above.

(7) USPS reserves any rights not expressly granted herein.

c. Licensee's Obligations:

(1) Licensee agrees to use its best efforts to sell, distribute and supply the Licensed Articles within the Licensed Territory. Licensee must begin the bona fide manufacture, distribution, and sale of the Licensed Articles on a Licensed Territory-wide basis on or before the date specified in the Underlying Agreement. Failure by the Licensee to timely engage in full and regular distribution and active marketing of the Licensed Articles is considered a material breach of this Agreement. If Licensed Articles are out of distribution in any country of the Licensed Territory for more than twelve (12) months, after initial ~~distribution~~ sale to Distribution channel date, USPS may terminate the Agreement with respect to those specific Licensed Articles and country or countries of the Licensed Territories, at any time, in its sole discretion, and any and all rights in and to those Licensed Articles in those countries within the Licensed Territory revert immediately to USPS. If any rights with respect to some, but not all specific Licensed Articles or countries within the Licensed Territory shall revert to USPS pursuant to this paragraph, all of the remaining terms and conditions of this Agreement shall remain in full force and effect, including, but not limited to, payment of specified Royalty Payments and Guaranteed Minimum Annual Royalty.

(2) Licensee further undertakes to make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles through the Channels of Distribution specified in the Underlying Agreement. Licensee agrees to maintain adequate inventories of the Licensed Articles as an essential part of its distribution program. All Close-outs shall be sold only through retail outlets and traditional and accepted dealers in such merchandise and upon such terms and conditions as USPS,

USPS



SWL 724

in its reasonable discretion, determines appropriate, and shall not be sold to any person or entity which Licensee knows, or has reason to know based on information known to Licensee, will export such Close-outs from the Licensed Territory.

3. Term: This Agreement shall be for the period set forth in the Underlying Agreement, unless sooner terminated in accordance with the terms and conditions set forth herein.

4. Payment:

a. Royalty Rate: Licensee agrees that it will pay USPS a non-refundable royalty equal to the percentage set forth in the Underlying Agreement on Licensee's Net Sales of Licensed Articles made during the Term of this Agreement, any extensions or renewals, and any Sell-off Period ("Royalty Payments").

b. Guaranteed Minimum Payment: Licensee agrees to pay USPS the Guaranteed Minimum Royalty set forth in the Underlying Agreement, according to the payment schedule set forth therein. The Guaranteed Minimum Royalty Payment is an advance against and is deducted from the Royalty Payments due during the Initial Term. No portion of the Guaranteed Minimum Royalty Payment is refundable under any circumstance. If this Agreement is terminated as a result of a material breach of the Agreement by Licensee, the greater of all Guaranteed Minimum Royalty Payments and/or earned Royalty Payments due for the remainder of the Initial Term of the Agreement and any agreed-upon renewals thereof shall immediately become due and payable.

c. Statements and Payments: On or before the fifteenth (15th) day of the month following each calendar quarter, Licensee shall submit a full, accurate, and detailed statement in the format outlined in Exhibit C, signed by an authorized officer of Licensee, and certified as accurate, and simultaneously shall make all payments thereon. Such statements and payments shall be made payable to the U.S. Postal Service Licensing Program at the address in the Underlying Agreement, with a copy to USPS's representative at the address in the Underlying Agreement. Interest shall be charged against Licensee at the rate of one and one-half percent (1½%) over the current prime rate (CitiBank) or the maximum rate permitted by law, whichever is lower, and shall accrue on each unpaid amount from the first day payment becomes due through the date of payment. Licensee hereby waives all claims to the return of any royalty payments once made, including but not limited to claims for refund of payments for returns of Licensed Articles in subsequent reporting periods. Licensee shall furnish such statements to USPS whether or not any Licensed Articles were sold during the Period.

d. Sales to the Postal Service: Licensee shall not be required to make royalty payments on sales of Licensed Articles to USPS, whether for promotional use or retail sale, but Licensee shall reduce the sales price paid by USPS by an amount equal to the royalty. Licensee shall identify all sales to USPS on its quarterly statements.

5. **Approvals and Quality Control:** USPS shall have the right to approve or disapprove the nature and quality of all products or services offered for sale under this Agreement, the appearance and use of all marks licensed under this Agreement, and the appearance and use of all advertising and promotion for the products or the marks

covered by this Agreement, which approval shall not be unreasonably withheld.

a. USPS Approval of Licensed Articles: The styles, designs, packaging, contents, workmanship, and quality of all Licensed Articles and associate materials must be approved by USPS prior to the distribution or sale thereof. USPS maintains the right to take all reasonable actions which it deems necessary to ensure that Licensed Articles manufactured or sold hereunder are consistent with the high quality and reputation of the Licensed Properties.

b. Licensee Compliance with Applicable Law: All Licensed Articles shall be manufactured, sold, labeled, packaged, distributed, and advertised in accordance with all applicable laws and regulations.

c. Delivery and Approval of Samples:

(1) Licensee shall, before selling or distributing any Licensed Articles, furnish to USPS free of cost, for written approval, one each of concept art, final art, mock-ups, and prototypes of the Licensed Articles, and all designs which Licensee intends to use in connection with the Licensed Properties, to be followed by six (6) production samples of each Licensed Article, together with its Collateral Materials, and any additional samples as may be reasonably required. Licensee shall also submit all Promotional Materials for prior written approval by USPS. The Licensed Articles, Collateral Materials, and Promotional Materials shall be of a standard of quality, appearance, and style approved in writing by USPS prior to any advertising, sales, distribution or use of same taking place. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

(2) Any item submitted for approval shall be approved or disapproved within twenty (20) calendar days after receipt. USPS may extend the approval period an additional ten (10) calendar days by giving written notice to Licensee. Any disapproval shall include a written explanation of the reason(s) for the disapproval, and shall be without prejudice to Licensee's right to modify the item and re-submit it for review. If Licensee has not received approval or disapproval within the provided time frame, the submission shall be deemed disapproved. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

(3) ~~A failure by USPS to affirmatively approve or disapprove a submitted item within 120 calendar days of formal submission of said item pursuant to this provision shall be a material breach of this Agreement.~~

~~(4)~~ After samples of the Licensed Articles, Collateral Materials, and Promotional Materials have been approved pursuant to this paragraph, Licensee shall not depart therefrom without written consent by USPS. In the event there is a departure from the approved samples, USPS shall have the right in the reasonable exercise of its sole discretion to withdraw its approval of such Licensed Articles, Collateral Materials, or Promotional Materials or terminate this Agreement unless Licensee cures such breach within thirty (30) calendar days of written notice of same.

d. <u>Use of Property</u>: License shall not use any other trademark or design in combination with any Licensed Property on any Licensed Article without USPS's prior written approval. Licensed Articles shall not be sold or otherwise distributed by Licensee under any mark other than the Licensed Properties. Licensee shall cause to

appear on all Licensed Articles produced hereunder, and on their tags, packaging, and the like such legends, markings, disclaimers, and trademark and copyright notices as USPS may specify. Whenever Licensee reproduces the stamp designs set forth in Exhibit A, it must reproduce them in their entirety on the Licensed Articles and licensee shall make no alterations, additions, subtractions, or modifications to such stamp designs without USPS's prior written approval. If any such alterations, additions, subtractions, or modifications result in the creation of a new or derivative work within the meaning of copyright law, Licensee hereby assigns any and all rights to such works, including but not limited to any and all copyrights, to USPS.

6. <u>Confidentiality</u>: Any information or documents received or learned by Licensee in any form related to USPS's stamp program, future stamp images, or any postal programs or initiatives not publicly available, shall constitute Confidential Information. Until such time as Licensee releases a Licensed Article, the specific design features of the Licensed Articles shall constitute Confidential Information, but Licensee's identity and the general nature of the Licensed Articles shall not constitute Confidential Information. The parties are strictly prohibited from disclosing any Confidential Information. Failure to adhere to this requirement is a material breach of contract.

7. <u>Records</u>: Licensee agrees to keep accurate books of account and records covering all transactions relating to this Agreement. USPS and its duly authorized representatives shall have the right at all reasonable hours to examine such books of account and records in Licensee's possession or under its control with respect to the subject matter and terms of this Agreement, and shall have free and full access thereto for such purposes and for the purpose of making copies thereof. All such books of

account and records shall be kept available for at least three (3) years after the termination of this Agreement. Licensee further agrees, in order to facilitate inspection of its books and records with respect to amounts due, that it will designate a symbol or number that will be used exclusively in connection with Licensed Articles and with no other articles which Licensee may manufacture, sell or distribute. In the event that USPS or USPS's duly authorized representatives shall discover a discrepancy in favor of USPS of six percent (6%) or more on any Royalty Statement, Licensee shall pay to USPS the reasonable cost of such examination. The fee for said examination shall be Five Hundred Dollars ($500) per day, but in no event shall Licensee be charged in excess of Three Thousand Dollars ($3000) for any individual examination.

8. <u>Intellectual Property Rights</u>:

a. Licensee recognizes the great value of the goodwill associated with the Licensed Properties and acknowledges that all rights therein and goodwill attached thereto belong exclusively to USPS, and that all use of the Licensed Properties will inure to the benefit of USPS.

b. USPS may seek, in its own name and at its own expense, appropriate trademark and/or copyright protection for the Licensed Properties. USPS shall retain all right, title, and interests in the Licensed Properties, including any modifications or improvements made to the Licensed Properties by Licensee, but expressly excluding any calendar design developed by Licensee for use with the Licensed Articles provided that such design does not incorporate or include the Licensed Properties or any designation, insignia or mark which is the same as or confusingly similar to the Licensed

Properties.

c. In the event that Licensee requests that USPS obtain copyright, trademark, or other such protection for a particular item or in a particular country where USPS had not heretofore obtained such protection, USPS agrees to take reasonable steps to obtain such protection, provided, however, that Licensee shall reimburse USPS for the costs of filing, prosecuting, and maintaining same. Nonetheless, USPS shall own such copyright, trademark, or other such protection for a particular item or in a particular country and License shall make any assignments of rights to USPS necessary to transfer ownership of such copyrights, trademarks or other protection to USPS.

d. Licensee agrees that, during the term of this Agreement or thereafter, Licensee will not contest, harm, misuse, or bring into disrepute any of USPS's rights, in and to the Licensed Properties, or contest the validity of this Agreement. Licensee acknowledges and agrees that USPS would not have an adequate remedy at law and would be irreparably harmed in the event Licensee were to misuse, harm, or bring into disrepute any of USPS's Licensed Properties or if Licensee were to breach any term of this Agreement concerning the proper use of the Licensed Properties. Accordingly, it is agreed that, in the event of any breach or threatened breach of this paragraph or any term or condition of this Agreement concerning the proper use of the Licensed Properties, USPS, in addition to any other remedies at law or in equity, shall be entitled to equitable relief, including but not limited to immediate injunctive relief without the requirement of posting a bond or other security and without resorting to Arbitration herein.

9. **Termination:**

a. Without prejudice to any other rights, and in addition to any termination rights provided elsewhere in this Agreement, USPS shall have the right to terminate this Agreement upon written notice to Licensee at any time if:

(1) Licensee shall fail to make any payment due hereunder, which such payment is not in dispute, or to deliver any of the statements herein referred to, and if such default shall continue for a period of ten (10) calendar days after written notice of such default is given in accordance with Section 17, below;

(2) Licensee shall fail to perform any other material term or condition of this Agreement and, unless otherwise provided herein, does not cure such failure within thirty (30) calendar days after written notice is given in accordance with Section 17, below; or

(3) Licensee files a petition in bankruptcy, or is adjudicated a bankrupt, or if a petition in bankruptcy is filed against Licensee, or if Licensee becomes insolvent, or makes an assignment for the benefit of its creditors or an arrangement pursuant to any bankruptcy law, or if Licensee discontinues its business, or if a receiver is appointed for Licensee or its business. In the event this Agreement so terminates, neither Licensee nor its receivers, representatives, trustees, agents, administrators, successors, and/or assigns shall have any right to manufacture, distribute, sell, exploit or in any way deal with any of the Licensed Articles except with and pursuant to USPS' prior written consent.

b. Licensee shall have the right to terminate this Agreement upon thirty (30)

days prior written notice to USPS given in accordance with Section 17, below, if USPS shall fail to perform any material term or condition of this Agreement unless, within the notice period, USPS cures the breach or provides Licensee with notification that the breach cannot reasonably be cured within that period and provides reasonable assurances that the breach will be cured in a period acceptable to Licensee.

c. Termination of this license under the provisions of this paragraph shall be without prejudice to any rights which either party may otherwise have against the other party.

d. Upon the termination of this Agreement by USPS, notwithstanding anything to the contrary herein, all royalties on sales theretofore made shall become immediately due and payable and no Royalty Payments and Guaranteed Minimum Royalties shall be repayable, and any balances owed on Guaranteed Minimum Royalties shall be immediately due and payable. Notwithstanding any termination or expiration of this Agreement, USPS shall have and hereby reserves all rights and remedies which it has or which are granted to it by operation of law, to enjoin the unlawful or unauthorized use of the Licensed Properties.

