IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., Plaintiff, | ) | |
| v. | ) | No. 05-297C (Senior Judge Margolis) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**<u>PROPOSED FINDINGS OF UNCONTROVERTED FACT</u>**

In accordance with Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following response to the "Proposed Findings Of Uncontroverted Fact" filed by plaintiff Sterling, Winchester & Long, L.L.C. ("SWL") October 31, 2007.[1]

1. In March 2000, Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), submitted to the United States Postal Service ("USPS") an unsolicited proposal to produce official, licensed USPS calendars. After receiving that proposal, USPS referred SWL to Equity Management, Inc. ("EMI") (Defendant's Answer ¶ 16), which USPS indicated was USPS' agent for negotiating agreements involving the sale of products bearing USPS

---

[1] SWL's Proposed Findings of Uncontroverted Fact will be cited as "Pl. F. ¶ _." SWL's exhibits will be cited as "Pl. Ex. _." Our Proposed Findings of Uncontroverted Fact will be cited as "Def. F. ¶ _." The exhibits set forth in the Appendix filed herewith will be cited as "Ex. _." Page numbers from the Appendix will be referred to as "A_." Although SWL has included a copy of the License Agreement in its Appendix, we have reproduced the License Agreement as Exhibit 1 of our Appendix because the version of SWL's Appendix available through the ECF system contains an ECF stamp across the middle of the page, rendering some of the text illegible.

copyrighted images or marks. (Affidavit of John G. Long ¶ 3).

Response: Disagrees. On October 7, 1999, SWL submitted an unsolicited proposal to the United States Postal Service ("USPS") to produce an "Official U.S. Postal Service calendar collection" for sale through USPS post offices and the USPS website. Compl., ¶ 15; Ex. 2 (Oct. 1999 Unsolicited Proposal), at A34. USPS did not accept the proposal. SWL submitted a second proposal in March 2000. Ex. 6 (March 2000 Unsolicited Proposal). USPS did not accept the second proposal. USPS informed SWL that if it wished to sell products containing USPS intellectual property, it would be required to obtain a license from the USPS. See Ex. 4 (Jul. 14, 2000 letter from USPS to EMI). USPS also informed SWL that EMI was the licensing agency for the USPS. Id. SWL continued to separately negotiate directly with USPS regarding the ability to sell its calendar product in USPS facilities. See Ex. 5 (Notes of M. Chick), at A52, Ex. 8 (May 22, 2000 letter), Ex. 13 (Jul. 13, 2000 email).

2. EMI was under contract with USPS to assist in negotiating and developing a contract with SWL. (Defendant's Answer ¶ 7).

Response: Disagrees. EMI was under contract with USPS to assist in negotiating and developing the License Agreement with SWL, Contract No. 102592-01-U-1173. Answer, ¶ 7. EMI's contract with USPS was limited to agreements with potential licensees for the "rights to use the Intellectual Property [of the USPS]." Ex. 31 (USPS-EMI Agreement), at A447

(¶ 1(a)). EMI's contract with USPS did not permit EMI to assist in negotiating and developing a contract with SWL regarding the sale of products to USPS or the distribution of products through USPS facilities. Ex. 31 (USPS-EMI Agreement). USPS informed SWL that EMI was the licensing agency for USPS. See Ex. 4 (Jul. 14, 2000 letter from USPS to EMI).

3. SWL entered into negotiations with EMI and provided EMI with information indicating that SWL planned to use USPS facilities as distribution channels for SWL's calendars. During the negotiations, EMI indicated that USPS branch post offices could not be included as a distribution channel. (Affidavit of John G. Long ¶ 4).

Response: Disagrees. SWL entered into negotiations with EMI for a Trademark License Agreement. Ex. 7 (Trademark License Application). As part of its Trademark License Application, SWL submitted to EMI a copy of its Project 2001 document stating that it planned to use USPS facilities as distribution channels for SWL's calendars. Id. SWL, however, informed EMI that it was separately negotiating with USPS regarding access to USPS facilities as distribution channels for SWL's calendars. See Ex. 5 (Notes of M. Chick), at A52. On July 5, 2000, Ms. Stemen wrote to Mr. Long to summarize their discussion of the same day regarding the proposed terms of the Trademark License Agreement. Ex. 10 (July 5, 2000 letter). In that letter, Ms. Stemen stated: "Please remember, however, that the agreement does not obligate the USPS to buy any of

your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Id.

