IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., Plaintiff, | ) | No. 05-297C |
| v. | ) | (Senior Judge Margolis) |
| THE UNITED STATES, Defendant. | ) | |

**<u>DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT</u>**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its Cross-Motion for Summary Judgment.[1]

1. On October 7, 1999, Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), submitted to the United States Postal Service ("USPS") an unsolicited proposal to produce an "Official U.S. Postal Service calendar collection" for sale through USPS post offices and the USPS website. Compl., ¶ 15; Ex. 2 (Oct. 1999 Unsolicited Proposal), at A34. By letter of December 3, 1999, USPS informed SWL that it would not accept this proposal. Ex. 3 (Dec. 3, 1999 letter).

2. On February 7, 2000, Mr. Long spoke with Marcie Chick of EMI regarding obtaining a

---

[1] SWL's Proposed Findings of Uncontroverted Fact will be cited as "Pl. F. ¶ _." SWL's exhibits will be cited as "Pl. Ex. _." SWL's motion will be cited as "Pl. Mot. _." Our Proposed Findings of Uncontroverted Fact will be cited as "Def. F. ¶ _." The exhibits set forth in the Appendix filed herewith will be cited as "Ex. _." Page numbers from the Appendix will be referred to as "A_." Although SWL has included a copy of the License Agreement in its Appendix, we have reproduced the License Agreement as Exhibit 1 of our Appendix because the version of SWL's Appendix available through the ECF system contains an ECF stamp across the middle of the page, rendering some of the text illegible.

license to use USPS intellectual property. Mr. Long informed Ms. Chick that he was separately in negotiations with USPS to obtain access to distribution through post offices. Ms. Chick informed Mr. Long that there was no guarantee he would obtain this distribution right. See Ex. 5 (Notes of M. Chick), at A52 (2:20PM).

3. In March 2000, SWL submitted another unsolicited proposal to produce an "Official U.S. Postal Service calendar collection" for sale through USPS post offices and the USPS website. Ex. 6 (Mar. 8, 2000 Letter enclosing Unsolicited Proposal).

4. On May 18, 2000, SWL submitted a trademark license application to EMI. Ex. 7 (May 18, 2000 Letter enclosing Trademark License Application). In its application, it sought a license to use trademarks of USPS in connection with its calendar product. Id.

5. On May 22, 2000, Mr. Long wrote to the USPS Board of Governors regarding his unsolicited proposals of October 1999 and March 2000 to produce an "Official U.S. Postal Service calendar collection" for sale through USPS post offices and the USPS website. Ex. 8 (May 22, 2000 Letter). In that letter, he outlines his prior correspondence with USPS regarding the proposal for selling a calendar through USPS post offices and the USPS website. Id. He makes no mention of his contacts with EMI or his submission of a trademark license application on May 18, 2000. Id.

6. USPS provided two responses to SWL, one regarding the intellectual property issues raised by SWL's Unsolicited Proposal, and another regarding the retail distribution and sales issues raised by SWL's Unsolicited Proposal. See Ex. 4 (Jul. 14, 2000 letter from USPS to EMI); Ex. 11 (Jul. 12, 2000 letter from USPS to SWL).

7. Regarding the intellectual property issues raised by SWL's Unsolicited Proposal, Thad

Dilley, a USPS manager, informed Mr. Long by letter that USPS stamps and the USPS logo were the intellectual property of USPS, and could only be used by others pursuant to a license. See Ex. 4 (Jul. 14, 2000 letter from USPS to EMI). In that letter, USPS informed SWL that if it wished to sell products containing USPS intellectual property, it would be required to obtain a license from the USPS. Id. USPS also informed SWL that EMI was the licensing agency for the USPS. Id.

8. Regarding the retail distribution and sales issues raised by SWL's Unsolicited Proposal, the Retail Division of USPS and the Purchasing and Materials Division of USPS wrote to SWL. Ex. 11 (Jul. 12, 2000 letter). USPS informed Mr. Long in that letter that it was rejecting his proposal for a calendar. Further, the letter stated, "In this regard, we have rejected several other proposals for calendars. This same information has been provided to you by telephone and letter and, unfortunately, must stand as our final answer." Id.

9. On June 1, 2000, Ms. Chick and Mr. Long spoke again about the proposed license agreement and Mr. Long reiterated that he was in separate negotiations with the USPS for the right to sell in post offices and that the USPS was reviewing his proposal for post office sales. See Ex. 5 (Notes of M. Chick), at A52 (10:24am).

10. On June 21, 2000, EMI sent SWL for its review a proposed Term Sheet setting forth the proposed terms of the Trademark License Agreement permitting SWL to use USPS intellectual property in connection with a calendar product. Ex. 9 (June 21, 2000 letter).

11. On July 5, 2000, Ms. Stemen wrote to Mr. Long to summarize their discussion of the same day regarding the proposed terms of the Trademark License Agreement. Ex. 10 (July 5, 2000 letter). In that letter, Ms. Stemen stated: "Please remember, however, that

the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Id.

12. One week later, on July 12, 2000, SWL executed with EMI the Term Sheet setting forth the proposed terms of a License Agreement permitting SWL to use USPS intellectual property in connection with a calendar product. Ex. 12 (Executed Term Sheet). The Term Sheet made no reference to "Philatelic centers," "USPS Philatelic Centers," or the USA Philatelic Catalog. The Term Sheet was signed by EMI on July 19, 2000. Id.

13. The day after signing the term sheet with EMI, SWL again sought to contact USPS separately regarding the possibility of sales of its calendar in USPS facilities. On July 13, 2000, Mr. Long sent an email to Azzezaly S. Jaffer, Vice President of Public Affairs and Communications, of USPS. Ex. 13 (July 13, 2000 email). In that letter, Mr. Long made clear to Mr. Jaffer, "We are working with EMI in finalizing the USPS Licensing Agreement for our USPS Calendar Project." Id. He asks, however, that the USPS provide SWL the opportunity to sell through "your USA Philatelic catalogue, merchandise stores and post offices." Id.

14. In addition to providing the two responses to SWL's May 22, 2000 letter, see par. 6, supra, USPS also referred SWL's May 22, 2000 letter and its Unsolicited Proposal to EMI. USPS asked EMI to review the Unsolicited Proposal and determine whether SWL would be a suitable licensee. Ex. 11 (Jul. 14, 2000 letter from USPS to EMI). EMI responded, explaining that it had executed a Term Sheet with SWL just prior to receipt of the referral. Id.

15. On July 31, 2000, after execution of the Term Sheet regarding the Trademark License Agreement, EMI sent SWL a draft License Agreement for its review. Ex. 14 (July 31, 2000 letter enclosing draft Trademark License Agreement). This License Agreement did not make any reference to "USPS Philatelic Centers" or the "USA Philatelic Catalog." Id. The License Agreement also did not contain any terms regarding the purchase of calendars by USPS or the distribution of calendars through USPS facilities. Id.

16. On August 10, 2000, Mr. Long was advised by Ms. Chick via telephone that the License Agreement did not grant SWL the ability to distribute its calendar product through USPS facilities. Ex. 5 (Notes of M. Chick), at A49 (1:27 pm).

17. SWL was advised by two different sets of attorneys in its negotiation of the License Agreement, Maria Reichmanis (of the Law Office of Maria Reichmanis) and Russel Mobley (of Fulcher, Hagler, Reed, Hanks & Harper, LLP). Exs. 15-16 (Reichmanis and Mobley correspondence).

18. Ms. Reichmanis prepared a memorandum to SWL on August 11, 2000, in which she advised SWL to seek the addition of a term granting SWL the ability to sell its product through post offices. Ex. 15 (Aug. 11, 2000 memorandum), at 167, 169. No such term was ever added to the License Agreement. Ex. 1 (executed License Agreement).

19. Similarly, on August 18, 2000, Mr. Mobley proposed adding a term to the License Agreement permitting sales of the SWL calendar product in USPS post offices. Ex. 16 (Aug. 18, 2000 letter). No such term was ever added to the License Agreement. Ex. 1 (executed License Agreement).

20. The same day, Ms. Stemen wrote to Mr. Mobley in response to his letter of August 18,

2000. Ex. 17 (August 18 letter from EMI to Mobley). Ms. Stemen enclosed a copy of her July 5 letter which stated "Please remember, however, that the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Id.

21. Between August and December 2000, SWL proposed several changes to the License Agreement and SWL and EMI exchanged several drafts of the License Agreement. None of these drafts made reference to USPS Philatelic Centers or the USA Philatelic Catalog. See Exs. 18 (EMI and SWL copies of Oct. 24, 2000 letter enclosing redlined draft License Agreement), 19 (Oct. 27, 2000 letter from SWL), 20 (Nov. 9, 2000 letter from EMI).

22. SWL prepared handwritten comments to a redlined draft of the agreement. Ex. 21 (Long comments to redlined draft). In those comments, Mr. Long asked that the term "merchandise stores" be deleted from the "Channels of Distribution" and replaced with "Philatelic Centers," stating, "We have been advised that the correct term for merchandise store is Philatelic Centers. Please make the change." Id. SWL did not propose the addition of any additional sentences or paragraphs to the agreement regarding purchase of calendars by the USPS or distribution of its calendars through USPS facilities. Id.

23. On December 9, 2000, EMI sent SWL a redlined draft of the License Agreement for its review, in which the term "philatelic centers" was inserted in handwriting after "merchandise stores." Ex. 22 (Dec. 9, 2000 letter).

24. On December 21, 2000, EMI sent SWL a further revised redlined draft of the License

Agreement for its review. Ex. 23 (Dec. 21, 2000 letter). In this draft, "Philatelic centers" was inserted after "Philatelic catalogs" and before "merchandise stores" so that the "Channels of Distribution" read as follows:

> Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph 18(a).

25. On December 28, 2000, EMI sent SWL a final version of the License Agreement for execution. See Ex. 24 (Dec. 28, 2000 letter). The parties executed the License Agreement in January 2001. See Ex. 25 (Feb. 7, 2001 letter enclosing executed License Agreement); Ex. 1 (executed License Agreement).

26. On March 30, 2001, Mr. Long contacted Barnes & Noble, Inc., a major bookstore chain, regarding wholesale sales of its calendar to Barnes & Noble, Inc. See Ex. 26 (Mar. 30, 2001). In that letter, Mr. Long stated, "The calendar will also be distributed through . . . the USPS Philatelic Catalog, and more than 300 Philatelic Centers throughout the United States and its territories and possessions." Id.

27. In September 2001, Mr. Long wrote an email to Ilene Kent of EMI. Ex. 27 (Sep. 15, 2001 email). In that email, Mr. Long stated:

> We are NOT asking or requesting that USPS purchase our product under any condition. All we are requesting is to market and sell our product through those USPS channels of distribution in our licensing agreement.

Id.

28. On November 30, 2001, SWL filed a Congressional Complaint, alleging that the License Agreement "authoriz[ed] the USPS/USA Philatelic Catalog and Centers as channels of distribution for sale of SW&L USPS 2002 Calendar Series." Ex. 28 (Nov. 30, 2001

complaint) (emphasis added).

29. On March 1, 2002, Mr. Long wrote to the USPS Board of Governors, alleging:

> US Postal Service has denied or blocked us from selling our calendars through USPS controlled distribution channels, such as the USPS controlled Philatelic centers, Philatelic catalogs and merchandise stores (US Post Offices, USPS Post Mart merchandise store and USPS quarterly catalog), as our contract agreement states.

Ex. 29 (Mar. 1, 2002 letter) (emphasis added).

30. On July 28, 2004, SWL filed a certified claim with the USPS regarding the alleged breach of the License Agreement. Ex. 30 (Certified Claim). The claim states:

> The Contract expressly and specifically authorizes SW&L to distribute products licensed under the Contract through USPS Philatelic catalogs, Philatelic centers, and merchandise stores.

Id. (emphasis added).

31. SWL did not pay the Guaranteed Minimum Royalties set forth in the License Agreement for Contract Period 2 and Contract Period 3. Counterclaim ¶ 7; Answer to Counterclaim, ¶ 7.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

January 28, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 28th day of January 2008, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah