IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 05-297C |
| | : | (Senior Judge Margolis) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, Sterling, Winchester & Long, L.L.C., respectfully submits this brief in opposition to Defendant's cross-motion for summary judgment.

INTRODUCTION

This case involves disputes concerning USPS Contract No. 102592-01-U-1173 ("the Contract") executed in January 2001 by Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), and the United States Postal Service ("USPS").

On October 31, 2007, SWL filed a motion for summary judgment as to liability only on SWL's claim for breach of contract against Defendant. On January 29, 2008, Defendant filed its Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. SWL now responds to Defendant's cross-motion. In opposition to the cross-motion, SWL incorporates herein by reference its motion for summary judgment and all materials filed in support thereof, including Plaintiff's

Proposed Findings of Uncontroverted Fact, the Brief in Support of Plaintiff's Motion for Summary Judgment, and the Affidavit of John G. Long

In this response, SWL will use the same citation conventions described in footnote 1 of Defendant's cross-motion for summary judgment.

<u>FACTS</u>

For the most part, the material facts are contained in Plaintiff's Proposed Findings of Uncontroverted Fact (filed in support of SWL's pending motion for summary judgment) and in Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact (filed contemporaneously herewith), both of which are incorporated herein by reference. Additional facts as necessary to the argument are set forth in the following section with citations to the record.

<u>ARGUMENT</u>

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In the setting of a motion for summary judgment, all justifiable factual inferences are drawn in favor of the nonmovant. *Barron Bancshares, Inc. v. U.S.*, 366 F.3d 1360, 1368 (Fed. Cir. 2004).

A. <u>Defendant's Motion For Summary Judgment On SWL's Claim For Breach of Contract Must Be Denied</u>.

Defendant contends that it is entitled to summary judgment on SWL's claim for breach of contract because the plain language of the Contract does not give SWL a right of access to USPS Philatelic Centers and the USPS Philatelic Catalog. That contention lacks merit and must be rejected.

First, Defendant argues that the Contract merely grants an intellectual property license to SWL. Defendant points to the fact that the Contract is entitled "License Agreement." It is axiomatic, however, that the parties' rights and obligations under a contract are not determined by any title assigned to the document, but rather by the terms and conditions of the contract read as a whole.

When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals. *Mobil Oil Exploration & Producing Southeast, Inc. v. U.S.*, 530 U.S. 604, 607 120 S.Ct. 2423, 2429 (2000). Contract interpretation begins with the language of the written agreement. *Coast Federal Bank, FSB v. U.S.*, 323 F.3d 1035, 1038 (Fed. Cir. 2003). A contract must be considered as a whole and interpreted so as to harmonize and give meaning to all of its provisions. *Petrofsky v. U. S.*, 222 Ct.Cl. 450, 616 F.2d 494, 503 (1980).

When the contractual language is unambiguous on its face, the plain language of the Agreement controls. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040-1041 (Fed. Cir. 2003). The language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances. *Metric Constructors, Inc. v. NASA, 169 F.3d 747, 752 (Fed. Cir. 1999).* A specific contract provision will control over a general contract provision. *Hometown Financial, Inc. v. U.S.*, 409 F.3d 1360, 1369 (Fed. Cir. 2005). In determining the intent of the parties as evidenced by the written contract, the court may and should take into account all the facts and circumstances surrounding its execution.

*Seaboard Ice Co. v. U.S.*, 104 Ct.Cl. 546, 60 F.Supp. 879, 883 (1945). When interpreting disputed contract terms, the context and intention of the contracting parties are more meaningful than the dictionary definition. *Rice v. United States*, 192 Ct. Cl. 903, 428 F.2d 1311, 1314 (1970).

The Contract "grants to [SWL] a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below . . . ." Ex.1 at A1. The Contract authorizes SWL "to design, manufacture, have manufactured, sell, distribute, and advertise Licensed Articles … ." Ex.1 at A8 (Contract, Exhibit B – Standard Terms and Conditions ¶ 2(a)). The Contract identifies the "Licensed Articles" as follows: "An annual series of up to five (5) thematic U.S. Postal Service 12-month calendars, commencing with calendar year 2002." Ex.1 at A1 (Contract ¶ 2).

The Contract obligates SWL to "make and maintain adequate and reasonable arrangements for the distribution of Licensed Articles [*i.e.*, calendars] through the Channels of Distribution specified in the Underlying Agreement." Ex.1 at A10 (Contract, Exhibit B – Standard Terms and Conditions ¶ 2(c)(2)). The "Channels of Distribution" specified in the Contract include the following: "Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores … ." Ex.1 at A1 (Contract ¶ 5).

The term "philatelic center" is defined by USPS itself in USPS Publication 32, "Glossary of Postal Terms," to be: "A retail outlet or designated location in a postal lobby that sells select stamp stock of various plate number positions and a complete line of philatelic products for stamp collectors. (Also called *Postique*, which is a USPS trademark.)" *See* Ex. 32 at A468. USPS in fact owns and operates Philatelic Centers,

controlled 100% by USPS, that mainly cater to stamp collectors and offer for sale Philatelic products. Pl. F. ¶¶ 4, 7. Both USPS contracting officers involved with the Contract agree that a Philatelic Center is not considered the same thing as a post office or a branch post office. Pl. F. ¶ 5. USPS also publishes a quarterly Philatelic Catalog, controlled 100% by USPS, that offers products for sale. Pl. F. ¶ 9, 10, 11. SWL contends that the terms "Philatelic catalogs" and "Philatelic centers," as used in the distribution channels provision in the Contract, clearly encompass the Philatelic Centers operated by, and the Philatelic Catalogs published by, USPS and, therefore, that SWL has a contractual right to access those channels of distribution.

Defendant argues that SWL has no right of access to the USPS Philatelic Centers and the USPS Philatelic Catalog because the Contract does not refer specifically to "USPS" Philatelic Centers or to the "USA" Philatelic Catalog. It is unreasonable to suggest that where one enters into a contract with another party that owns and operates Philatelic Centers and publishes Philatelic Catalogs, references in the contract to "Philatelic centers" and "Philatelic catalogs" do not include the Philatelic Centers and Philatelic Catalogs of the other contracting party.

Moreover, the evidence shows that, before SWL initiated this case, both USPS' contracting officer and USPS' agent, EMI, understood the terms to refer to USPS facilities. Exhibit 35 in Defendant's Appendix is a transcript, prepared by SWL, of a March 2, 2001, telephone conversation between USPS Contracting Officer, H. Diane Fagan (HDF), J.G. Long of SWL (JG), and SWL's accountant, Sanford Loyd (SL). According to that transcript, Mr. Long told Ms. Fagan he was trying to determine who to

speak to in order to get SWL's calendars "in the Philatelic Centers and Catalog channels of distribution." Ex. 35 at A483. Although Mr. Long did not specifically mention the "USPS" Philatelic Centers or the "USA" Philatelic Catalog, Ms. Fagan obviously recognized that was what Mr. Long was referring to, and she replied, "There is no distribution … there is no channels to the Philatelic catalogs and the Philatelic centers." *Id*. Ms Fagan went on to say, "There is no channels, you can't get in. Period, and they shouldn't of never had this in here." *Id*. Ms. Fagan told Mr. Long that he needed to "call Ilene Kent of EMI because they are our agent and they are supposed to handle this." *Id*. Clearly, Ms. Fagan understood at that time that the "Philatelic catalogs" and "Philatelic centers" included in the authorized distribution channels referred to the Philatelic catalogs and Philatelic centers operated by USPS, and she took the position that those distribution channels should not have been included in the Contract.

Subsequently, Ms. Kent of EMI stated in an email to Mr. Long:

> As we'd talked before, the USPS/philatelic channels were added to your agreement, but, as you point out, does not obligate the USPS to purchase these products – either for giveaway or for resale.

Ex. 27 (A386). Clearly, Ms. Kent, the person to whom Contracting Office Fagan referred Mr. Long, also understood at the time that the terms "Philatelic catalogs" and "Philatelic centers" in the Contract referred to USPS' Philatelic catalogs and Philatelic centers.

Defendant also contends that the Contract does not give SWL a right of access to the USPS distribution channels because SWL would have no right of access to other, non-USPS distribution channels such as "bookstores" and "specialty stores." Defendant's strained interpretation of the Contract is not reasonable. SWL agrees, of

course, that the Contract does not give SWL any right to use third-party distribution channels. But with respect to distribution channels owned and exclusively controlled by the other contracting party (such as USPS in this case), the Contract, reasonably construed, must be understood to permit use of the USPS distribution channels by SWL.

Every contract has an implied obligation of good faith and fair dealing. *Essex Electro Engineers, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed. Cir. 2000). That obligation applies to the government just as it does to private parties, and includes the duty not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. *Centex Corp. v. U.S.*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). Each party to a contract must do whatever is reasonably necessary to enable the other party to perform. *Kehm Corp. v. U.S.*, 119 Ct.Cl. 454, 93 F.Supp. 620, 623 (1950). Where one party owns and exclusively controls distribution channels of a kind explicitly authorized under the Contract, the implied obligation of good faith and fair dealing requires that those distribution channels be made available to the other party unless the contract expressly forecloses those distribution channels, which is not the case here.

The Contract unambiguously authorizes SWL to use “Philatelic catalogs” and “Philatelic centers” as distribution channels for SWL’s calendars. A “reasonably intelligent person acquainted with the contemporaneous circumstances,” *Metric Constructors, supra,* must conclude that such language authorizes SWL to use as distribution channels the “Philatelic centers” and “Philatelic catalogs” controlled by USPS. Defendant’s contention that the plain language of the Contract does not allow SWL to access those distribution channels must be rejected.

B. The Extrinsic Evidence Relied Upon By Defendant Cannot Be Considered Unless The The Contract Is Ambiguous, In Which Case Defendant's Motion Must be Denied.

Defendant contends that the Contract is clear on its face (and SWL agrees with that contention). Nonetheless, Defendant's cross-motion and proposed findings of fact contain extensive reference to and discussion of the parties' negotiations prior to execution of the Contract and to various drafts of proposed agreements that were never executed by the parties. Such extrinsic evidence should not be considered in deciding Defendant's cross-motion.

Where the provisions of a contract are clear and unambiguous, they must be given their plain and ordinary meaning, and the court may not resort to extrinsic evidence to interpret them. *Coast Federal Bank, FSB v. U.S.*, 323 F.3d 1035, 1038 (Fed. Cir. 2003); *McAbee Constr., Inc. v. U.S.*, 97 F.3d 1431, 1435 (Fed.Cir.1996). As the court stated in *Barron Bancshares, Inc. v. U.S.*, 366 F.3d 1360 (Fed. Cir. 2004):

> The parol evidence rule is a rule of substantive law that renders inadmissible evidence introduced to modify, supplement, or interpret the terms of an integrated agreement. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir.1996). Evidence of the parties' course of dealing constitutes this kind of parol evidence that is prohibited by the rule. *Alves v. United States*, 133 F.3d 1454, 1459 (Fed.Cir.1998). If the terms of a contract are clear and unambiguous, they must be given their plain meaning – extrinsic evidence is inadmissible to interpret them. *McAbee Constr.*, 97 F.3d at 1435. A contract provision is only ambiguous if susceptible to more than one reasonable meaning. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed.Cir.1986).

366 F.3d at 1375-1376 (emphasis added). An integration clause conclusively establishes that the integration is total unless the document is obviously incomplete or the merger

clause was included as a result of fraud or mistake or any other reason to set aside the contract. *Id.* at 1375.

The Contract contains an integration clause that provides in pertinent part:

> This Agreement constitutes the entire Agreement and understanding between the parties hereto and terminates and supersedes any prior Agreement or understanding relating to the subject matter hereof between USPS and Licensee. USPS and Licensee are not relying upon any statements, warranties, or representations except those contained in this Agreement. …

Ex.1 at A27 (Contract, Exhibit B – Standard Terms and Conditions ¶ 22). All negotiations and all draft agreements that were never executed by the parties were superseded by the executed Contract.

The extrinsic evidence discussed by Defendant would not be admissible at trial unless the Contract is ambiguous, *i.e*. susceptible to more than one reasonable meaning. The plain language of the Contract includes Philatelic centers and Philatelic catalogs as authorized distribution channels. At the time of execution, USPS itself defined "Philatelic center" to be a facility owned and controlled by USPS, and USPS in fact operated such Philatelic centers and published Philatelic catalogs. Moreover, as discussed above, after execution of the Contract both USPS' Contracting Officer and Ilene Kent of EMI, USPS' agent in this transaction, understood that the terms referred to USPS Philatelic centers and Philatelic catalogs.

SWL's interpretation is reasonable and consistent with the contract language. Defendant's interpretation, that the terms "Philatelic centers" and "Philatelic catalogs" only include such facilities if they are not owned or controlled by USPS, is not

reasonable. Thus, the contract language is not susceptible to more than one reasonable meaning and is not ambiguous.

Because the Contract is not ambiguous, the extrinsic evidence discussed by Defendant is not admissible to interpret the Contract and should be disregarded. If, on the other hand, the Court finds that the Contract is ambiguous, then a genuine issue of fact obviously remains for trial and both SWL's motion for summary judgment and Defendant's cross-motion for summary judgment should be denied without consideration of the extrinsic evidence addressed by Defendant.

C. Defendant's Motion For Summary Judgment On Its Counterclaim Must Be Denied.

Defendant seeks summary judgment on its counterclaim against SWL, in which Defendant contends that SWL breached the Contract by failing to pay "Guaranteed Minimum Royalties" of $50,000 for Contract Period 2 (1/1/03-12/31/03) and Contract Period 3 (1/1/04-12/31/04). That motion must be denied because Defendant's material and substantial breach of the Contract, and SWL's subsequent termination of the Contract due to the Defendant's breach, relieved SWL of any obligation to make the minimum royalty payments to USPS.

Paragraph 9 of the Contract provides that SWL shall pay a $50,000.00 "Guaranteed Minimum Royalty" for Contract Period 1 [7/1/00-12/31/02], Contract Period 2 [1/1/03-12-31-03], and Contract Period 3 [1/1/04-12/31/04]. *See* Ex.1 at A2 (Contract ¶ 9). It is undisputed that SWL paid the "Guaranteed Minimum Royalty" for Contract Period 1 but not for Contract Periods 2 and 3. Defendant's Counterclaim ¶ 7; Reply to Counterclaim ¶ 7.

The Contract provides that SWL

> shall have the right to terminate this Agreement upon thirty (30) days prior written notice to USPS given in accordance with Section 17, below, if USPS shall fail to perform any material term or condition of this Agreement unless, within the notice period, USPS cures the breach or provides [SWL] with notification that the breach cannot reasonably be cured within that period and provides reasonable assurances that the breach will be cured in a period acceptable to [SWL].

Ex.1 at A18-A19 (Contract, Exhibit B – Standard Terms and Conditions ¶ 9(b)).

As discussed above and in SWL's pending motion for summary judgment, USPS breached the Contract by refusing to allow SWL to utilize the USPS channels of distribution authorized by the Contract. On April 11, 2002, SWL's representative, Mr. J.G. Long, gave written notice to USPS of SWL's intention to terminate the Contract within 30 days of the notice due to "the breach by USPS of the material terms of the License Agreement." Defendant's Counterclaim ¶ 2.

SWL's termination of the Contract, effective in May 2002, occurred more than six months before the "Guaranteed Minimum Royalty" for Contract Period 2 would have become due on January 1, 2003. Thus, the termination of the Contract relieved SWL of any obligation to make further minimum royalty payments to USPS.

Moreover, notwithstanding SWL's termination of the Contract, USPS' breach excused SWL from any obligation to make additional royalty payments to USPS. A party sued for breach of contract may defend on a theory that its nonperformance is excused because the other contracting party committed the first material breach.

*Hometown Financial, Inc. v. U.S.*, 409 F.3d 1360, 1370 (Fed. Cir. 2005). A material breach by one contracting party relieves the other party of further obligations under the contract. *Cities Service Helex, Inc. v. U. S.*, 211 Ct.Cl. 222, 543 F.2d 1306, 1313 (1976). As the court stated in *Barron Bancshares, Inc. v. U.S.*, 366 F.3d 1360 (Fed. Cir. 2004):

> Faced with two parties to a contract, each of whom claims breach by the other, courts will "often ... impose liability on the party that committed the first material breach." E. Allen Farnsworth, *Farnsworth on Contracts* § 8.15, at 439 (1990); *see also Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1334 (Fed.Cir.2004). According to the Restatement, the doctrine of prior material breach is based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties ... if there has already been an uncured material failure of performance by the other party.

366 F.3d at 1380-1381.

USPS' refusal to give SWL any access to the USPS channels of distribution authorized by the Contract was a material breach of the Contract. That breach relieved SWL of any further obligations under the Contract, including payments of the "Guaranteed Minimum Royalty" for Contract Periods 2 and 3 which were not due until well after the time of USPS' breach. Accordingly, the Defendant's motion for summary judgment on its counterclaim against SWL should be denied.

## CONCLUSION

On the basis of the foregoing discussion and authorities, SWL respectfully requests that the Court deny Defendant's cross-motion for summary judgment.

This 31st day of March, 2008.

Respectfully submitted,

/s/ Frederick L Wright______

Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax

Attorneys for Plaintiff

CERTIFICATE OF FILING

I hereby certify that on March 31, 2008, a copy of the foregoing Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment was filed electronically. I understand the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax