IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 05-297C |
| | : | (Senior Judge Margolis) |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Plaintiff, Sterling, Winchester & Long, L.L.C., pursuant to RCFC 56(h)(2), respectfully submits its response to Defendant's Proposed Findings of Uncontroverted Fact:

1. Proposed Finding: On October 7, 1999, Plaintiff, Sterling, Winchester & Long, L.L.C. ("SWL"), submitted to the United States Postal Service ("USPS") an unsolicited proposal to produce an "Official U.S. Postal Services calendar collection" for sale through USPS post offices and the USPS website. Compl., ¶ 15; Ex. 2 (Oct. 1999 Unsolicited Proposal), at A34. By letter of December 3, 1999, USPS informed SWL that it would not accept this proposal. Ex. 3 (Dec. 3, 1999 letter).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that, on October 7, 1999, it submitted an unsolicited proposal to

USPS (Complaint ¶ 15; Answer and Counterclaim ¶ 15), and that Ex. 2 is a copy of that unsolicited proposal. The unsolicited proposal states in part that it is a proposal:

> To develop an Official U.S. Postal Services Calendar collections and Accessories for commercial sale through the U.S. Postal Service (USPS) Departments, Post Offices, account representatives and through the USPS Official merchandise web site.

By letter dated December 3, 1999 (Ex. 3), USPS informed SWL that USPS was "unable to accept your proposal as it is currently submitted" and indicated that SWL could resubmit the proposal "in the format outlined in" USPS Publication 131, Submitting Unsolicited Proposals to the Postal Service.

2. Proposed Finding: On February 7, 2000, Mr. Long spoke with Marcie Chick of EMI regarding obtaining a license to use USPS intellectual property. Mr. Long informed Ms. Chick that he was separately in negotiations with USPS to obtain access to distribution through post offices. Ms. Chick informed Mr. Long that there was no guarantee he would obtain this distribution right. See Ex. 5 (Notes of M. Chick), at A52 (2:20PM).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that, according to Ms. Chick's notes, Mr. Long called Ms. Chick on February 7, 2000, and mentioned that he was in negotiations with USPS about doing a commemorative stamp 2001 calendar which would feature one stamp per month. SWL does not contend

that the Contract grants SWL access to post offices as a distribution channel.

3. Proposed Finding: In March 2000, SWL submitted another unsolicited proposal to produce an "Official U.S. Postal Services calendar collection" for sale through USPS post offices and the USPS website. Ex. 6 (Mar. 8, 2000 Letter enclosing Unsolicited Proposal).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that, on March 8, 2000, it submitted an unsolicited proposal to USPS, and that Ex. 6 is a copy of SWL's cover letter and the unsolicited proposal. The unsolicited proposal states in part that it is a proposal for

> a 2001 Official USPS Calendar Collection for commercial sales through the USPS … to be marketed and sold through the USPS merchandise stores, USA Philatelic catalog, post offices, Internet site and through other promotional sources.

*See* Ex. 6, at A57.

4. Proposed Finding: On May 18, 2000, SWL submitted a trademark license application to EMI. Ex. 7 (May 18, 2000 Letter enclosing Trademark License Application). In its application, it sought a license to use trademarks of USPS in connection with its calendar project. Id.

Response: SWL agrees with the proposed finding.

5. Proposed Finding: On May 22, 2000, Mr. Long wrote to the USPS Board of Governors regarding his unsolicited proposals of October 1999 and March 2000

to produce an "Official U.S. Postal Services calendar collection" for sale through USPS post offices and the USPS website. Ex. 8 (May 22, 2000 Letter). In that letter, he outlines his prior correspondence with USPS regarding the proposal for selling a calendar through USPS post offices and the USPS website. Id. He makes no mention of his contacts with EMI or his submission of a trademark license application on May 18, 2000. Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Mr. Long sent a letter dated May 22, 2000, to Mrs. LeGree S. Daniels of the USPS Board of Governors, that Ex. 8 is a copy of that letter, and that the letter generally concerns SWL's unsolicited proposal and the time USPS was taking to respond to SWL. As for the specific contents of the letter, the letter speaks for itself.

6. Proposed Finding: USPS provided two responses to SWL, one regarding the intellectual property issues raised by SWL's Unsolicited Proposal, and another regarding the retail distribution and sales issues raised by SWL's Unsolicited Proposal. *See* Ex. 4 (Jul. 14, 2000 letter from USPS to EMI); Ex. 11 (Jul. 12, 2000 letter from USPS to SWL).

Response: SWL disagrees with the proposed finding as stated. Ex. 4 is a July 14, 2000, letter from USPS to EMI, not a response from USPS to SWL as stated in the proposed finding. SWL agrees that USPS sent to SWL a letter dated July 12, 2000, and that Ex. 11 is a copy of that letter.

7. Proposed Finding: Regarding the intellectual property issues raised by SWL's Unsolicited Proposal, Thad Dilley, a USPS manager, informed Mr. Long by letter that USPS stamps and the USPS logo were the intellectual property of USPS, and could only be used by others pursuant to a license. See Ex. 4 (Jul. 14, 2000 letter from USPS to EMI). In that letter, USPS informed SWL that if it wished to sell products containing USPS intellectual property, it would be required to obtain a license from the USPS. Id. USPS also informed SWL that EMI was the licensing agency for the USPS. Id.

Response: SWL disagrees with the proposed finding as stated. Ex. 4 is a July 14, 2000, letter from USPS to EMI, not a letter from USPS to SWL.

8. Proposed Finding: Regarding the retail distribution and sales issues raised by SWL's Unsolicited Proposal, the Retail Division of USPS and the Purchasing and Materials Division of USPS wrote to SWL. Ex. 11 (Jul. 12, 2000 letter). USPS informed Mr. Long in that letter that it was rejecting his proposal for a calendar. Further, the letter stated, "In this regard, we have rejected several other proposals for calendars. This same information has been provided to you by telephone and letter and, unfortunately, must stand as our final answer." Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that USPS sent to SWL a letter dated July 12, 2000, that Ex. 11 is a copy of that letter, that the letter informs SWL that USPS had rejected an "unsolicited proposal related to a millennium mug and

calendar," and that the letter contains, *inter alia*, the language quoted in the proposed finding.

9. Proposed Finding: On June 1, 2000, Ms. Chick and Mr. Long spoke again about the proposed license agreement and Mr. Long reiterated that he was in separate negotiations with the USPS for the right to sell in post offices and that the USPS was reviewing his proposal for post office sales. See Ex. 5 (Notes of M. Chick), at A52 (10:24am).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that, according to Ms. Chick's notes, she spoke with Mr. Long on June 1, 2000, about a variety of topics, including a proposal being reviewed by USPS about selling products at post offices. SWL does not contend that the Contract grants SWL access to post offices as a distribution channel.

10. Proposed Finding: On June 21, 2000, EMI sent SWL for its review a proposed Term Sheet setting forth the proposed terms of the Trademark License Agreement permitting SWL to use the USPS intellectual property in connection with a calendar project. Ex. 9 (June 21, 2000 letter).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that EMI sent to SWL a letter dated June 21, 2000, and that Ex. 9 is a copy of that letter. Generally, the letter informs SWL that it should sign and return the Term Sheet along with a $50,000.00 advance royalty check payable to USPS, and that once USPS had

agreed to the proposed terms, EMI's legal department would begin drafting the final license agreement.

11. Proposed Finding: On July 5, 2000, Ms. Stemen wrote to Mr. Long to summarize their discussion of the same day regarding the proposed terms of the Trademark License Agreement. Ex. 10 (July 5, 2000 letter). In that letter, Ms. Stemen stated: "Please remember, however, that the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Robin Stemen of EMI sent to Mr. Long a letter dated July 5, 2000, that Ex. 10 is a copy of that letter, and that the letter contains, *inter alia*, the language quoted in the proposed finding. SWL does not contend that the Contract obligates USPS to buy any SWL products or to assist SWL in selling products at branch post offices.

12. Proposed Finding: One week later, on July 12, 2000, SWL executed with EMI the Term Sheet setting forth the proposed terms of a License Agreement permitting SWL to use USPS intellectual property in connection with a calendar product. Ex. 12 (Executed Term Sheet). The Term Sheet made no reference to "Philatelic centers," "USPS Philatelic Centers," or the USA Philatelic Catalog. The Term Sheet was signed by EMI on July 19, 2000. Id.

<u>Response</u>: SWL disagrees with the proposed finding as stated. SWL agrees that Ex. 12 contains a copy of an executed USPS Proposed Terms Sheet. SWL executed the Terms Sheet on July 12, 2000, and USPS executed the Terms Sheet on July 19, 2000. EMI did not execute the Terms Sheet. While the Terms Sheet does not contain the specific terms "Philatelic centers," "USPS Philatelic Centers," or "USA Philatelic Catalog," the Terms Sheet does state that the distribution channels include "Philatelic catalogs and merchandise stores." The USPS Proposed Terms Sheet was superseded by the Contract executed by USPS and SWL, see Ex.1 at A27 (Contract, Exhibit B – Standard Terms and Conditions ¶ 22), and the Contract includes both "Philatelic catalogs" and "Philatelic centers" as authorized channels of distribution for SWL's calendars, see Ex.1 at A1 (Contract ¶ 5).

13. <u>Proposed Finding</u>: The day after signing the term sheet with EMI, SWL again sought to contact USPS separately regarding the possibility of sales of its calendar in USPS facilities. On July 13, 2000, Mr. Long sent an email to Azzezaly S. Jaffer, Vice President of Public Affairs and Communications, of USPS. Ex. 13 (July 13, 2000 email). In that letter, Mr. Long made clear to Mr. Jaffer, "We are working with EMI in finalizing the USPS Licensing Agreement for our USPS Calendar Project." <u>Id</u>. He asks, however, that the USPS provide SWL the

opportunity to sell through "your USA Philatelic catalogue, merchandise stores and post offices." Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Mr. Long sent an email dated July 13, 2000, to Mr. Jaffer of USPS, and that Ex. 13 is a copy of that email. The email states in part:

> Based on our market projections, the sales potential for the product looks good and even better if there's an opportunity to sell the calendar series through your USA Philatelic catalogue, merchandise stores and post offices.

14. Proposed Finding: In addition to providing the two responses to SWL's May 22, 2000 letter, see par. 6, supra, USPS also referred SWL's May 22, 2000 letter and its Unsolicited Proposal to EMI. USPS asked EMI to review the Unsolicited Proposal and determine whether SWL would be a suitable licensee. Ex. 11 (Jul. 14, 2000 letter from USPS to EMI). EMI responded, explaining that it had executed a Term Sheet with SWL just prior to receipt of the referral. Id.

Response: SWL disagrees with the proposed finding as stated. Ex. 11 is a July 12, 2000, letter from USPS to SWL, not from USPS to EMI. Regarding the "two responses to SWL's May 22, 2000 letter," see SWL's response to proposed finding number 6, *supra*.

15. Proposed Finding: On July 31, 2000, after execution of the Term Sheet regarding the Trademark License Agreement, EMI sent SWL a draft License Agreement for its review. Ex. 14 (Jul. 31, 2000 letter enclosing draft Trademark

License Agreement). This License Agreement did not make any reference to "USPS Philatelic Centers" or the "USA Philatelic Catalog." Id. The License Agreement also did not contain any terms regarding the purchase of calendars by USPS or the distribution of calendars through USPS facilities. Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Ex. 14 is a copy of a July 14, 2000, letter from EMI to SWL transmitting a proposed agreement that was never executed by the parties and which was superseded by the Contract executed by USPS and SWL, see Ex.1 at A27 (Contract, Exhibit B – Standard Terms and Conditions ¶ 22). The executed Contract includes both "Philatelic catalogs" and "Philatelic centers" as authorized channels of distribution for SWL's calendars, see Ex.1 at A1 (Contract ¶ 5).

16. Proposed Finding: On August 10, 2000, Mr. Long was advised by Ms. Chick via telephone that the License Agreement did not grant SWL the ability to distribute its calendar product through USPS facilities. Ex. 5 (Notes of M. Chick), at A49 (1:27 pm).

Response: SWL disagrees with the proposed finding as stated. The License Agreement was not executed until January 2001, and had been revised several times between August and December 2000, including the revision that added "Philatelic centers" as an authorized distribution channel. It is obvious that Ms. Chick could

not have advised Mr. Long on August 10, 2000, that the License Agreement did or did not grant any particular rights to SWL because the License Agreement was not finalized or executed until 3-4 months after that time.

17. Proposed Finding: SWL was advised by two different sets of attorneys in its negotiation of the License Agreement, Maria Reichmanis (of the Law Office of Maria Reichmanis) and Russel Mobley (of Fulcher, Hagler, Reed, Hanks & Harper, LLP). Exs. 15-16 (Reichmanis and Mobley correspondence).

Response: SWL agrees that it consulted at times with attorneys Reichmanis and Mobley concerning the license agreement.

18. Proposed Finding: Ms. Reichmanis prepared a memorandum to SWL on August 11, 2000, in which she advised SWL to seek the addition of a term granting SWL the ability to sell its product through post offices. Ex. 15 (Aug. 11, 2000 memorandum), at 167, 169. No such term was ever added to the License Agreement. Ex. 1 (executed License Agreement).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Ms. Reichmanis prepared a memorandum to SWL on August 11, 2000, that Ex. 15 is a copy of that memorandum, and that the memorandum states in part:

> Distribution Channels
>
> How about retail in post offices? It seems like this would be a good way to show/sell the product (but it doesn't seem like they will agree).

SWL does not contend that the Contract grants SWL the ability to sell its product through post offices.

19. Proposed Finding: Similarly, on August 18, 2000, Mr. Mobley proposed adding a term to the License Agreement permitting sales of the SWL calendar products in USPS post offices. Ex. 16 (Aug. 18, 2000 letter). No such term was ever added to the License Agreement. Ex. 1 (executed License Agreement).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Mr. Mobley sent a letter dated August 18, 2000, to Robin Stemen of EMI, that Ex. 16 is a copy of that letter, and that the letter states in part:

> 4. Channels of Distribution:
>
> This section should be expanded to permit sales of the calendar in approved Post Offices.

SWL does not contend that the Contract grants SWL the ability to sell its product through post offices.

20. Proposed Finding: The same day, Ms. Stemen wrote to Mr. Mobley in response to his letter of August 18, 2000. Ex. 17 (August 18 letter from EMI to Mobley). Ms. Stemen enclosed a copy of her July 5 letter which stated "Please remember, however, that the agreement does not obligate the USPS to buy any of your products or to assist you in selling products at the branch post offices, or entitle you to sell products to the USPS or its branch offices." Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Ex. 17 is a copy of an August 18, 2000, letter from Ms.

Stemen to Mr. Mobley enclosing a copy of Ms. Stemen's July 5, 2000, letter to SWL. SWL does not contend that the Contract obligates USPS to buy any SWL products or to assist SWL in selling products at branch post offices.

21. Proposed Finding: Between August and December 2000, SWL proposed several changes to the License Agreement and SWL and EMI exchanged several drafts of the License Agreement. None of these drafts made reference to USPS Philatelic Centers or the USA Philatelic Catalog. See Exs. 18 (EMI and SWL copies of Oct. 24, 2000 letter enclosing redlined draft License Agreement), 19 (Oct. 27, 2000 letter from SWL), 20 (Nov. 9, 2000 letter from EMI).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that SWL and EMI exchanged several drafts of the proposed agreement that were never executed by the parties and which were superseded by the Contract executed by USPS and SWL, see Ex.1 at A27 (Contract, Exhibit B – Standard Terms and Conditions ¶ 22). The executed Contract includes both "Philatelic catalogs" and "Philatelic centers" as authorized channels of distribution for SWL's calendars, see Ex.1 at A1 (Contract ¶ 5). SWL disagrees that none of the draft agreements made reference to USPS Philatelic Centers or the USA Philatelic Catalog.

22. Proposed Finding: SWL prepared handwritten comments to a redlined draft of the agreement. Ex. 21 (Long comments to redlined draft). In those comments,

Mr. Long asked that the term "merchandise stores" be deleted from the "Channels of Distribution" and replaced with "Philatelic Centers," stating, "We have been advised that the correct term for merchandise store is Philatelic Centers. Please make the change." Id. SWL did not propose the addition of any additional sentences or paragraphs to the agreement regarding purchase of calendars by the USPS or distribution of its calendars through USPS facilities. Id.

Response: SWL agrees that Ex. 21 is a copy of Mr. Long's comments to an unexecuted draft of the agreement, and include the statement: "We have been advised that the correct term for merchandise store is Philatelic Centers. Please make the change." The subsequently revised and executed Contract includes "Philatelic centers" as an authorized channel of distribution for SWL's calendars, see Ex.1 at A1 (Contract ¶ 5).

23. Proposed Finding: On December 9, 2000, EMI sent SWL a redlined draft of the License Agreement for its review, in which the term "philatelic centers" was inserted in handwriting after "merchandise stores." Ex. 22 (Dec. 9, 2000 letter).

Response: SWL agrees with the proposed finding, except that the date of the letter from Ms. Stemen to Mr. Long (Ex. 22) was December 6, 2000, not December 9, 2000.

24. Proposed Finding: On December 21, 2000, EMI sent SWL a further revised redlined draft of the License Agreement for its review. Ex. 23 (Dec. 21, 2000 letter). In this draft, "Philatelic centers" was inserted after "Philatelic catalogs"

and before "merchandise stores" so that "Channels of Distribution" read as follows:

> Wholesale to bookstores, specialty stores, Philatelic catalogs, Philatelic centers and merchandise stores; Retail via Licensee's website, subject to the conditions set forth in Paragraph 18(a).

Response: SWL agrees with the proposed finding.

25. Proposed Finding: On December 28, 2000, EMI sent SWL a final version of the License Agreement for execution. See Ex. 24 (Dec. 28, 2000 letter). The parties executed the License Agreement in January 2001. See Ex. 25 (Feb. 7, 2001 letter enclosing executed License Agreement); Ex. 1 (executed License Agreement).

Response: SWL disagrees with the proposed finding as stated. On December 28, 2000, Robin Stemen of EMI sent SWL a letter (Ex. 24) enclosing a revised draft of the agreement and stating that the "changes have not yet been reviewed or approved by the USPS …." Ms. Stemen asked SWL to execute and return the agreement and indicated that she would "then forward [the agreement] to the USPS for review and counter-signature." SWL executed the Contract (Ex. 1) on January 4, 2001, and USPS executed the Contract on January 31, 2001. (Complaint ¶ 6; Answer and Counterclaim ¶ 6).

26. Proposed Finding: On March 30, 2001, Mr. Long contacted Barnes & Noble, Inc., a major bookstore chain, regarding wholesale sales of its calendar to Barnes & Noble, Inc. See Ex. 26 (Mar. 30, 2001). In that letter, Mr. Long stated, "The

calendar will also be distributed through … the USPS Philatelic Catalog, and more than 300 Philatelic Centers throughout the United States and its territories and possessions." Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Mr. Long wrote a letter dated March 30, 2001, to Mr. Steve Anderson of Barnes & Noble, Inc., that Ex. 26 is a copy of that letter, and that the letter states in part:

> Marketing and sales retail distribution channels include book and specialty stores. The calendar will also be distributed through the "uspscalendar2002.com" licensee's website, the USPS Philatelic Catalog, and more than 300 Philatelic Centers throughout the United States and its territories and possessions.

27. Proposed Finding: In September 2001, Mr. Long wrote an email to Ilene Kent of EMI. Ex. 27 (Sep. 15, 2001 email). In that email, Mr. Long stated:

> We are NOT asking or requesting that USPS purchase our product under any condition. All we are requesting is to market and sell our product through those USPS channels of distribution in our License Agreement.

Id.

Response: SWL disagrees with the proposed finding as stated. SWL agrees that, on September 15, 2001, Mr. Long sent an email to Ilene Kent of EMI and that Ex. 27 consists, in part, of a copy of that email. Mr. Long's email to Ms. Kent states in part:

> We are now in the process of finalizing our advertising and marketing promotions, including our web page, and would like to include the USPS

> Philatelic catalog and Philatelic centers as part of our channels of distribution, as per our License Agreement.
>
> Before making our request to USPS, we would like to offer EMI an opportunity to express our desires to further promote USPS by way of our product presented in their specified locations and catalog. We are NOT asking or requesting that USPS purchase our product under any condition. All we are requesting is to market and sell our product through those USPS channels of distribution in our licensing agreement.

Ex. 27 also contains Ms. Kent's response to Mr. Long via email on September 17, 2001, in which Ms. Kent stated in part:

> As we'd talked before, the USPS/philatelic channels were added to your agreement, but, as you point out, does not obligate the USPS to purchase these products – either for giveaway or for resale.

28. Proposed Finding: On November 30, 2001, SWL filed a Congressional Complaint, alleging that the License Agreement "authoriz[ed] the USPS/USA Philatelic Catalog and Centers as channels of distribution for sale of SW&L USPS 2002 Calendar Series." Ex. 28 (Nov. 30, 2001 complaint) (emphasis added).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that it sent a letter to USPS and EMI dated November 30, 2001, that Ex. 28 is a copy of that letter, that the letter contains the heading "CONGRESSIONAL COMPLIANT," and that the letter states in part:

> USPS entered into agreement with SW&L authorizing the USPS/USA Philatelic Catalog and Centers as channels of distribution for sale of

> SW&L USPS 2002 Calendar Series, the USPS by consistently denying SW&L said rights has breached its contractual obligation to SW&L.

29. Proposed Finding: On March 1, 2002, Mr. Long wrote to the USPS Board of Governors, alleging:

> US Postal Service has denied or blocked us from selling our calendars through USPS controlled distribution channels, such as the USPS controlled Philatelic centers, Philatelic catalogs and merchandise stores (US Post Offices, USPS Post Mart merchandise store and USPS quarterly catalog), as our contract agreement states.

Ex. 29 (Mar. 1, 2002 letter) (emphasis added).

Response: SWL disagrees with the proposed finding as stated. SWL agrees that Mr. Long wrote separate letters dated March 1, 2002, to Chairman Robert F. Rider, Vice Chairman S. David Fineman, and Governor John F. Walsh of the USPS Board of Governors, that Ex. 29 consists of copies of those letters, and that each of the letters contains, *inter alia*, the language quoted in the proposed finding (without the added emphasis).

30. Proposed Finding: On July 28, 2004, SWL filed a certified claim with the USPS regarding the alleged breach of the License Agreement. Ex. 30 (Certified Claim). The claim states:

> The Contract expressly and specifically authorizes SW&L to distribute products licensed under the Contract through USPS Philatelic catalogs, Philatelic centers, and merchandise stores.

Id. (emphasis added).

Response: SWL agrees that it submitted to USPS Contracting Officer Robin R. Pacheco a certified claim dated July 28, 2004, that Ex. 30 is a copy of that claim, and that the claim states, *inter alia*, the language quoted in the proposed finding (without the added emphasis).

31. Proposed Finding: SWL did not pay the Guaranteed Minimum Royalties set forth in the License Agreement for Contract Period 2 and Contract Period 3. Counterclaim ¶ 7; Answer to Counterclaim, ¶ 7.

Response: SWL agrees that it did not pay Guaranteed Minimum Royalties to USPS for Contract Period 2 (1/1/03-12/31/03) and Contract Period 3 (1/1/04-12/31/04). By letter to USPS and EMI dated November 23, 2001 (Affidavit of John G. Long, ¶ 9 and Ex. B thereto), SWL advised USPS that it was in breach of the Contract due to USPS' denial of access to the USPS Philatelic Centers and Philatelic Catalog distribution channels identified in the Contract. On April 11, 2002, SWL's representative, Mr. J.G. Long, gave written notice to USPS of SWL's intention to terminate the Contract within 30 days of the notice due to "the breach by USPS of the material terms of the License Agreement." Defendant's Counterclaim ¶ 2. SWL had no obligation to pay royalties to USPS for Contract Periods 2 and 3 because USPS breached the

Contract and SWL terminated the Contract before those payments became due.

This 31st day of March, 2008.

Respectfully submitted,

/s/ Frederick L Wright______

Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax

Attorneys for Plaintiff

CERTIFICATE OF FILING

I hereby certify that on March 31, 2008, a copy of the foregoing Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact was filed electronically. I understand the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Frederick L Wright______
Frederick L. Wright
Vaughn, Wright & Boyer LLP
One Paces West - Suite 1740
2727 Paces Ferry Road, N.W.
Atlanta, Georgia 30339
(770) 805-9889
(770) 805-9191 Fax