10. <u>**Disposal of Stock/Sell-Off Period**</u>:

a. After expiration or termination of this Agreement, Licensee shall have no further right to manufacture, advertise, distribute, sell, or otherwise deal in any Licensed Articles except as hereinafter provided.

b. It is specifically understood that Licensee shall not sell or dispose of any such Licensed Articles in job lots at reduced prices, other than is customary in the ordinary course of business.

c. After expiration or termination of this Agreement, the parties shall follow the procedures set forth below:

(1) Licensee shall prepare a complete, written inventory list and submit same to USPS within ten (10) days of the expiration or termination of this Agreement. Such list must include orders on hand, work in process, and finished Licensed Articles.

(2) USPS shall have thirty (30) days thereafter to decide whether to purchase any or all inventory at the lower of Licensee's cost or fair market value. If USPS exercises such right of purchase, Licensee shall deliver the inventory referred to in USPS's notice of purchase within ten (10) days after USPS's said notice with the exception of inventory necessary to fulfill orders on hand. USPS shall pay Licensee for such delivered inventory as is in marketable condition within thirty (30) days after its receipt thereof.

(3) If USPS does not elect to purchase any or all of the inventory as set forth above, Licensee, on a non-exclusive basis, may dispose of Licensed Articles which are on hand or in process at the time of such expiration or termination, for a period of not more than ninety (90) days thereafter, provided all royalty payments with respect to that ninety (90) day period are made in accordance with provisions herein. Licensee shall have no right to dispose of Licensed Articles if this Agreement is terminated under Paragraphs 9.a.1, 9.a.3 or 9.a.4 herein.

d. Except as specifically provided in this Agreement, on the expiration or termination of this Agreement, all of the rights of Licensee under this Agreement shall terminate herewith and shall revert immediately to USPS. All royalties on sales made shall become immediately due and payable, and Licensee shall discontinue all use of the Licensed Properties and shall promptly transfer to USPS, free of charge, all registrations, filings and rights with regard to the Licensed Property which Licensee may have possessed at any time. The underlying rights, including but not limited to any and all trademarks and copyrights to all artwork, photographs, drawings, illustrations, forms, patterns and similar items developed by Licensee in the manufacture, sale or distribution of Licensed Articles, are the property of USPS.

11. **Dispute Resolution:** If a dispute arises out of or relates to this Agreement, or the breach thereof, and if the dispute cannot be settled through direct discussions, the parties agree first to endeavor to settle the dispute in an amicable manner by negotiation between the parties at the level of contracting officer. If the dispute cannot be settled at that level within 30 calendar days of the start of such negotiations, then the parties may, by mutual agreement, conduct a non-binding mediation proceeding under such rules and procedures as they may agree upon. Thereafter, any unresolved controversy or claims arising out of or relating to the Agreement, or the breach thereof, may be brought by a party in the appropriate judicial forum as further defined herein.

12. **Consent To Jurisdiction:** With respect to any suite, action or other proceeding relating to the Agreement that has not been resolved by negotiation or mediation (collectively "Proceedings"), the parties each irrevocably submit to the exclusive personal jurisdiction of the United States District Court for the District of Columbia and

waive any objection that it may have at any time to the laying of venue of any Proceedings brought in such court, waive any claims that such Proceedings have been brought in an inconvenient forum and further waive claims the right to object, with respect to such Proceedings, that such court does not have personal jurisdiction over such party.

13. <u>Choice Of Law:</u> This Agreement shall be governed by and construed in accordance with principles of federal common law, or if there is found to be no such common law, then the law of the State of New York. Further, the parties each agree and acknowledge that neither the provisions of the USPS Purchasing Manual nor the Contract Disputes Act of 1978, 41 USC §601 et seq., shall apply to this Agreement, and the parties waive any and all express and implied remedies, recourse or administrative procedures provided or created thereby.

14. **<u>Indemnification</u>:** Excluding claims based upon use of the Licensed Properties, Licensee agrees to defend, indemnify and hold USPS and/or any of its agents and assignees harmless against any and all claims, demands, causes of action, liability, loss, damage, judgments or expense (including reasonable attorneys' fees and court costs) arising out of Licensee's design, manufacture, distribution, shipment, labeling, sale, distribution, advertisement, or promotion of the Licensed Articles or the labeling, packaging, advertising and promotional materials for the Licensed Articles. USPS shall have the right to defend any such claim or suit through counsel of its own choice.

15. <u>Insurance</u>: Licensee shall, throughout the term of this Agreement, including extensions, and for a period of two (2) years thereafter, obtain and maintain at its own cost and expense a third-party liability insurance policy with a recognized insurance

carrier acceptable to USPS (such acceptance not to be unreasonably withheld), naming USPS and Equity Management Inc., Inc. as "Additional Named Insureds" or the like, including a waiver of subrogation in favor of USPS. The amount of coverage shall be in accordance with the amount set forth in the Underlying Agreement. This insurance shall provide for at least sixty (60) days prior written notice to USPS and Licensee of the cancellation or any material change or modification in the terms and conditions of the policy. Licensee shall, not more than thirty (30) days after the signing of this Agreement and, thereafter, from time to time upon reasonable request by USPS, promptly furnish to USPS the requisite certificates of insurance, or, upon USPS's request, certified copies of said insurance policies, satisfactory to USPS, as to the maintenance of the insurance described above. Licensee shall not distribute or sell the Licensed Articles prior to receipt by USPS of such evidence of insurance.

We were confidable with last draft

16. **Renewal**: Until ~~six~~ three (~~6~~3) months prior to the expiration of the Initial Term of the Agreement, Licensee shall have the option to renew this Agreement for the First Renewal Term provided in the Underlying Agreement. Any renewal pursuant to this paragraph is subject to the following conditions: (i) this Agreement has not been terminated in accordance with the provisions hereof, and (ii) Licensee ~~has achieved the Minimum Net Sales set forth in the Underlying Agreement."~~ met the conditions set forth in Exhibit D.

17. **Notices**: All notices and statements to be given and all payments to be made hereunder, shall be given or made at the respective addresses of the parties as set forth in the Underlying Agreement unless notification of a change of address is given in writing. Any notice shall be sent by registered or certified mail, and shall be deemed to

have been given on the third business day after it is mailed.

18. **Joint Ventures:** Nothing herein contained shall be construed to place the parties in the relationship of partners or joint venturers or agents, and ~~Licensee~~ neither party shall have ~~no~~ the power to obligate or bind ~~USPS~~ the other party in any manner whatsoever. Licensee warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Licensee for the purpose of securing business. For breach or violation of this warranty, USPS shall have the right to terminate this Agreement without liability or in its discretion, to recover the full amount of such commission, percentage, brokerage or contingent fee. No member of, or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this Agreement or to any benefit that may arise therefrom; but this prohibition shall not be construed to extend to this Agreement if made with a corporation for its general benefit.

19. **Enforcement of Licensed Properties:**

a. Licensee agrees to cooperate with and assist USPS in protecting and enforcing USPS's rights to the Licensed Properties. Licensee shall promptly inform USPS of any infringement or other violations of the Licensed Properties that come to its attention. USPS shall have the sole right at its own expense to determine whether or not any action shall be taken on account of any such infringement or violations. USPS shall receive all amounts awarded as damages, profits, settlement proceeds or otherwise in connection with such claims or suits.

b. Licensee agrees not to contest or otherwise challenge or attack USPS's rights in the Licensed Properties or the validity of the license granted herein during the term of this Agreement and thereafter. Licensee further agrees not to do anything either by act of omission or commission which might impair, jeopardize, violate or infringe the Licensed Properties, or to misuse or bring into dispute the Licensed Properties.

c. Licensee shall not use any of the Licensed Properties as part of its company name, corporate name or trade name, and shall not attempt to register any of the Licensed Properties or confusingly similar marks or substantially similar designs in the Licensed Territory or elsewhere during the term of this Agreement or thereafter, or aid or abet anyone else in doing so.

d. The administrative and judicial defense of the Licensed Properties in the Licensed Territory shall be undertaken solely by USPS. Licensee agrees to furnish USPS or its designated legal representative with all proof and commercial, technical or other information or assistance required and which Licensee is able to furnish, as well as such other assistance as USPS or its lawyers may reasonably require for this purpose. Licensee shall, if requested by USPS, join USPS in the aforementioned administrative and judicial defense of the Licensed Properties, the cost of which shall be borne exclusively by USPS.

e. Licensee agrees to cooperate with USPS in any effort that USPS may deem advisable to record Licensee as a registered user or the like. Upon expiration or termination of this Agreement for any reason, Licensee shall similarly cooperate with USPS in expunging any such recordations that may exist. All expenses associated with such recording and expungement of recordations shall be borne by USPS.

20. **No Assignment**: This Agreement shall be binding upon and inure to USPS and its successors and assigns, but may not be assigned, transferred, or delegated by Licensee in whole or in part with respect to any right or obligation herein without the prior written consent of USPS, which consent shall not be unreasonably withheld. Any assignment without USPS consent shall be void. A transfer of the legal and/or beneficial ownership, whether by operation of law or otherwise, of more than 25% of the voting equity of Licensee (other than transfers of voting equity among the present shareholders or owners of Licensee) shall be deemed an assignment or transfer of the license hereunder that shall require the prior written consent of USPS.

21. **Force Majeure**: It is understood and agreed that in the event that an act of the government, or war conditions, or fire, flood or labor trouble in the factory of Licensee or in the factory of those manufacturing Licensed Articles, prevents the performance by Licensee of the provisions of this Agreement, then such nonperformance by Licensee shall not be considered as grounds for breach of this Agreement and such nonperformance shall be excused while the conditions herein prevail and for two (2) months thereafter.

22. **Miscellaneous:** This Agreement constitutes the entire Agreement and understanding between the parties hereto and terminates and supersedes any prior Agreement or understanding relating to the subject matter hereof between USPS and Licensee. USPS and Licensee are not relying upon any statements, warranties, or representations except those contained in this Agreement. The paragraph and other headings contained herein are for reference purposes only and will not affect the meaning of interpretation of this Agreement. None of the provisions of this agreement can be waived or modified except in writing signed by both parties, and there are no representations, promises, agreements, warranties, covenants or undertakings other than those contained herein.

23. **No Reliance On Other Representations:** The parties have not relied on any representations, promises, warranties, covenants, statements, or undertakings by the other party or its counsel other than those contained in this Agreement.

24. **Time Is Of The Essence:** Time is of the essence in this Agreement.

**Concurrence (Initial)** ________

# EXHIBIT C – FORM OF ROYALTY STATEMENTS
EQUITY MANAGEMENT INC.

SALES AND ROYALTY REPORT

To: Equity Management Inc.
Attn: Contract Administration
4365 Executive Dr., Suite 1000
San Diego, CA 92121

From: (Licensee) ______________________

Equity: (Licensor) ______________________

Licensed Territory: ______________________
(Report required for each country in which the Licensed Products were sold)

Quarter: From: __________ To: __________

| (a) Item No. | (b) Description | (c) Unit Price | (d) Units Sold | (e) Total Unit Sales |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| (f) | Totals | | | |

(g) Royalty Rate ________%; Total Earned Royalties $ __________

(h) Unapplied Advance at Quarter Start $ __________

(i) Difference; Subtract (h) from Line (g) $ __________

(j) Annual Guaranteed Royalties (divided by 4) $ __________

(k) Payment Accompanying this Report (pay greater of Line (i) or (j)) $ __________

The above Report is certified to be true and correct by the above named Licensee

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

USPS



SWL 742

## EXHIBIT D -- RENEWAL TERMS

Type of Renewal: Automatic

Renewal Hurdle Minimum:

Licensee's Net Sales during the four quarters beginning 10/1/03 and ending 9/30/04 must generate a minimum of $60,000 in earned royalties in order for Licensee to qualify for an automatic renewal.

Number of Renewals: One

Renewal Term: Three Years

Special Renewal Conditions: Not Applicable

Renewal Term Earned Royalty Percentages: 8% of Net Sales.

Guaranteed Minimum Royalties:

The following Guaranteed Minimum Royalties for the Renewal Term shall be paid in equal quarterly installments:

| | | |
|---|---|---|
| Contract Period 4 | 1/1/05 – 12/31/05 | The greater of $60,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 5 | 1/1/06 – 12/31/06 | The greater of $70,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 6 | 1/1/07 – 12/31/07 | The greater of $80,000 or 75% of the royalties due for Contract Period 3. |

Renewal Licensed Properties:

Licensee shall submit to USPS by no later than July 1, 2004, a list of the 270 wholly-owned stamp designs that Licensee desires to use on the Licensed Articles during the Renewal Term. Said list must be in the form of the list set forth in Exhibit E. Approval of the list is in the sole discretion of the USPS. USPS shall notify Licensee of its decision concerning the list within 90 days of receipt thereof.

# *Sterling, Winchester & Long*

*P.O. Box 211299*
*Martinez, Ga. 30907*
(706) 231-5558
(706) 868-0216 Fax

*1022 Dunbarton Rd*
*Williston, SC 29853*
*(803) 266-2555*
SWL@Long.net

October 27, 2000

Ms. Robin M. Stemen
Associate Counsel
4365 Executive Dr. Suite 1000
San Diego, Ca. 92121

Re: United Stated Postal Service License Agreement

Dear Ms. Stemen:

We have reviewed your October 24, 2000 draft of the referenced agreement with the proposed changes or deletions from our October 18, 2000 conference call with you and Mr. Smith. We believe that this draft reflects all of the main points we discussed and agreed on during the last two conference calls and we greatly appreciate your effort toward this process.

Please allow us to direct your attention to those areas where we think further clarity is needed.

Our comments are as followed:

2. Licensed Articles:

**Your last sentence**: "Licensee must use the stamps in the thematic groupings set forth on Exhibit A and may only use each stamp design once during the Initial Term."

Our plans are to use stamp designs within the thematic groupings where they appropriately represent the theme. For example: We may identify a George Washington stamp design as a President thematic grouping and also use that stamp in our 18th Century series or Frederick Douglass in our Black Heritage series and use that stamp in our Civil War series. The stamp designed may only be identified in one Exhibit A thematic grouping but may be appropriately applicable and used in another thematic grouping. We will never use a stamp in a thematic grouping that's not representative of that theme. In addition to our quality controls, EMI and USPS must approve each calendar, which should prevent any USPS image or property miss representation.

The second part of that sentence to our knowledge was never discussed or agreed to. We did not anticipate this draft including any additional conditions that were not discussed during our conference calls or that would depart from the original agreement in principle.

Our analysis of this language is that it would restrict, prohibit and impede SW&L and USPS from increasing revenue as a result of market demands, reprints/second addition of a stamp or calendar that exceeded sales expectation or somehow became an American calendar icon. Our understanding of the agreement is that we have the rights to 270 wholly-owned stamp designs for a three-year contract period with a limitation of appropriate theme usage condition. We left the

last conference call, in principle, with the understanding that all negotiation and condition changes were completed.

6. Initial Term: Is this date an oversight July 1, 2000? Contract period should start when we enter into this contract. If there is some material reason for July 1, 2000 that we are not aware of, please advise. We are most comfortable with the start date being the date we fully enter into this agreement. Your last sentence states: "Each consecutive twelve month period thereafter shall be deemed a Contract Period." We are under the impression that we are entering into a three-year contract period, as set out in Contract Period 1 above in this paragraph.

2. Grant of License:

b. Limitations on Grant

b (6) During our September 27, 2000 conference call it was agreed that, at the end of the last sentence in this section the following language would be added: " except as provided in paragraph (5) five above." Please add?

16 Renewal: Your change from the original agreement 6 months to 3 months was never discussed or agreed to. We are comfortable with the original 6 month as agreed.

During our last conference call we raised the question of how could we have the ability to use non-exclusive stamp designs that were not part of our 270 stamps. It was our understanding from you in discussion with Mr. Smith that there would be a provision in this agreement that would allow us to make a formal request to use additional stamps. We could not find such a provision in this draft agreement.

Robin, once you have had an opportunity to review our comments, please contact me with any questions.

Again, thank you for your attention to this matter.

Sincerely,

J.G. Long
CEO & Managing Officer

SWL

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

*858 558-2500 x 112*
*858 558-2507 FAX*

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| J.G. Long | SW&L | (706) 868-0216 |

Total pages: 3, including this page

Date: Nov.ember 9, 2000

From: Robin M. Stemen, Esq.
Associate Counsel

SW&L

IMPORTANT NOTICE: THIS INFORMATION IS CONFIDENTIAL AND PRIVILEGED
This communication, which includes all the pages which are part of this transmission, is intended for the use of the individual or entity to which it was intended to be delivered. It may contain information that is privileged, proprietary, confidential and exempt from disclosure under applicable law. If the recipient or reader of this communication is not the intended recipient, or the employee or agent responsible for delivery of the communication to the intended recipient, you are hereby notified that any use, application, revelation, disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, destroy all copies and return the communication to us at the above address via mail or courier delivery.

# EQUITY MANAGEMENT INC.®

OFFICES IN: SAN DIEGO • DETROIT • CHICAGO • NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 9212[illegible]
(858) 558-2500
FAX (858) 558-2507

November 9, 2000

Via Facsimile

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service License Agreement

Dear Mr. Long:

As you know, Mr. Loyd and I had two separate telephone conferences following my receipt of your October 27th letter. This letter will confirm my response to each of the points you raised.

Licensed Articles: I will delete the phrase "and may only use each stamp design once during the Initial Term." SW&L will, however, be required to submit its list of stamp designs in thematic groupings. This is the only way that we can determine the appropriateness of granting you the stamp designs you request. If a stamp design is included in more than one thematic grouping, you should simply note that on the list so that it is only counted once toward the total stamp designs. In order to alleviate any concerns you might have, I will also add a phrase that SW&L may use the subject stamp designs in other thematic groupings with the prior written approval of the USPS.

Initial Term: As I explained to Mr. Loyd, the July 1, 2000 date must remain as it reflects the approximate time that you began development of the product using the USPS marks. You are correct that the full initial term of the agreement is three years. That initial term is broken down into contract periods for accounting/reporting purposes.

Limitations On Grant (§2(b)(6)): After Mr. Loyd explained your specific concerns with the language in §2(b)(6), I would recommend that we delete the phrase "computer and/or any other electronic publishing and/or delivery systems" from that section in lieu of the change you requested.

Renewal: This change shortened the amount of notice SW&L is required to give the USPS concerning whether SW&L intends to renew its contract. I made this change so that SW&L would not be in a position of having to commit to a renewal of the contract until it knew whether it was going to be granted the renewal term stamp designs it requested. Once I explained this to Mr. Loyd, he seemed comfortable with the change.

As with previous changes we have discussed, the changes suggested above have not yet been reviewed or approved by the USPS and are subject to change.

SWL

Mr. J.G. Long
Sterling, Winchester & Long
November 9, 2000
Page 2 of 2

It is my understanding that, with the above noted changes, the contract is now acceptable to SW&L. Upon receipt and approval of the list of stamp designs, I will generate a final draft of the contract for your review and execution.

Sincerely,

Robin M. Stemen
Associate Counsel

Encl.

cc: Dana Smith (w/o encl.)
Ilene Kent (w/o encl.)
Marcie Chick (w/o encl.)

SWL

~~4~~5. Channels of Distribution:

Wholesale to bookstores, specialty stores, Philatelic catalogs and Philatelic Centers ~~merchandise stores~~; Retail via Licensee's website, subject to the conditions set forth in Paragraph ~~17~~18(a)~~(c)~~ below.

~~5~~6. Initial Term: July 1, 2000 through December 31, 200~~3~~4. Contract Period 1 shall commence July 1, 2000 and shall end December 31, 200~~1~~2. Each consecutive twelve month period thereafter shall be deemed a Contract Period.

~~6~~7. Renewal: See attached Exhibit D.

We have been advised that the correct term for Merchandise store is Philatelic Centers. Please make the change.

USPS

~~7~~8. Royalty Rate: 8% of Net Sales of Licensed Articles sold at wholesale prices and 5% of Net Sales of Licensed Articles sold at retail prices. The term "Net Sales" is defined in Exhibit B to this Agreement.

~~8.~~9. Guaranteed Minimum Royalty and Schedule: Licensee shall pay the following Guaranteed Minimum Royalties for the Initial Term:

| | |
|---|---|
| Contract Period 1 [7/1/00-12/31/02] | $50,000.00* |
| Contract Period 2 [1/1/0~~2~~3-12/31/03] | $ 50,000.00 |
| Contract Period 3 [1/1/0~~3~~4-12/31/04] | $ 50,000.00 |

*The Guaranteed Minimum Royalty for Contract Period 1 shall be paid upon execution of this Agreement. The Guaranteed Minimum Royalty for Contract Periods 2 and 3 shall be paid in equal quarterly installments, as described in Section 4(c) of the attached Exhibit B.

~~In the event that Licensee elects to produce one or more 2001 calendars, the Guaranteed Minimum Royalties for Contract Period 1 shall be increased by the amount of Royalties actually generated by the sale of said calendar(s). These additional Guaranteed Minimum Royalties shall be paid quarterly.~~

~~9~~10. Payments and Royalty Statements Shall Be Sent to:

USPS Licensing Program
PO Box 7247-7087
Philadelphia, PA 19710-7087

~~10~~11. Notices to USPS Shall Be Sent to USPS and its Licensing Agent as Follows

USPS notice: U.S. Postal Service
Licensing Program/Stamp Development
475 L'Enfant Plaza SW, Rm 4474E
Washington, DC 20260-2437

Representative notice: Equity Management Inc.
4365 Executive Drive, Ste. 1000
San Diego, CA 92121
Attn: Manager of USPS Licensing Program

~~11~~12. Notices to Licensee Shall Be Sent to:

Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853-1718
Attn. J.G. Long

~~With a copy to:~~

~~Fulcher, Hagler, Reed, Hanks & Harper, LLP~~
~~Attn: Russell V. Mobley, Esq.~~
~~Post Office Box 1477~~
~~Augusta, GA 30903-1477~~

~~12~~13. Insurance: $1,000,000 U.S. with a deductible that does not exceed 10%.

~~13~~14. Form of Copyright And Trademark Notices: See Exhibit A to this Agreement.

~~14.~~15. Marketing Dates:

| | |
|---|---|
| Deadline for prototypes to Licensor: | 7/31/00 |
| Deadline for initial manufacturing run: | ~~Not applicable~~12/31/01 |
| Deadline for submission of advertising and promotion materials: | ~~Not applicable~~12/31/01 |
| Initial sale to Distribution Channel: | ~~Not applicable~~12/31/01 |

~~15~~16. Standard Terms And Conditions: See Exhibit B to this Agreement, which is incorporated herein by reference.

~~16~~17. Licensee Federal Tax Identification Number: 57-1099225

~~17~~18.~~-~~Other Terms And Conditions:

~~(a)The USPS shall not use or license others to use in connection with a 2001 calendar those stamp designs identified in the attached Exhibit E that are wholly owned by the USPS.~~

~~(b)Notwithstanding the time parameters set forth in Section 5 of Exhibit B, the USPS shall approve or disapprove any 2001 calendar within ten (10) business days of submittal by Licensee pursuant to Section 5 of Exhibit B. All other terms and conditions set forth in Section 5 of Exhibit B shall remain in full force and effect.~~

~~(c)~~(a) Prior to execution of this Agreement Licensee registered the following domain names containing Licensed Properties belonging to the USPS:

"uspscalendar2001.com"

"uspscalendar2002.com"
"uspscalendar2003.com"
"uspscalendar2004.com"
"uspscalendar2005.com"
"uspscalendar.com"
"uspsofficialcalendar.com"

Licensee hereby irrevocably assigns all rights, title and interest it has in said domain names to USPS and agrees to execute any additional documentation that might be necessary to formalize said assignment. USPS hereby grants to Licensee the exclusive right to use the domain names "uspscalendar2002.com," "uspscalendar2003.com," "uspscalendar2004.com" and "uspscalendar2005.com" during the term of this Agreement for the sole purpose of selling the Licensed Articles. Licensee may not use the domain names "uspsofficialcalendar.com" or "uspscalendar.com" at any time for any purpose. USPS shall not, during the Initial Term or any renewal term, use, or license others to use, the above listed domain names for any purpose.

Licensee represents and warrants that it has not registered any other domain names containing Licensed Properties belonging to the USPS and that it shall not register any other domain names containing Licensed Properties belonging to the USPS without USPS' prior written permission.

Upon EMI's receipt of satisfactory documentation of said registrations and the cost thereof, Licensee shall be entitled to recoup any registration fees actually incurred and paid prior to September 1, 2000 in the form of an offset against its Guaranteed Minimum Royalties in Contract Period 2. Any other expenses related to said domain names, including registration fees incurred or paid after September 1, 2000, and the cost of development and maintenance of any websites associated with those domain names, shall be the sole responsibility of Licensee. All webites shall be subject to the review requirements set forth in this Agreement and to any USPS policies or procedures governing websites.

~~(d)Licensee is under no obligation to produce a 2001 calendar and any decision whether or not to do so shall be in Licensee's sole discretion. In the event Licensee elects to do so, Licensee shall pay the additional Guaranteed Minimum Royalties set forth in Paragraph 8 above.~~

(b) Licensee acknowledges that the USPS is unable to confirm that it is the sole owner of all of the stamp designs listed on Exhibit E, and that third parties may claim an ownership interest in certain of those stamp designs. In the event a third party asserts an ownership interest in any of the stamp designs listed on Exhibit E, it shall be Licensee's sole responsibility to attempt to obtain permission from the third party to use such stamp design. Any expense related to obtaining said permission, including payment of royalties, shall be borne solely by Licensee and shall not modify in any way Licensee's obligations under this Agreement. If Licensee is not able to obtain permission from the third party,

Sections:

5. We've been advised that the Official term is Philatelic Centers. Please make the change

8. Based on the USPS not being able to

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO              1780
CONNECTION TEL          17068680216ppp4044
SUBADDRESS
CONNECTION ID
ST. TIME              12/11 08:42
USAGE T               15'56
PGS. SENT              37
RESULT                OK
```

# EQUITY MANAGEMENT INC.®

**FACSIMILE**

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

858-558-2500
FAX 858-558-2507

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| J.G. Long | Sterling, Winchester & Long | 706-868-0216 |

***Date: December 8, 2000*** ***From: Robin Stemen***

Total pages: *37*, including this page

# EQUITY MANAGEMENT INC.®

## FACSIMILE

*4365 Executive Drive, Suite 1000*
*San Diego, CA 92121*

858-558-2500
FAX 858-558-2507

| ATTENTION | COMPANY | FAX NUMBER |
|---|---|---|
| **J.G. Long** | Sterling, Winchester & Long | 706-868-0216 |

***Date: December 8, 2000*** ***From:*** ***Robin Stemen***

Total pages: *37*, including this page

IMPORTANT NOTICE: THIS INFORMATION IS CONFIDENTIAL AND PRIVILEGED

This communication, which includes all the pages which are part of this transmission, is intended for the use of the individual or entity to which it was intended to be delivered. It may contain information that is privileged, proprietary, confidential and exempt from disclosure under applicable law. If the recipient or reader of this communication is not the intended recipient, or the employee or agent responsible for delivery of the communication to the intended recipient, you are hereby notified that any use, application, revelation, disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, destroy all copies and return the original communication to us at the above address via mail or courier delivery.

Thank you! For information regarding this fax please call the number above.

MANAGEMENT INC.

OFFICES IN: SAN DIEGO · DETROIT · CHICAGO · NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

December 6, 2000

Via Overnight Mail

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service License Agreement

Dear Mr. Long:

Enclosed please find the most recent red lined draft of the above referenced agreement, which has been revised to incorporate the changes noted in my letter of November 9, 2000, the changes necessitated by the selection of stamp designs that may not be wholly owned, a provision allowing SW&L to defer selection of fourteen stamp designs, and the list of stamp designs. I believe this is all of the changes contemplated, but given the multiple drafts it may be that I missed something. If so, please be assured that it was simply an oversight. As with all previous changes, these changes have not yet been reviewed or approved by USPS and are therefore subject to change.

Please review the agreement at your earliest convenience and contact either Dana Smith, Jeff Olian or myself with any questions or concerns. As soon as you confirm that the agreement is acceptable, I will forward clean copies for execution.

Sincerely,

Robin M. Stemen
Associate Counsel

Encl.

cc: Dana Smith (w/o encl.)
Jeff Olian (w/o encl.)
Ilene Kent (w/o encl.)
Marcie Chick (w/o encl.)

1102

USPS Contract No. ______________

# LICENSE AGREEMENT

THIS AGREEMENT is made effective as of the 1st day of July 2000, by and between the UNITED STATES POSTAL SERVICE ("USPS"), an independent establishment of the United States government, and STERLING, WINCHESTER & LONG ("Licensee"), a South Carolina corporation with its principal place of business at 1022 Dunbarton Road, Williston, SC 29853-1718.

In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights ~~to Licensee~~ in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below and in the attached Exhibits A and B, incorporated herein by reference. Definitions of the various terms used below are listed in Exhibit B:

1. Licensed Properties: The Licensed Properties are the trademarks, service marks, trade dress and/or copyrights listed on Exhibits A and E to this Agreement.

2. Licensed Articles:

   An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, ~~including but not limited to, a series of calendars such as USPS National and State History, Black Heritage, USPS Commemorative Stamps, Kids World, and Celebrate the Century~~commencing with calendar year 2002. Licensee must obtain prior approval of the thematic groupings.

3. License Type: Non-exclusive; provided, however, that subject to the terms set forth herein, Licensee shall have the exclusive right to use the stamp designs listed on Exhibit E on the Licensed Articles. Nothing contained herein shall preclude the USPS from producing, or licensing others to produce, calendars utilizing stamp designs not listed on Exhibit E, or from using, or licensing others to use. the stamp designs listed on Exhibit E on items other than calendars.

~~3.~~4. Licensed Territory:

   United States, its territories and possessions.

Philatelic centers

~~4~~5. Channels of Distribution:

Wholesale to bookstores, specialty stores, Philatelic catalogs and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph ~~17~~18(a)~~(c)~~ below.

~~5~~6. Initial Term: July 1, 2000 through December 31, 200~~3~~4. Contract Period 1 shall commence July 1, 2000 and shall end December 31, 200~~1~~2. Each consecutive twelve month period thereafter shall be deemed a Contract Period.

~~6~~7. Renewal: See attached Exhibit D.

~~7~~8. Royalty Rate: 8% of Net Sales of Licensed Articles sold at wholesale prices and 5% of Net Sales of Licensed Articles sold at retail prices. The term "Net Sales" is defined in Exhibit B to this Agreement.

~~8.~~9. Guaranteed Minimum Royalty and Schedule: Licensee shall pay the following Guaranteed Minimum Royalties for the Initial Term:

| | |
|---|---|
| Contract Period 1 [7/1/00-12/31/02] | $50,000.00* |
| Contract Period 2 [1/1/0~~2~~3-12/31/03] | $ 50,000.00 |
| Contract Period 3 [1/1/0~~3~~4-12/31/04] | $ 50,000.00 |

*The Guaranteed Minimum Royalty for Contract Period 1 shall be paid upon execution of this Agreement. The Guaranteed Minimum Royalty for Contract Periods 2 and 3 shall be paid in equal quarterly installments, as described in Section 4(c) of the attached Exhibit B.

~~In the event that Licensee elects to produce one or more 2001 calendars, the Guaranteed Minimum Royalties for Contract Period 1 shall be increased by the amount of Royalties actually generated by the sale of said calendar(s). These additional Guaranteed Minimum Royalties shall be paid quarterly.~~

~~9~~10. Payments and Royalty Statements Shall Be Sent to:

USPS Licensing Program
PO Box 7247-7087
Philadelphia, PA 19710-7087

~~10~~11. Notices to USPS Shall Be Sent to USPS and its Licensing Agent as Follows

USPS notice: U.S. Postal Service
Licensing Program/Stamp Development
475 L'Enfant Plaza SW, Rm 4474E
Washington, DC 20260-2437

Representative notice: Equity Management Inc.
4365 Executive Drive, Ste. 1000
San Diego, CA 92121
Attn: Manager of USPS Licensing Program

~~11~~12. Notices to Licensee Shall Be Sent to:

Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853-1718
Attn. J.G. Long

~~With a copy to:~~

~~Fulcher, Hagler, Reed, Hanks & Harper, LLP~~
~~Attn: Russell V. Mobley, Esq.~~
~~Post Office Box 1477~~
~~Augusta, GA 30903-1477~~

~~12~~13. Insurance: $1,000,000 U.S. with a deductible that does not exceed 10%.

~~13~~14. Form of Copyright And Trademark Notices: See Exhibit A to this Agreement.

~~14.~~15. Marketing Dates:

| | |
|---|---|
| Deadline for prototypes to Licensor: | 7/31/00 |
| Deadline for initial manufacturing run: | ~~Not applicable~~12/31/01 |
| Deadline for submission of advertising and promotion materials: | ~~Not applicable~~12/31/01 |
| Initial sale to Distribution Channel: | ~~Not applicable~~12/31/01 |

~~15~~16. Standard Terms And Conditions: See Exhibit B to this Agreement, which is incorporated herein by reference.

~~16~~17. Licensee Federal Tax Identification Number: 57-1099225

~~17~~18.~~-~~Other Terms And Conditions:

~~(a)The USPS shall not use or license others to use in connection with a 2001 calendar those stamp designs identified in the attached Exhibit E that are wholly owned by the USPS.~~

~~(b)Notwithstanding the time parameters set forth in Section 5 of Exhibit B, the USPS shall approve or disapprove any 2001 calendar within ten (10) business days of submittal by Licensee pursuant to Section 5 of Exhibit B. All other terms and conditions set forth in Section 5 of Exhibit B shall remain in full force and effect.~~

~~(c)~~(a) Prior to execution of this Agreement Licensee registered the following domain names containing Licensed Properties belonging to the USPS:

"uspscalendar2001.com"

"uspscalendar2002.com"
"uspscalendar2003.com"
"uspscalendar2004.com"
"uspscalendar2005.com"
"uspscalendar.com"
"uspsofficialcalendar.com"

Licensee hereby irrevocably assigns all rights, title and interest it has in said domain names to USPS and agrees to execute any additional documentation that might be necessary to formalize said assignment. USPS hereby grants to Licensee the exclusive right to use the domain names "uspscalendar2002.com," "uspscalendar2003.com," "uspscalendar2004.com" and "uspscalendar2005.com" during the term of this Agreement for the sole purpose of selling the Licensed Articles. Licensee may not use the domain names "uspsofficialcalendar.com" or "uspscalendar.com" at any time for any purpose. USPS shall not, during the Initial Term or any renewal term, use, or license others to use, the above listed domain names for any purpose.

Licensee represents and warrants that it has not registered any other domain names containing Licensed Properties belonging to the USPS and that it shall not register any other domain names containing Licensed Properties belonging to the USPS without USPS' prior written permission.

Upon EMI's receipt of satisfactory documentation of said registrations and the cost thereof, Licensee shall be entitled to recoup any registration fees actually incurred and paid prior to September 1, 2000 in the form of an offset against its Guaranteed Minimum Royalties in Contract Period 2. Any other expenses related to said domain names, including registration fees incurred or paid after September 1, 2000, and the cost of development and maintenance of any websites associated with those domain names, shall be the sole responsibility of Licensee. All webites shall be subject to the review requirements set forth in this Agreement and to any USPS policies or procedures governing websites.

~~(d)Licensee is under no obligation to produce a 2001 calendar and any decision whether or not to do so shall be in Licensee's sole discretion. In the event Licensee elects to do so, Licensee shall pay the additional Guaranteed Minimum Royalties set forth in Paragraph 8 above.~~

(b) Licensee acknowledges that the USPS is unable to confirm that it is the sole owner of all of the stamp designs listed on Exhibit E, and that third parties may claim an ownership interest in certain of those stamp designs. In the event a third party asserts an ownership interest in any of the stamp designs listed on Exhibit E, it shall be Licensee's sole responsibility to attempt to obtain permission from the third party to use such stamp design. Any expense related to obtaining said permission, including payment of royalties, shall be borne solely by Licensee and shall not modify in any way Licensee's obligations under this Agreement. If Licensee is not able to obtain permission from the third party,

those listed as unknown

USPS

Licensee shall immediately discontinue its use of the subject stamp design, without modification of Licensee's obligations under this Agreement; provided, however, that Licensee shall have the right to request approval from USPS to substitute another wholly-owned stamp design in place of that stamp design it is unable to use.

Licensee further acknowledges that the exclusive nature of this Agreement is limited to those stamp designs that are wholly owned by USPS.

(c) Licensee shall have the right to supplement the stamp designs listed on Exhibit E with up to fourteen (14) additional ~~wholly-owned~~ wholly owned stamp designs, which stamp designs will be selected in accordance with this provision. Licensee shall submit to USPS a list of those additional stamp designs it wishes to utilize, along with an indication of the thematic grouping in which it will be used. USPS will then have thirty (30) days in which to approve or deny the request, in its sole discretion. If, as a result of USPS denying Licensee's request in whole or in part, Licensee does not obtain approval of fourteen (14) stamp designs through the first request, Licensee shall be permitted to submit additional requests until it has received approval of fourteen (14) additional wholly-owned stamp designs or May 31, 2002, whichever is sooner.

IN WITNESS WHEREOF, duly authorized representatives of USPS and Licensee have executed this Agreement, including the terms and conditions set forth in the attached Exhibits A and B.

| USPS | STERLING, WINCHESTER & LONG |
|---|---|
| By:______________________ | By:______________________ |
| Name: ______________________ | Name: ______________________ |
| Title: ______________________ | Title: ______________________ |
| Date: ______________________ | Date: ______________________ |

# EXHIBIT A -- LICENSED PROPERTIES

"Licensed Properties" shall mean the following United States Postal Service trademarks, service marks, trade dress and/or copyrights:

United States Postal Service® (USPS) Corporate Signature
Postal Seals (1782-1993 [® or ™])
Postmark USA™

Those ~~All~~ USPS stamp designs ~~to which USPS holds copyright~~listed on Exhibit E, including any supplement thereto aproved in writing by USPS [© _____ (year first publ.)]

Each use of a Licensed Property shall be accompanied by the appropriate designation indicated above. ~~LICENSEE shall insert the appropriate designation indicated above into the following notice, which is to be used in conjunction with any and all use of the Licensed Properties: "[® or ™ or © _____ (year first publ.)] © USPS 2000. All rights reserved."~~ Each Licensed Article shall bear the following notice: "Trademarks and copyrights used herein [or hereon] are properties of the United States Postal Service and are used under license to Sterling, Winchester & Long. All rights reserved." Licensee shall display the marks listed above only according to the specifications provided by USPS.

~~Licensee acknowledges and agrees that some stamp designs are jointly owned by the USPS and a Joint Owner(s) (defined in Exhibit B) and as such will require a separate contract between the Licensee and the Joint Owner(s). It is the Licensee's sole responsibility to obtain all necessary agreements from the Joint Owners to use such designs, and to provide proof of same to USPS, prior to design and production of the Licensed Articles. Upon Licensee's request, USPS shall make reasonable efforts to provide Licensee with contact information for Joint Owners, provided, however, that USPS' failure or inability to provide such information shall not constitute a breach of this Agreement.~~

~~USPS, at its option and in its sole discretion, may prospectively terminate the license as to any Jointly Owned stamp design at any time upon ten (10) days' written notice.~~

**Concurrence (Initial)** __________

EXHIBIT B – STANDARD TERMS AND CONDITIONS

These Standard Terms and Conditions shall be deemed fully incorporated in the License Agreement ("Underlying Agreement") to which this Exhibit B is attached, and these Standard Terms and Conditions and the Underlying Agreement shall hereinafter collectively be referred to as the Agreement. All terms used in these Standard Terms and Conditions shall, unless expressly provided to the contrary herein, have the same respective meanings as set forth in the Underlying Agreement. Unless expressly provided to the contrary herein, to the extent that any provision of these Standard Terms and Conditions conflicts with any provision of the Underlying Agreement, the Underlying Agreement shall control.

1. Definitions: For purposes of this Agreement, the following terms shall have the following specified meaning:

a. "Close-Out" means the sale of merchandise at a very low price in order to reduce inventory in a short time, which shall be permitted during the Sell-Off period under the terms and conditions specified herein.

b. "Collateral Materials" means packaging, cartons and containers, packing and wrapping material, tags and labels.

c. "Net Sales" mean the Licensee's gross sales, less only sales taxes and returns actually allowed by Licensee.

d. "Jointly-Owned Stamp Designs" means those United States postage stamp designs featuring trademarks, copyrights, or rights of publicity that are owned or controlled by USPS and a Joint-Owner(s).

e. "Joint-Owner(s)" means an entity, other than USPS or Licensee, recognized by USPS as owning rights in a stamp design.

f. "Premium" means any article used for the purpose of increasing the sale, promoting, or publicizing any other product or any service, including but not limited to incentives for consumers, sales forces, members of the trade, or fund-raising.

g. "Promotional Materials" means all advertising and sales materials, including but not limited to sales sheets, brochures, direct mail, and catalog layouts.

h. "Sell-Off Period" means the ninety (90) day period commencing after the termination of the Agreement, during which Licensee may dispose of excess inventories of Licensed Articles.

i. Unless otherwise stated herein, all references to "day(s)" shall refer to calendar days, not business days.

The terms identified in the Underlying Agreement shall have the meanings specified herein for purposes of this Agreement.

2. **Grant of License:**

a. Grant: Subject to the limitations set forth herein, USPS hereby grants to Licensee a non-transferable, non-exclusive license to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles bearing the Licensed Properties in the Licensed Territory during the Contract Periods provided herein.

b. Limitations on Grant:

(1) Licensee shall not have the right to grant sublicenses of any or all of its rights under this Agreement unless it first obtains USPS's prior written consent to each sublicense, which consent shall not be unreasonably withheld.

(2) No license is granted hereunder for the use of the Licensed Properties for any purpose other than upon or in connection with the Licensed Articles.

(3) USPS licenses Licensee to use the USPS corporate signature identified in Licensed Properties only in connection with the sale of Licensed Articles displaying Licensing Properties that are stamp designs and only for the purpose of indicating that the use of the Licensed Properties are authorized by USPS.

(4) Except as set forth in the Underlying Agreement, ~~N~~nothing in this Agreement shall be construed to prevent USPS from granting any other licenses for the use of the Licensed Properties in any manner whatsoever.

(5) Licensee shall not sell or distribute the Licensed Articles in any country outside the Licensed Territory and will not knowingly sell the Licensed Articles to persons who intend or are likely (based on information known to Licensee) to resell them in any country outside the Licensed Territory. Notwithstanding the foregoing, Licensee may sell and ship Licensed Articles outside the Licensed Territory in response to orders placed via Licensee's website provided that no such individual order is for more than five (5) of any one Licensed Article.

(6) No license is granted hereunder for use of the Licensed Properties in connection with or on premium sales, close-outs, door-to-door, television sales (excluding home shopping television networks), infomercials, contest products, combination sales, ~~computer and/or any other electronic publishing and/or delivery systems~~ or any similar methods of merchandising.

(7) USPS reserves any rights not expressly granted herein.

c. Licensee's Obligations:

(1) Licensee agrees to use its best efforts to sell, distribute and supply the Licensed Articles within the Licensed Territory. Licensee must begin the bona fide manufacture, distribution, and sale of the Licensed Articles on a Licensed Territory-wide basis on or before the date specified in the Underlying Agreement. Failure by the Licensee to timely engage in full and regular distribution and active marketing of the Licensed Articles is considered a material breach of this Agreement. If Licensed Articles are out of distribution in any country of the Licensed Territory for more than twelve (12) months, USPS may terminate the Agreement with respect to those specific Licensed Articles and country or countries of the Licensed Territories, at any time, in its sole discretion, and any and all rights in and to those Licensed Articles in those countries within the Licensed Territory revert immediately to USPS. If any rights with respect to some, but not all specific Licensed Articles or countries within the Licensed Territory shall revert to USPS pursuant to this paragraph, all of the remaining terms and conditions of this Agreement shall remain in full force and effect, including, but not limited to, payment of specified Royalty Payments and Guaranteed Minimum Annual Royalty.

(2) Licensee further undertakes to make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles through the Channels of Distribution specified in the Underlying Agreement. Licensee agrees to maintain adequate inventories of the Licensed Articles as an essential part of its distribution program. All Close-outs shall be sold only through retail outlets and traditional and accepted dealers in such merchandise and upon such terms and conditions as USPS,

in its reasonable discretion, determines appropriate, and shall not be sold to any person or entity which Licensee knows, or has reason to know based on information known to Licensee, will export such Close-outs from the Licensed Territory.

3. Term: This Agreement shall be for the period set forth in the Underlying Agreement, unless sooner terminated in accordance with the terms and conditions set forth herein.

4. Payment:

a. Royalty Rate: Licensee agrees that it will pay USPS a non-refundable royalty equal to the percentage set forth in the Underlying Agreement on Licensee's Net Sales of Licensed Articles made during the Term of this Agreement, any extensions or renewals, and any Sell-off Period ("Royalty Payments").

b. Guaranteed Minimum Payment: Licensee agrees to pay USPS the Guaranteed Minimum Royalty set forth in the Underlying Agreement, according to the payment schedule set forth therein. The Guaranteed Minimum Royalty Payment is an advance against and is deducted from the Royalty Payments due during the Initial Term. No portion of the Guaranteed Minimum Royalty Payment is refundable under any circumstance. If this Agreement is terminated as a result of a material breach of the Agreement by Licensee, the greater of all Guaranteed Minimum Royalty Payments and/or earned Royalty Payments due for the remainder of the Initial Term of the Agreement and any agreed-upon renewals thereof shall immediately become due and payable.

c. Statements and Payments: On or before the fifteenth (15th) day of the month following each calendar quarter, Licensee shall submit a full, accurate, and detailed statement in the format outlined in Exhibit C, signed by an authorized officer of Licensee, and certified as accurate, and simultaneously shall make all payments thereon. Such statements and payments shall be made payable to the U.S. Postal Service Licensing Program at the address in the Underlying Agreement, with a copy to USPS's representative at the address in the Underlying Agreement. Interest shall be charged against Licensee at the rate of one and one-half percent (1½%) over the current prime rate (CitiBank) or the maximum rate permitted by law, whichever is lower, and shall accrue on each unpaid amount from the first day payment becomes due through the date of payment. Licensee hereby waives all claims to the return of any royalty payments once made, including but not limited to claims for refund of payments for returns of Licensed Articles in subsequent reporting periods. Licensee shall furnish such statements to USPS whether or not any Licensed Articles were sold during the Period.

d. Sales to the Postal Service: Licensee shall not be required to make royalty payments on sales of Licensed Articles to USPS, whether for promotional use or retail sale, but Licensee shall reduce the sales price paid by USPS by an amount equal to the royalty. Licensee shall identify all sales to USPS on its quarterly statements.

5. **Approvals and Quality Control:** USPS shall have the right to approve or disapprove the nature and quality of all products or services offered for sale under this Agreement, the appearance and use of all marks licensed under this Agreement, and the appearance and use of all advertising and promotion for the products or the marks

covered by this Agreement, which approval shall not be unreasonably withheld.

a. USPS Approval of Licensed Articles: The styles, designs, packaging, contents, workmanship, and quality of all Licensed Articles and associate materials must be approved by USPS prior to the distribution or sale thereof. USPS maintains the right to take all reasonable actions which it deems necessary to ensure that Licensed Articles manufactured or sold hereunder are consistent with the high quality and reputation of the Licensed Properties.

b. Licensee Compliance with Applicable Law: All Licensed Articles shall be manufactured, sold, labeled, packaged, distributed, and advertised in accordance with all applicable laws and regulations.

c. Delivery and Approval of Samples:

(1) Licensee shall, before selling or distributing any Licensed Articles, furnish to USPS free of cost, for written approval, one each of concept art, final art, mock-ups, and prototypes of the Licensed Articles, and all designs which Licensee intends to use in connection with the Licensed Properties, to be followed by six (6) production samples of each Licensed Article, together with its Collateral Materials, and any additional samples as may be reasonably required. Licensee shall also submit all Promotional Materials for prior written approval by USPS. The Licensed Articles, Collateral Materials, and Promotional Materials shall be of a standard of quality, appearance, and style approved in writing by USPS prior to any advertising, sales, distribution or use of same taking place. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

(2) Any item submitted for approval shall be approved or disapproved within twenty (20) calendar days after receipt. USPS may extend the approval period an additional ten (10) calendar days by giving written notice to Licensee. Any disapproval shall include a written explanation of the reason(s) for the disapproval, and shall be without prejudice to Licensee's right to modify the item and re-submit it for review. If Licensee has not received approval or disapproval within the provided time frame, the submission shall be deemed disapproved. All approvals shall be solely at USPS's reasonable discretion, including that the item does not fit and/or reasonably support the imagery and equity of the Licensed Properties or the USPS.

(3) ~~A failure by USPS to affirmatively approve or disapprove a submitted item within 120 calendar days of formal submission of said item pursuant to this provision shall be a material breach of this Agreement.~~

~~(4)~~ After samples of the Licensed Articles, Collateral Materials, and Promotional Materials have been approved pursuant to this paragraph, Licensee shall not depart therefrom without written consent by USPS. In the event there is a departure from the approved samples, USPS shall have the right in the reasonable exercise of its sole discretion to withdraw its approval of such Licensed Articles, Collateral Materials, or Promotional Materials or terminate this Agreement unless Licensee cures such breach within thirty (30) calendar days of written notice of same.

d. Use of Property: License shall not use any other trademark or design in combination with any Licensed Property on any Licensed Article without USPS's prior written approval. Licensed Articles shall not be sold or otherwise distributed by Licensee under any mark other than the Licensed Properties. Licensee shall cause to

appear on all Licensed Articles produced hereunder, and on their tags, packaging, and the like such legends, markings, disclaimers, and trademark and copyright notices as USPS may specify. Whenever Licensee reproduces the stamp designs set forth in Exhibits A and E, it must reproduce them in their entirety on the Licensed Articles and licensee shall make no alterations, additions, subtractions, or modifications to such stamp designs without USPS's prior written approval. If any such alterations, additions, subtractions, or modifications result in the creation of a new or derivative work within the meaning of copyright law, Licensee hereby assigns any and all rights to such works, including but not limited to any and all copyrights, to USPS.

6. **Confidentiality:** Any information or documents received or learned by Licensee in any form related to USPS's stamp program, future stamp images, or any postal programs or initiatives not publicly available, shall constitute Confidential Information. Until such time as Licensee releases a Licensed Article, the specific design features of the Licensed Articles shall constitute Confidential Information, but Licensee's identity and the general nature of the Licensed Articles shall not constitute Confidential Information. The parties are -strictly prohibited from disclosing any Confidential Information. Failure to adhere to this requirement is a material breach of contract.

7. **Records:** Licensee agrees to keep accurate books of account and records covering all transactions relating to this Agreement. USPS and its duly authorized representatives shall have the right at all reasonable hours to examine such books of account and records in Licensee's possession or under its control with respect to the subject matter and terms of this Agreement, and shall have free and full access thereto for such purposes and for the purpose of making copies thereof. All such books of

account and records shall be kept available for at least three (3) years after the termination of this Agreement. Licensee further agrees, in order to facilitate inspection of its books and records with respect to amounts due, that it will designate a symbol or number that will be used exclusively in connection with Licensed Articles and with no other articles which Licensee may manufacture, sell or distribute. In the event that USPS or USPS's duly authorized representatives shall discover a discrepancy in favor of USPS of six percent (6%) or more on any Royalty Statement, Licensee shall pay to USPS the reasonable cost of such examination. The fee for said examination shall be Five Hundred Dollars ($500) per day, but in no event shall Licensee be charged in excess of Three Thousand Dollars ($3000) for any individual examination.

8. **Intellectual Property Rights**:

a. Licensee recognizes the great value of the goodwill associated with the Licensed Properties and acknowledges that all rights therein and goodwill attached thereto belong exclusively to USPS, and that all use of the Licensed Properties will inure to the benefit of USPS.

b. USPS may seek, in its own name and at its own expense, appropriate trademark and/or copyright protection for the Licensed Properties. USPS shall retain all right, title, and interests in the Licensed Properties, including any modifications or improvements made to the Licensed Properties by Licensee, but expressly excluding any calendar design developed by Licensee for use with the Licensed Articles provided that such design does not incorporate or include the Licensed Properties or any designation, insignia or mark which is the same as or confusingly similar to the Licensed

Properties.

c. In the event that Licensee requests that USPS obtain copyright, trademark, or other such protection for a particular item or in a particular country where USPS had not heretofore obtained such protection, USPS agrees to take reasonable steps to obtain such protection, provided, however, that Licensee shall reimburse USPS for the costs of filing, prosecuting, and maintaining same. Nonetheless, USPS shall own such copyright, trademark, or other such protection for a particular item or in a particular country and License shall make any assignments of rights to USPS necessary to transfer ownership of such copyrights, trademarks or other protection to USPS.

d. Licensee agrees that, during the term of this Agreement or thereafter, Licensee will not contest, harm, misuse, or bring into disrepute any of USPS's rights, in and to the Licensed Properties, or contest the validity of this Agreement. Licensee acknowledges and agrees that USPS would not have an adequate remedy at law and would be irreparably harmed in the event Licensee were to misuse, harm, or bring into disrepute any of USPS's Licensed Properties or if Licensee were to breach any term of this Agreement concerning the proper use of the Licensed Properties. Accordingly, it is agreed that, in the event of any breach or threatened breach of this paragraph or any term or condition of this Agreement concerning the proper use of the Licensed Properties, USPS, in addition to any other remedies at law or in equity, shall be entitled to equitable relief, including but not limited to immediate injunctive relief without the requirement of posting a bond or other security and without resorting to Arbitration herein.

9. Termination:

a. Without prejudice to any other rights, and in addition to any termination rights provided elsewhere in this Agreement, USPS shall have the right to terminate this Agreement upon written notice to Licensee at any time if:

(1) Licensee shall fail to make any payment due hereunder, which such payment is not in dispute, or to deliver any of the statements herein referred to, and if such default shall continue for a period of ten (10) calendar days after written notice of such default is given in accordance with Section 17, below;

(2) Licensee shall fail to perform any other material term or condition of this Agreement and, unless otherwise provided herein, does not cure such failure within thirty (30) calendar days after written notice is given in accordance with Section 17, below; or

(3) Licensee files a petition in bankruptcy, or is adjudicated a bankrupt, or if a petition in bankruptcy is filed against Licensee, or if Licensee becomes insolvent, or makes an assignment for the benefit of its creditors or an arrangement pursuant to any bankruptcy law, or if Licensee discontinues its business, or if a receiver is appointed for Licensee or its business. In the event this Agreement so terminates, neither Licensee nor its receivers, representatives, trustees, agents, administrators, successors, and/or assigns shall have any right to manufacture, distribute, sell, exploit or in any way deal with any of the Licensed Articles except with and pursuant to USPS' prior written consent.

b. Licensee shall have the right to terminate this Agreement upon thirty (30)

days prior written notice to USPS given in accordance with Section 17, below, if USPS shall fail to perform any material term or condition of this Agreement unless, within the notice period, USPS cures the breach or provides Licensee with notification that the breach cannot reasonably be cured within that period and provides reasonable assurances that the breach will be cured in a period acceptable to Licensee.

c. Termination of this license under the provisions of this paragraph shall be without prejudice to any rights which either party may otherwise have against the other party.

d. Upon the termination of this Agreement by USPS, notwithstanding anything to the contrary herein, all royalties on sales theretofore made shall become immediately due and payable and no Royalty Payments and Guaranteed Minimum Royalties shall be repayable, and any balances owed on Guaranteed Minimum Royalties shall be immediately due and payable. Notwithstanding any termination or expiration of this Agreement, USPS shall have and hereby reserves all rights and remedies which it has or which are granted to it by operation of law, to enjoin the unlawful or unauthorized use of the Licensed Properties.

10. **Disposal of Stock/Sell-Off Period:**

a. After expiration or termination of this Agreement, Licensee shall have no further right to manufacture, advertise, distribute, sell, or otherwise deal in any Licensed Articles except as hereinafter provided.

b. It is specifically understood that Licensee shall not sell or dispose of any such Licensed Articles in job lots at reduced prices, other than is customary in the ordinary course of business.

c. After expiration or termination of this Agreement, the parties shall follow the procedures set forth below:

(1) Licensee shall prepare a complete, written inventory list and submit same to USPS within ten (10) days of the expiration or termination of this Agreement. Such list must include orders on hand, work in process, and finished Licensed Articles.

(2) USPS shall have thirty (30) days thereafter to decide whether to purchase any or all inventory at the lower of Licensee's cost or fair market value. If USPS exercises such right of purchase, Licensee shall deliver the inventory referred to in USPS's notice of purchase within ten (10) days after USPS's said notice with the exception of inventory necessary to fulfill orders on hand. USPS shall pay Licensee for such delivered inventory as is in marketable condition within thirty (30) days after its receipt thereof.

(3) If USPS does not elect to purchase any or all of the inventory as set forth above, Licensee, on a non-exclusive basis, may dispose of Licensed Articles which are on hand or in process at the time of such expiration or termination, for a period of not more than ninety (90) days thereafter, provided all royalty payments with respect to that ninety (90) day period are made in accordance with provisions herein. Licensee shall have no right to dispose of Licensed Articles if this Agreement is terminated under Paragraphs 9.a.1, 9.a.3 or 9.a.4 herein.

d. Except as specifically provided in this Agreement, on the expiration or termination of this Agreement, all of the rights of Licensee under this Agreement shall terminate herewith and shall revert immediately to USPS. All royalties on sales made shall become immediately due and payable, and Licensee shall discontinue all use of the Licensed Properties and shall promptly transfer to USPS, free of charge, all registrations, filings and rights with regard to the Licensed Property which Licensee may have possessed at any time. The underlying rights, including but not limited to any and all trademarks and copyrights to all artwork, photographs, drawings, illustrations, forms, patterns and similar items developed by Licensee in the manufacture, sale or distribution of Licensed Articles, are the property of USPS.

11. **Dispute Resolution:** If a dispute arises out of or relates to this Agreement, or the breach thereof, and if the dispute cannot be settled through direct discussions, the parties agree first to endeavor to settle the dispute in an amicable manner by negotiation between the parties at the level of contracting officer. If the dispute cannot be settled at that level within 30 calendar days of the start of such negotiations, then the parties may, by mutual agreement, conduct a non-binding mediation proceeding under such rules and procedures as they may agree upon. Thereafter, any unresolved controversy or claims arising out of or relating to the Agreement, or the breach thereof, may be brought by a party in the appropriate judicial forum as further defined herein.

12. **Consent To Jurisdiction:** With respect to any suite, action or other proceeding relating to the Agreement that has not been resolved by negotiation or mediation (collectively "Proceedings"), the parties each irrevocably submit to the exclusive personal jurisdiction of the United States District Court for the District of Columbia and

waive any objection that it may have at any time to the laying of venue of any Proceedings brought in such court, waive any claims that such Proceedings have been brought in an inconvenient forum and further waive claims the right to object, with respect to such Proceedings, that such court does not have personal jurisdiction over such party.

13. **Choice Of Law:** This Agreement shall be governed by and construed in accordance with principles of federal common law, or if there is found to be no such common law, then the law of the State of New York. Further, the parties each agree and acknowledge that neither the provisions of the USPS Purchasing Manual nor the Contract Disputes Act of 1978, 41 USC §601 et seq., shall apply to this Agreement, and the parties waive any and all express and implied remedies, recourse or administrative procedures provided or created thereby.

14. **Indemnification:** Excluding claims based upon use of those Licensed Properties identified by USPS in Exhibit E as being wholly owned, Licensee agrees to defend, indemnify and hold USPS and/or any of its agents and assignees harmless against any and all claims, demands, causes of action, liability, loss, damage, judgments or expense (including reasonable attorneys' fees and court costs) arising out of Licensee's design, manufacture, distribution, shipment, labeling, sale, distribution, advertisement, or promotion of the Licensed Articles or the labeling, packaging, advertising and promotional materials for the Licensed Articles. USPS shall have the right to defend any such claim or suit through counsel of its own choice..

15. **Insurance:** Licensee shall, throughout the term of this Agreement, including extensions, and for a period of two (2) years thereafter, obtain and maintain at its own

cost and expense a third-party liability insurance policy with a recognized insurance carrier acceptable to USPS (such acceptance not to be unreasonably withheld), naming USPS and Equity Management Inc.~~, Inc.~~("EMI") as "Additional Named Insureds" or the like, including a waiver of subrogation in favor of USPS and EMI. The amount of coverage shall be in accordance with the amount set forth in the Underlying Agreement. This insurance shall provide for at least sixty (60) days prior written notice to USPS and Licensee of the cancellation or any material change or modification in the terms and conditions of the policy. Licensee shall, not more than thirty (30) days after the signing of this Agreement and, thereafter, from time to time upon reasonable request by USPS, promptly furnish to USPS the requisite certificates of insurance, or, upon USPS's request, certified copies of said insurance policies, satisfactory to USPS, as to the maintenance of the insurance described above. Licensee shall not distribute or sell the Licensed Articles prior to receipt by USPS of such evidence of insurance.

16. **Renewal**: Until ~~six~~ three (~~6~~3) months prior to the expiration of the Initial Term of the Agreement, Licensee shall have the option to renew this Agreement for the First Renewal Term provided in the Underlying Agreement. Any renewal pursuant to this paragraph is subject to the following conditions: (i) this Agreement has not been terminated in accordance with the provisions hereof, and (ii) Licensee ~~has achieved the Minimum Net Sales set forth in the Underlying Agreement.~~"has met the conditions set forth in Exhibit D.

17. **Notices**: All notices and statements to be given and all payments to be made hereunder, shall be given or made at the respective addresses of the parties as set forth in the Underlying Agreement unless notification of a change of address is given in

writing. Any notice shall be sent by registered or certified mail, and shall be deemed to have been given on the third business day after it is mailed.

18. **Joint Ventures:** Nothing herein contained shall be construed to place the parties in the relationship of partners or joint venturers or agents, and ~~Licensee~~ neither party shall have ~~no~~ the power to obligate or bind ~~USPS~~ the other party in any manner whatsoever. Licensee warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Licensee for the purpose of securing business. For breach or violation of this warranty, USPS shall have the right to terminate this Agreement without liability or in its discretion, to recover the full amount of such commission, percentage, brokerage or contingent fee. No member of, or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this Agreement or to any benefit that may arise therefrom; but this prohibition shall not be construed to extend to this Agreement if made with a corporation for its general benefit.

19. **Enforcement of Licensed Properties:**

a. Licensee agrees to cooperate with and assist USPS in protecting and enforcing USPS's rights to the Licensed Properties. Licensee shall promptly inform USPS of any infringement or other violations of the Licensed Properties that come to its attention. USPS shall have the sole right at its own expense to determine whether or not any action shall be taken on account of any such infringement or violations. USPS shall receive all amounts awarded as damages, profits, settlement proceeds or

otherwise in connection with such claims or suits.

b. Licensee agrees not to contest or otherwise challenge or attack USPS's rights in the Licensed Properties or the validity of the license granted herein during the term of this Agreement and thereafter. Licensee further agrees not to do anything either by act of omission or commission which might impair, jeopardize, violate or infringe the Licensed Properties, or to misuse or bring into dispute the Licensed Properties.

c. Licensee shall not use any of the Licensed Properties as part of its company name, corporate name or trade name, and shall not attempt to register any of the Licensed Properties or confusingly similar marks or substantially similar designs in the Licensed Territory or elsewhere during the term of this Agreement or thereafter, or aid or abet anyone else in doing so.

d. The administrative and judicial defense of the Licensed Properties in the Licensed Territory shall be undertaken solely by USPS. Licensee agrees to furnish USPS or its designated legal representative with all proof and commercial, technical or other information or assistance required and which Licensee is able to furnish, as well as such other assistance as USPS or its lawyers may reasonably require for this purpose. Licensee shall, if requested by USPS, join USPS in the aforementioned administrative and judicial defense of the Licensed Properties, the cost of which shall be borne exclusively by USPS.

e. Licensee agrees to cooperate with USPS in any effort that USPS may deem advisable to record Licensee as a registered user or the like. Upon expiration or termination of this Agreement for any reason, Licensee shall similarly cooperate with USPS in expunging any such recordations that may exist. All expenses associated with such recording and expungement of recordations shall be borne by USPS.

20. **No Assignment:** This Agreement shall be binding upon and inure to USPS and its successors and assigns, but may not be assigned, transferred, or delegated by Licensee in whole or in part with respect to any right or obligation herein without the prior written consent of USPS, which consent shall not be unreasonably withheld. Any assignment without USPS consent shall be void. A transfer of the legal and/or beneficial ownership, whether by operation of law or otherwise, of more than 25% of the voting equity of Licensee (other than transfers of voting equity among the present shareholders or owners of Licensee) shall be deemed an assignment or transfer of the license hereunder that shall require the prior written consent of USPS.

21. **Force Majeure**: It is understood and agreed that in the event that an act of the government, or war conditions, or fire, flood or labor trouble in the factory of Licensee or in the factory of those manufacturing Licensed Articles, prevents the performance by Licensee of the provisions of this Agreement, then such nonperformance by Licensee shall not be considered as grounds for breach of this Agreement and such nonperformance shall be excused while the conditions herein prevail and for two (2) months thereafter.

22. Miscellaneous: This Agreement constitutes the entire Agreement and understanding between the parties hereto and terminates and supersedes any prior Agreement or understanding relating to the subject matter hereof between USPS and Licensee. USPS and Licensee are not relying upon any statements, warranties, or representations except those contained in this Agreement. The paragraph and other headings contained herein are for reference purposes only and will not affect the meaning of interpretation of this Agreement. None of the provisions of this agreement can be waived or modified except in writing signed by both parties, and there are no representations, promises, agreements, warranties, covenants or undertakings other than those contained herein.

23. No Reliance On Other Representations: The parties have not relied on any representations, promises, warranties, covenants, statements, or undertakings by the other party or its counsel other than those contained in this Agreement.

24. Time Is Of The Essence: Time is of the essence in this Agreement.

Concurrence (Initial) __________

# EXHIBIT C -- FORM OF ROYALTY STATEMENTS
EQUITY MANAGEMENT INC.

SALES AND ROYALTY REPORT

**To:** Equity Management Inc.
Attn: Contract Administration
4365 Executive Dr., Suite 1000
San Diego, CA 92121

**From:** (Licensee) ______________________________

**Equity:** (Licensor) ______________________________

**Licensed Territory:** ______________________________
(Report required for each country in which the Licensed Products were sold)

**Quarter:** From: ______________ To: ______________

| ( a ) Item No. | ( b ) Description | ( c ) Unit Price | ( d ) Units Sold | ( e ) Total Unit Sales |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| ( f ) | Totals | | | |

( g ) Royalty Rate ________%; Total Earned Royalties $ __________

( h ) Unapplied Advance at Quarter Start $ __________

( i ) Difference; Subtract (h) from Line (g) $ __________

( j ) Annual Guaranteed Royalties (divided by 4) $ __________

( k ) Payment Accompanying this Report $ __________
(pay greater of Line (i) or (j)) __________

The above Report is certified to be true and correct by the above named Licensee

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

USPS

## EXHIBIT D -- RENEWAL TERMS

Type of Renewal: Automatic

Renewal Hurdle Minimum:

Licensee's Net Sales during the four quarters beginning 10/1/03 and ending 9/30/04 must generate a minimum of $60,000 in earned royalties in order for Licensee to qualify for an automatic renewal.

Number of Renewals: One

Renewal Term: Three Years

Special Renewal Conditions: Not Applicable

Renewal Term Earned Royalty Percentages: 8% of Net Sales.

Guaranteed Minimum Royalties:

The following Guaranteed Minimum Royalties for the Renewal Term shall be paid in equal quarterly installments:

| | | |
|---|---|---|
| Contract Period 4 | 1/1/05 – 12/31/05 | The greater of $60,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 5 | 1/1/06 – 12/31/06 | The greater of $70,000 or 75% of the royalties due for Contract Period 3. |
| Contract Period 6 | 1/1/07 – 12/31/07 | The greater of $80,000 or 75% of the royalties due for Contract Period 3. |

Renewal Licensed Properties:

Licensee shall submit to USPS by no later than July 1, 2004, a list of the 270 wholly-owned stamp designs that Licensee desires to use on the Licensed Articles during the Renewal Term. Said list must be in the form of the list set forth in Exhibit E. Approval of the list is in the sole discretion of the USPS. USPS shall notify Licensee of its decision concerning the list within 90 days of receipt thereof.

EXHIBIT E - STAMP DESIGNS

| Scott Catalog Number | Description | STATUS |
|---|---|---|
| 118 | Columbus Landing | Unknown |
| 121 | Shield, Eagle & Flag | Unknown |
| 805 | Martha Washington | Unknown |
| 873 | Booker T. Washington | Unknown |
| 902 | Thirteenth Amendment | Unknown |
| 929 | IWO Jima | Unknown |
| 948 | 100 th Anniversary USP Stamp | Unknown |
| 967 | Clara Barton | Unknown |
| 972 | Indian Centennial | Unknown |
| 973 | Rough Riders | Unknown |
| 974 | Juliette Gordon Low | Unknown |
| 1051 | Susan B. Antony | Unknown |
| 1052 | Patrick Henry | Unknown |
| 1063 | Lewis & Clark Expedition | Unknown |
| 1074 | Booker T. Washington Home | Unknown |
| 1093 | School Teachers | Unknown |
| 1099 | Religious Freedom | Unknown |
| 1113 | Lincoln | Unknown |
| 1119 | Freedom of the Press | Unknown |
| 1154 | Pony Express | Unknown |
| 1155 | Employ the Handicapped | Unknown |
| 1178 | Fort Sumter | Unknown |
| 1179 | Shiloh | Unknown |
| 1180 | Gettysburg | Unknown |
| 1182 | Appomattox | Unknown |
| 1213 | George Washington | Unknown |
| 1236 | Eleanor Roosevelt | Unknown |
| 1239 | International Red Cross | Unknown |
| 1264 | Winston Churchill | Unknown |
| 1267 | Salvation Army | Unknown |
| 1285 | Albert Einstein | Unknown |
| 1290 | Frederick Douglass | Unknown |
| 1312 | The Bill of Rights | Unknown |
| 1344 | Register and Vote | Unknown |
| 1372 | W.C. Handy | Unknown |
| 1385 | Hope for the Crippled | Unknown |
| 1421 | Disabled American Veterans | Unknown |
| 1422 | US Serviceman | Unknown |
| 1438 | Prevent Drug Abuse | Unknown |
| 1439 | Care | Unknown |
| 1463 | PTA | Unknown |
| 1483 | Boston Tea Party (4) | Unknown |
| 1486 | Henry Ossawa Tanner | Unknown |

EXHIBIT E - STAMP DESIGNS

| | | |
|---|---|---|
| 1549 | Retarded Children | Unknown |
| 1554 | Paul L. Dunbar | Unknown |
| 1560 | Salem Poor | Unknown |
| 1595 | Liberty Bell | Unknown |
| 1686 | The Surrender of Lord Cornwalls at Yorktown | Unknown |
| 1687 | The Declaration of Independence, 4 July 1776 | Unknown |
| 1688 | Washington Crossing the Delaware | Unknown |
| 1689 | Washington Reviewing His Ragged Army | Unknown |
| 1726 | Members of Continental Congress | Unknown |
| 1744 | Harriet Tubman | Wholly Owned |
| 1787 | Seeing Eye Dog | Wholly Owned |
| 1788 | Special Olympics | Unknown |
| 1802 | Vietnam Veterans | Wholly Owned |
| 1804 | Benjamin Banneker | Unknown |
| 1824 | Helen Keller | Unknown |
| 1860 | Ralph Bunche | Unknown |
| 1865 | Charles Drew | Unknown |
| 1875 | Whitney Moore Young | Unknown |
| 1910 | American Red Cross | Unknown |
| 1926 | Edna St. Vincent | Unknown |
| 1927 | Alcoholism | Wholly Owned |
| 2039 | Voluntarism | Wholly Owned |
| 2044 | Scott Joplin | Unknown |
| 2073 | Carter G. Woodson | Unknown |
| 2103 | Hispanic Americans | Wholly Owned |
| 2109 | Vietnam Veterans | Wholly Owned |
| 2137 | Mary Mclead Bethume | Unknown |
| 2152 | Korean War Veteras | Unknown |
| 2153 | Social Security Act | Wholly Owned |
| 2154 | WWI Veterans | Wholly Owned |
| 2159 | Public Education | Wholly Owned |
| 2164 | Help End Hunger | Wholly Owned |
| 2168 | Margaret Mitchell | Unknown |
| 2169 | Mary Lyon | Unknown |
| 2203 | Sojourner Truth | Wholly Owned |
| 2211 | Duke Ellington | Unknown |
| 2216 | Presidents - sheet of 9 | Wholly Owned |
| 2217 | Presidents - sheet of 9 | Wholly Owned |
| 2218 | Presidents - sheet of 9 | Wholly Owned |
| 2219 | Presidents - sheet of 9 | Wholly Owned |
| 2223 | Matthew Henson | Wholly Owned |
| 2224 | Statue of Liberty | Unknown |
| 2249 | Pointe Du Sable | Wholly Owned |
| 2275 | United Way | Unknown |
| 2336 | Delaware | Wholly Owned |
| 2337 | Pennsylvania | Wholly Owned |
| 2338 | New Jersey | Wholly Owned |

EXHIBIT E - STAMP DESIGNS

| | | |
|---|---|---|
| 2339 | Georgia | Wholly Owned |
| 2340 | Connecticut | Wholly Owned |
| 2341 | Massachusetts | Wholly Owned |
| 2342 | Maryland | Wholly Owned |
| 2343 | South Carolina | Wholly Owned |
| 2344 | New Hampshire | Wholly Owned |
| 2345 | Virgina | Wholly Owned |
| 2346 | New York | Wholly Owned |
| 2347 | North Carolina | Wholly Owned |
| 2348 | Rhode Island | Wholly Owned |
| 2360 | Constitution Signing | Wholly Owned |
| 2371 | James Weldon Johnson | Unknown |
| 2567 | Jan E. Matzellger | Unknown |
| 2616 | World Columbian | Wholly Owned |
| 2620 | Seeking Queen Isabella's Support | Wholly Owned |
| 2624 | First Sighting of Land | Wholly Owned |
| 2625 | Claiming a New World | Wholly Owned |
| 2626 | Seeking Royal Support | Wholly Owned |
| 2627 | Royal Favor Restored | Wholly Owned |
| 2628 | Reporting Discoveries | Wholly Owned |
| 2629 | Christopher Columbus | Wholly Owned |
| 2765 | WWII Turning the Tide | Wholly Owned |
| 2818 | Buffalo Soldiers | Wholly Owned |
| 3081 | Breast Cancer Awareness | Wholly Owned |
| 3121 | Benjamin O. Davis, Sr. (only as stamp)+C59 | Wholly Owned |
| 3125 | Helping Children Learn | Wholly Owned |
| 3136 | Dinosaurs | Wholly Owned |
| 3139 | Ben Franklin | Wholly Owned |
| 3175 | Kwanzaa | Wholly Owned |
| 3315 | Prostate Cancer | Wholly Owned |
| 1631a | Fife Player | Unknown |
| 2359a | Const. Bicentennial Issue | Wholly Owned |
| 2623a | First Voyage of Christopher Columbus | Wholly Owned |
| 2782a | 4 Sheet National Postal Museum | Wholly Owned |
| 2869q | Jim Beckwourth | Wholly Owned |
| 2966 | Prisoners | Wholly Owned |
| 2975b | Robert E. Lee | Wholly Owned |
| 2975c | Clara Barton | Wholly Owned |
| 2975d | Ulysses S. Grant | Wholly Owned |
| 2975e | Battle of Shiloh | Wholly Owned |
| 2975f | Jefferson Davis | Wholly Owned |
| 2975h | Frederick Douglass | Wholly Owned |
| 2975j | Abraham Lincoln | Wholly Owned |
| 2975k | Harriet Tubman | Wholly Owned |
| 2975m | Joseph E. Johnston | Wholly Owned |
| ~~2975o~~ | ~~Mary Chesnut~~ | ~~Wholly Owned~~ |
| 2975p | Battle of Chancecellorville | Wholly Owned |

EXHIBIT E - STAMP DESIGNS

| | | |
|---|---|---|
| 2975q | William T. Sherman | Wholly Owned |
| 2975s | Stonewall Jackson | Wholly Owned |
| 2975t | Battle of Gettysburg | Wholly Owned |
| 3011a | Christmas | Wholly Owned |
| 3183b | Fed Res. System Eagle | Wholly Owned |
| 3183c | Dr. George Washington Carver | Wholly Owned |
| 3183i | Uncle Sam | Wholly Owned |
| 3183o | Child Labor Reform | Wholly Owned |
| 3185d | Eleanor Roosevelt | Wholly Owned |
| 3187f | School Desegregation Public | Wholly Owned |
| | Insects & Spiders (13) | Wholly Owned |
| E4 | Messenger Running | Unknown |
| E20 | Special Delivery | Unknown |

# EQUITY MANAGEMENT INC.®

OFFICES IN: SAN DIEGO · DETROIT · CHICAGO · NEW YORK

SAN DIEGO OFFICE:
4365 EXECUTIVE DRIVE, SUITE 1000
SAN DIEGO, CA 92121
(858) 558-2500
FAX (858) 558-2507

December 21, 2000

Via Overnight Mail

Mr. J.G. Long
Sterling, Winchester & Long
1022 Dunbarton Road
Williston, SC 29853

Re: United States Postal Service License Agreement

Dear Mr. Long:

Enclosed please find a red lined draft of the above agreement, which has been revised to incorporate the changes discussed in the various conference calls yesterday and today. As with all previous changes, the changes reflected have not yet been reviewed or approved by the USPS and are therefore subject to change.

As I communicated to Mr. Loyd today, this reflects the final modification of the terms of this deal. Accordingly, also enclosed please find triplicate originals of the agreement for execution. Please sign and initial each of the agreements where indicated and return them to me by no later than January 4, 2001. I will then forward them to the USPS for review and counter-signature and will provide you with a fully executed copy as soon as it is available.

We look forward to receiving the executed agreement.

Sincerely,

Robin M. Stemen
Associate Counsel

Encl.

cc: Ilene Kent (w/o encl.)
Marcie Chick (w/o encl.)



CORPORATE HEADQUARTERS · 4365 EXECUTIVE DRIVE, SUITE 1000 · SAN DIEGO, CALIFORNIA 92121 · (858) 558-2500 · FAX (858) 558-2507

*EL714266461US*

# POST OFFICE TO ADDRESSEE

EXPRESS MAIL
UNITED STATES POSTAL SERVICE TM

EL714266461US

**ORIGIN (POSTAL USE ONLY)**

| | | |
|---|---|---|
| PO ZIP Code | Day of Delivery ☐ Next ☐ Second | Flat Rate Envelope ☐ |
| Date In Mo. Day Year | ☐ 12 Noon ☐ 3 PM | Postage $ |
| Time In ☐ AM ☐ PM | Military ☐ 2nd Day ☐ 3rd Day | Return Receipt Fee |
| Weight lbs. ozs. | Int'l Alpha Country Code | COD Fee / Insurance Fee |
| No Delivery ☐ Weekend ☐ Holiday | Acceptance Clerk Initials | Total Postage & Fees $ |

**DELIVERY (POSTAL USE ONLY)**

| | | |
|---|---|---|
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

Signature of Addressee or Agent
X
Name - Please Print
X

**CUSTOMER USE ONLY**
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. 92146D
Federal Agency Acct. No. or Postal Service Acct. No.

☐ WAIVER OF SIGNATURE (Domestic Only): Additional merchandise insurance is void if waiver of signature is requested. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.
NO DELIVERY ☐ Weekend ☐ Holiday
Customer Signature

FROM: (PLEASE PRINT) PHONE 858.558.2510
EQUITY MGR INC
4365 EXECUTIVE DR STE 1000
SAN DIEGO CA 92121-2192
R Steiner

TO: (PLEASE PRINT) PHONE
J. G. Long
STERLING Winchester + Long
1022 Dunbarton Road
Williston, SC 29853-1718

PRESS HARD. You are making 3 copies. FOR PICKUP OR TRACKING CALL 1-800-222-1811 www.usps.gov EMS

Mailing Label
Label 11-F July 1997

60/ 200
F02
T

623

USPS Contract No. ________________

# LICENSE AGREEMENT

THIS AGREEMENT is made effective as of the 1st day of July 2000, by and between the UNITED STATES POSTAL SERVICE ("USPS"), an independent establishment of the United States government, and STERLING, WINCHESTER & LONG ("Licensee"), a South Carolina corporation with its principal place of business at 1022 Dunbarton Road, Williston, SC 29853-1718.

In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below and in the attached Exhibits A and B, incorporated herein by reference. Definitions of the various terms used below are listed in Exhibit B:

1. Licensed Properties: The Licensed Properties are the trademarks, service marks, trade dress and/or copyrights listed on Exhibits A and E to this Agreement.

2. Licensed Articles:

   An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commencing with calendar year 2002. Licensee must obtain prior approval of the thematic groupings.

3. License Type: Non-exclusive; provided, however, that subject to the terms set forth herein, Licensee shall have the exclusive right to use the stamp designs listed on Exhibit E on the Licensed Articles. Nothing contained herein shall preclude the USPS from producing, or licensing others to produce, calendars utilizing stamp designs not listed on Exhibit E, or from using, or licensing others to use, the stamp designs listed on Exhibit E on items other than calendars.

4. Licensed Territory:

   United States, its territories and possessions.

5. Channels of Distribution:

   Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores; Retail via Licensee's website, subject to

the conditions set forth in Paragraph 18(a) below.

6. Initial Term: July 1, 2000 through December 31, 2004. Contract Period 1 shall commence July 1, 2000 and shall end December 31, 2002. Each consecutive twelve month period thereafter shall be deemed a Contract Period.

7. Renewal: See attached Exhibit D.

8. Royalty Rate:

Wholesale Sales: 8% of Net Sales of Licensed Articles bearing solely wholly-owned stamp designs and 6% of Net Sales of Licensed Articles bearing solely non-wholly owned stamp designs (i.e. Jointly-Owned Stamp Designs or stamp designs listed on Exhibit E as "status unknown"). A weighted royalty rate of between 6% and 8% of Net Sales shall apply to any Licensed Article bearing both wholly owned stamp designs and non-wholly owned stamp designs. Said rate shall be calculated based on the percentage that each category of stamp designs represents in relation to the total number of stamp designs used in that particular Licensed Article. For example, if a particular calendar contained 24 stamp designs, 6 of which were wholly owned and 18 of which were non-wholly owned, the applicable rate would be 6.5%, calculated as follows: (6/24 x 8%) + (18/24 x 6%) = 6.5%.

Retail Sales: ~~sold at wholesale prices and~~ 5% of Net Sales of all Licensed Articles. ~~of Licensed Articles sold at retail prices.~~

The term "Net Sales" is defined in Exhibit B to this Agreement.

9. Guaranteed Minimum Royalty and Schedule: Licensee shall pay the following Guaranteed Minimum Royalties for the Initial Term:

| | |
|---|---|
| Contract Period 1 [7/1/00-12/31/02] | $50,000.00 |
| Contract Period 2 [1/1/03-12/31/03] | $ 50,000.00 |
| Contract Period 3 [1/1/04-12/31/04] | $ 50,000.00 |

The Guaranteed Minimum Royalty for Contract Period 1 shall be paid upon execution of this Agreement. The Guaranteed Minimum Royalty for Contract Periods 2 and 3 shall be paid in equal quarterly installments, as described in Section 4(c) of the attached Exhibit B.

10. Payments and Royalty Statements Shall Be Sent to:

USPS Licensing Program
PO Box 7247-7087
Philadelphia, PA 19710-7087