4. USPS owns and operates Philatelic Centers that mainly cater to stamp collectors and offer for sale Philatelic products. (Deposition of Cindy L. Tackett, at 20-21, attached hereto as Exhibit 1).

Response: Disagrees. USPS owns and operates Philatelic Centers that "sell[ ] select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors." Ex. 32 (Glossary of Postal Terms), at A468. USPS Philatelic Centers cater exclusively to stamp collectors, and sell only actual stamps and material used by stamp collectors to display actual stamps. Ex. 33 (Retail Operations Handbook, at A474-477; Ex. 38 (Deposition of Cindy L. Tackett, July 27, 2007), at 19:12 - 25:13.

5. A Philatelic Center operated by USPS is not considered the same thing as a post office or a branch post office. (Deposition of H. Diane Fagan, at 25, attached hereto as Exhibit 2; Deposition of Robin R. Pacheco, at 36, attached hereto as Exhibit 3).

Response: Disagrees. Most USPS Philatelic Centers are located in post offices. Ex. 33 (Retail Operations Handbook), at A469-470 ; Ex. 39 (Tackett Depo.), at 37:12-40:12.

6. A Philatelic Center can be either a building, or a designated window, or the USPS fulfillment service office in Kansas City, which is a mail order center that supports stamp

collectors. (Deposition of Cindy L. Tackett, at 19-20, attached hereto as Exhibit 1).

Response: Disagrees. USPS Philatelic Centers are retail outlets for the sale of stamps to stamp collectors. Ex. 32 (Glossary of Postal Terms), at A468. USPS Philatelic Centers may be located in a designated window within a post office, or in a separate location. The USPS fulfillment service office in Kansas City, Missouri is also considered a USPS Philatelic Center as it fulfills mail orders placed by stamp collectors. Ex. 38 (Tackett Depo.), at 19:12 - 20:2; Ex. 32 (Glossary of Postal Terms), at A468.

7. Each Philatelic Center is controlled 100% by USPS. (Deposition of Cindy L. Tackett, at 25, attached hereto as Exhibit 1).

Response: Disagrees. USPS Philatelic Centers are controlled 100% by USPS. Ex. 38 (Tackett Depo.), at 11:5 - 13:1.

8. According to USPS Publication 32, "Glossary of Postal Terms," "philatelic center" is defined as follows: "A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called Postique, which is a USPS trademark.)" (See excerpted copy of Publication 32 attached hereto as Exhibit 5).

Response: Disagrees. USPS Publication 32, "Glossary of Postal Terms" "defines words and phrases that are unique to, or have special meanings within, the U.S. Postal Service." Ex. 32 (Glossary of Postal Terms), at A466. The Glossary of Postal Terms "does not provide comprehensive or precise legal definitions." Id. Within the USPS, "philatelic center" means: "A

retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called Postique, which is a USPS trademark.)" Pl. Ex. 5.

9. USPS publishes a quarterly Philatelic Catalog. (Deposition of Cindy L. Tackett, at 30, attached hereto as Exhibit 1).

Response: Disagrees. USPS publishes a quarterly publication entitled "USA Philatelic" or the "USA Philatelic Catalog." Ex. 38 (Tackett Depo.), at 25:20 - 27:22; Ex. 34 (USPS Website page on USA Philatelic Catalog). USA Philatelic is the only official source for the complete line of current issues from the U.S. Postal Service. Id.

10. Products are offered for sale in the USPS Philatelic Catalog. (Deposition of Cindy L. Tackett, at 29, attached hereto as Exhibit 1).

Response: Disagrees. The only products offered for sale in the USA Philatelic Catalog are philatelic products, that is actual stamps or material assisting stamp collectors. Ex. 33 (Retail Operations Handbook), at A474-77; Ex. 38 (Tackett Depo.), at 29:6 - 30:9.

11. The USPS Philatelic Catalog is controlled 100% by USPS. (Deposition of Cindy L. Tackett, at 25-27, attached hereto as Exhibit 1).

Response: Disagrees. The USA Philatelic Catalog is controlled 100% by USPS. Ex. 38 (Tackett Depo.), at 27:2 - 27:5.

12. Robin Stemen, an attorney employed by EMI, was the principal drafter of the Contract

between USPS and SWL. (Deposition of Robin Stemen, at 12-13, attached hereto as Exhibit 4).

Response: Disagrees. Robin Stemen drafted the License Agreement between USPS and SWL along with J.G. Long and the attorneys employed by J.G. Long. See Ex. 15 (Reichmanis memoranda); Ex. 16 (Mobley correspondence).

13. In December 2000, SWL requested that USPS Philatelic Centers be included as a distribution channel. Robin Stemen of EMI agreed to that request and sent SWL a proposed agreement that added "Philatelic centers" as a distribution channel. (Affidavit of John G. Long ¶ 5).

Response: Disagrees. SWL prepared handwritten comments to a redlined draft of the agreement. Ex. 21 (Long comments to redlined draft). In those comments, Mr. Long asked that the term "merchandise stores" be deleted from the "Channels of Distribution" and replaced with "Philatelic Centers" stating, "We have been advised that the correct term for merchandise store is Philatelic Centers. Please make the change." Id. SWL did not propose the addition of any additional sentences or paragraphs to the agreement regarding purchase of calendars by the USPS or distribution of its calendars through USPS facilities. Id. On December 9, 2000, EMI sent SWL a redlined draft of the License Agreement for its review, in which the term "philatelic centers" was inserted in handwriting after "merchandise stores." Ex. 22 (Dec. 9, 2000 letter). On December 21, 2000, EMI sent SWL a further revised redlined draft of the License

Agreement for its review. Ex. 23 (Dec. 21, 2000 letter). In this draft, "Philatelic centers" was inserted after "Philatelic catalogs" and before "merchandise stores" so that the "Channels of Distribution" read as follows:

> Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph 18(a).

Ex. 1 (License Agreement), at A1.

14. On January 31, 2001, USPS executed USPS Contract No. 102592-01-U-1173 ("the Contract"). SW&L had signed the Contract earlier on January 4, 2001. (Complaint ¶ 6; Defendant's Answer ¶ 6).

<u>Response:</u> Agrees that USPS executed the License Agreement, Contract No. 102592-01-U-1173 on January 31, 2000 and that SWL executed the License Agreement on January 4, 2001.

15. A true and correct copy of the Contract is attached to the Affidavit of John G. Long as Exhibit A. (Affidavit of John G. Long ¶ 6).

<u>Response:</u> Agrees that a true and correct copy of the License Agreement is attached to the Affidavit of John G. Long as Exhibit A.

16. The Contract was executed on behalf of USPS by its contracting officer, H. Diane Fagan. Ms. Fagan, read the Contract before she executed it. (Deposition of Diane Fagan, at 18, attached hereto as Exhibit 2). At the time she executed the Contract, Ms. Fagan was familiar with USPS Publication 32. (Deposition of Diane Fagan, at 22, attached hereto as

Exhibit 2).

Response: Agrees that the License Agreement was executed on behalf of USPS by H. Diane Fagan, a USPS contracting officer, and that Ms. Fagan read the License Agreement before executing it. Disagrees that Ms. Fagan was familiar with USPS Publication 32 as Ms. Fagan was only familiar with its existence and not with the specific definition of "philatelic centers" which is at issue in this case. Ex. 37 (Deposition of H. Diane Fagan, July 13, 2006), at 21:2 - 22:9, 23:6 - 23:9. Ms. Fagan specifically stated she was not aware at the time of the contract that USPS operated any facilities referred to as "philatelic centers." Ex. 37 (Fagan Depo.), at 23:16 - 24:4.

17. The Contract "grants to [SWL] a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods . . . ," subject to additional terms in the Contract. (Affidavit of John G. Long, Exhibit A at 1).

Response: Agrees that the License Agreement states:

> In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below, and in the attached Exhibits A and B, incorporated herein by reference.

Ex. 1 (License Agreement), at A1.

18. The Contract authorizes SWL "to design, manufacture, have manufactured, sell,

distribute, and advertise Licensed Articles … .” (Affidavit of John G. Long, Exhibit A at 8).

Response: Agrees that the License Agreement states:

> Grant: Subject to the limitations set forth herein, USPS hereby grants to Licensee a non-transferable, non-exclusive license to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles bearing the Licensed Properties in the Licensed Territory during the Contract Periods provided herein.

Ex. 1 (License Agreement), at A8(Exhibit B, ¶ 2(a)).

19. The Contract identifies the “Licensed Articles” as follows: “An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commencing with calendar year 2002.” (Affidavit of John G. Long, Exhibit A at 1).

Response: Agrees that the License Agreement states:

> Definitions of the various terms used below are listed in Exhibit B:
> . . .
> 2. Licensed Articles:
> An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commending with calendar year 2002. Licensee must obtain prior approval of the thematic groupings.

Ex. 1 (License Agreement), at A1.

20. The Contract authorizes SWL to distribute the Licensed Articles through certain “Channels of Distribution,” which include the following: “Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores . . . .” (Affidavit of John G. Long, Exhibit A at 1).

Response: Disagrees. The intellectual property rights granted to SWL in the License

Agreement are limited to use of the intellectual property in connection with the Licensed Articles as sold in certain "Channels of Distribution." Those Channels of Distribution are listed as:

> Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph 18(a) below.

Ex. 1 (License Agreement), at A1.

21. On March 2, 2001, J.G. Long of SWL contacted USPS Contracting Officer Diane Fagan about making arrangements for the distribution of SWL's calendars through the USPS Philatelic Centers and Philatelic catalog, both of which are identified in the Contract as distribution channels for SWL's calendars. Ms. Fagan told Mr. Long that those USPS distribution channels should not have been included in the Contract and that they were not available, and would not be available, to SWL for the distribution of SWL's calendars. (Affidavit of John G. Long ¶ 7; Complaint ¶ 19; Defendant's Answer ¶ 19).

Response: Disagrees. On March 2, 2001, J.G. Long of SWL contacted USPS Contracting Officer Diane Fagan about making arrangements for the distribution of SWL's calendars through the USPS Philatelic Centers and the USA Philatelic Catalog. The License Agreement does not make reference to USPS Philatelic Centers or the USA Philatelic Catalog. Ex. 1 (License Agreement). According to SWL's transcript of the telephone call, Mr. Long did not direct Ms. Fagan to the actual language of the License Agreement, but represented to her that the License Agreement permitted him to distribute his products through the USPS Philatelic

Centers and the USA Philatelic Catalog. Ex. 35 (Transcript of Mar. 2, 2001 telephone call). According to SWL's transcript of the telephone call, on the basis of that representation, Ms. Fagan stated that SWL would not be able to get access to distribution through the USPS Philatelic Centers and the USA Philatelic Catalog. Id.

22. After Mr. Long's March 2, 2001, conversation with Contracting Officer Fagan, SWL continued to seek access to the USPS distribution channels identified in the Contract, but USPS refused to allow SWL to use those USPS distribution channels in any way. (Affidavit of John G. Long ¶ 8).

Response: Disagrees. SWL continued to seek access to the distribution of its products through the USPS Philatelic Centers and the USA Philatelic Catalog. See Ex. 5 (Notes of M. Chick), at A52; Ex. 13 (Jul. 13, 2000 email to A. Jaffer). The License Agreement does not make reference to USPS Philatelic Centers or the USA Philatelic Catalog, and does not grant SWL a right of access to distribution through these venues. Ex. 1 (License Agreement). Accordingly, USPS declined to permit SWL to distribute its products through the USPS Philatelic Centers or the USA Philatelic Catalog.

23. By letter to USPS and EMI dated November 23, 2001, SWL again requested immediate access to the USPS Philatelic Centers and Philatelic Catalog and advised USPS that SWL considered denial of access to those distribution channels to be a breach of the Contract. (Affidavit of John G. Long ¶ 9 & Exhibit B thereto). Thereafter, USPS continued to

refuse access by SWL to those USPS distribution channels. (Affidavit of John G. Long ¶ 9; Complaint ¶ 22; Defendant's Answer ¶ 22)).

Response: Disagrees. By letter to USPS and EMI dated November 23, 2001, SWL again requested immediate access to the USPS Philatelic Centers and Philatelic Catalog and advised USPS that SWL considered denial of access to those distribution channels to be a breach of the Contract. The License Agreement does not make reference to USPS Philatelic Centers or the USA Philatelic Catalog, and does not grant SWL a right of access to distribution through these venues. Ex. 1 (License Agreement). Accordingly, USPS declined to permit SWL to distribute its products through the USPS Philatelic Centers or the USA Philatelic Catalog.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

January 28, 2008 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 28th day of January 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah