No. 05-297C
(Senior Judge Margolis)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STERLING, WINCHESTER & LONG, L.L.C.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

April 14, 2008

Attorneys for Defendant

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STERLING, WINCHESTER & LONG, L.L.C., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-297C (Senior Judge Margolis) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 7.2(c) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, hereby submits this reply to the brief filed by plaintiff Sterling, Winchester & Long, LLC ("SWL") in opposition to our cross-motion for summary judgment and in support of the plaintiff's motion for summary judgment. In our brief, we established that summary judgment should be entered in favor of the United States and denied SWL.[1]

In our brief, we established that the License Agreement at issue is clear on its face. Def. Mot. 7-12. It grants only intellectual property rights to SWL, and does not grant separate distribution rights. Not only is it entitled "License Agreement," but the provisions SWL has focused on are explicitly subordinate provisions which set forth the terms of the license grant which is the core of the License Agreement. The provision at issue—labeled "Channels of

---

[1] Sterling, Winchester & Long, LLC's Response and Reply will be cited as "Pl. Resp. _." Our Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment will be cited as "Def. Mot. _." SWL's exhibits will be cited as "Pl. Ex. _," with parallel citations to our Appendix contained in square brackets.

Distribution"— lists the distribution channels in which SWL is permitted to exercise its license. Further we demonstrated that the License Agreement does not refer to any United States Postal Service ("USPS") facilities or publications in setting forth the terms of the license grant. Even assuming that SWL subjectively intended that the License Agreement also embody a separate distribution right, the contract cannot be interpreted to include this right because this was not the mutual intent of the parties as expressed via the contract.

We also established that, although resort to extrinsic evidence is not necessary, the extrinsic evidence in the record confirms that the License Agreement granted only an intellectual property license. Def. Mot. 12-14. SWL had repeatedly sought a distribution right, and had repeatedly been denied. Further SWL was in the process of separately negotiating a distribution right with the distinct division of UPS which handled such grants.

Finally, we showed that SWL violated the plain terms of the License Agreement by failing to make any royalty payments after its first payment. Def. Mot. 14-15.

In its response, SWL explicitly concedes that the meaning of the License Agreement is clear, yet still seeks to have the court consider "context," "intent of the parties," and evidence of post-agreement communications to show this allegedly clear meaning. Pl. Resp. 2-7. Notably, SWL does not contend at all with the extrinsic evidence we pointed to in the alternative, but merely asserts that this Court cannot enter summary judgment should this Court find resort to extrinsic evidence necessary. Pl. Resp. 8-10. SWL also fails to contest our assertion that, should this Court find no breach by the United States, SWL clearly breached the unequivocal terms of the License Agreement by ceasing royalty payments. Pl. Resp. 10-12.

# ARGUMENT

## I. The Terms Of The License Agreement Are Clear: "USPS Grants SWL A License"

SWL concedes that the terms of the License Agreement are clear, and that extrinsic evidence should not be considered in determining liability. Pl. Resp. 3, 8. At the same time, however, in arguing for its plain language reading of the License Agreement, it relies heavily on what is indisputably extrinsic evidence. To contrast, in establishing the plain meaning of the License Agreement in our brief, we focused on its terms: not only is it entitled "License Agreement," but every other part of the License Agreement demonstrates that a license agreement is all it is. Def. Mot. 7-12. Tellingly, the provision which SWL relies on is an explicit "term and condition" of this license, which states:

> In this Agreement, USPS grants to Licensee a license to use certain names, trademarks, service marks, trade dress and/or copyrights in connection with the manufacture, distribution, advertising, promotion and sale of certain goods, listed below, on the terms and conditions specified below, and in the attached Exhibits A and B, incorporated herein by reference.

Pl. Ex. A, 1[A8]. One condition of this license is that it may only be exercised in certain distribution channels, set forth in a list entitled "Channels of Distribution. Id. The two major obstacles SWL faces in construing the License Agreement to fit its claim are these: (1) the "Channels of Distribution" provision does not grant a right of access to the distribution facilities listed, Def. Mot. 11-12; and (2) the "Channels of Distribution" provision does not include "USPS Philatelic Centers" or the "USA Philatelic Catalog," Def. Mot. 9-11. Because the language of the License Agreement does not permit its claim, SWL improperly points to

extrinsic evidence to support its contrary interpretation, which it nevertheless asserts is “plain” and “unambiguous.” Pl. Resp. 5-6.

With respect to the first obstacle—that the “Channels of Distribution” clause enumerates various channels, including bookstores, without guaranteeing access to those channels—SWL now claims for the very first time that this grant of access is required by the obligation of good faith and fair dealing. Pl. Resp. 7. SWL’s complaint, however, does not contain a claim alleging a breach of the covenant of good faith and fair dealing. Compl. ¶¶ 3, 24, 25. According to SWL’s complaint, USPS breached an explicit term of the contract. Id. It cannot use a response to summary judgment to amend its complaint and change its theory of liability at this late stage. See RCFC 15 (requiring that a party seek leave to amend its complaint); Te-Moak Bands of W. Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1260-63 (Fed. Cir. 1991) (listing several factors, including delay and prejudice that can support denial of leave to amend). Further, SWL’s reliance upon the obligation of good faith and fair dealing proves even more strenuously that the grant of access SWL desires is not in the License Agreement. To the contrary, SWL believes that USPS was required to grant access in order to make good on the promise to grant a license. Pl. Resp. 7. We note that SWL states:

> Where one party owns and exclusively controls distribution channels of a kind explicitly authorized under the Contract, the implied obligation of good faith and fair dealing requires that those distribution channels be made available to the other party unless the contract expressly forecloses those distribution channels, which is not the case here.

Pl. Resp. 7. Leaving aside the fact that SWL has no support for this proposition, by even making it, SWL has acknowledged that authorizing certain distribution channels in a license is separate and distinct from actually making those distribution channels available. This License Agreement

accomplished only the former: authorizing certain distribution channels without also making them available. While conceding that it would be impossible to read the authorization to use the license in bookstores as a grant of access to those bookstores, SWL somehow contends that it is right to read the authorization to use the license in "Philatelic Centers" and "Philatelic Catalogs"—contained in the same provision of the License Agreement— as a grant of access to those channels. Pl. Resp. 6-7. SWL has no substantive response to the proposition that this one provision cannot be interpreted in one way for some of the distribution channels and in a completely different way for the others. See Def. Mot. 8-9.

With respect to the fact that the License Agreement does not refer to either "USPS Philatelic Centers" or the "USA Philatelic Catalog," SWL's response similarly comes up short. Pl. Resp. 4-5. In fact, the only argument SWL can muster in response is to point to communications that took place after the License Agreement was executed to show the meaning of the terms of the License Agreement. See Pl. Resp. 5-6. Of course, this evidence is indisputably extrinsic evidence that cannot be used to show the "plain" and "unambiguous" meaning of the Agreement. See Cray Research, Inc. v. United States, 41 Fed. Cl. 427, 436 (1998).

## II. The Extrinsic Evidence Also Shows That The License Agreement Was Nothing Else

In our brief, we argued in the alternative that if the Court finds it necessary to resort to extrinsic evidence, the extrinsic evidence in the record demonstrates that no grant of access was given via the License Agreement. Def. Mot. 12-14. As we discussed, SWL had explicitly requested that this License Agreement contain a grant of access, and this request was denied. Def. Mot. 12-13. Further, SWL, knowing the License Agreement did not contain a grant of

access, separately sought to negotiate these access rights with the division of USPS which handled such matters. Def. Mot. 13-14.

Rather than contend with this extrinsic evidence, SWL merely asserts that this Court should not consider extrinsic evidence because the License Agreement is clear, an assertion which is wholly noncontroversial, as discussed above. Pl. Resp. 8. SWL does not argue that the extrinsic evidence we presented does not support our interpretation or that it is otherwise unreliable. It merely states that "[i]f . . . the Court finds that the Contract is ambiguous, then a genuine issue of fact obviously remains for trial," Pl. Resp. 10, another noncontroversial proposition. Cray Research, 41 Fed. Cl. at 439. Nevertheless, extrinsic evidence of the sort we presented is permissible to clarify the circumstances (i.e., that a separate process was underway to negotiate a grant of access) or the meaning of terms found within the contract itself (e.g., that "Philatelic Centers" did not refer to "USPS Philatelic Centers" and "Philatelic Catalogs" did not refer to "USA Philatelic Catalog"). See Kmart Corp. v. United States, 31 Fed.Cl. 677, 681 (1994). Whether there is a genuine issue of fact remaining for trial is for this Court to decide on the basis of the evidence presented. We respectfully submit that there is no genuine issue of fact as to what the extrinsic evidence says: the License Agreement contained no grant of access and SWL knew it did not.

## III. Should This Court Find That SWL's Breach Claim Fails, It Must Find In Favor Of USPS On Its Breach Counterclaim

SWL does not contest the central premise of our motion for summary judgment on our counterclaim: if USPS did not breach the Agreement, then SWL did by failing to make its required royalty payments. Def. Mot. 12. SWL merely asserts that it validly terminated the License Agreement due to the material breach of USPS. Pl. Resp. 10. As argued extensively in

our brief, USPS did not breach the License Agreement. If this Court agrees, the evidence is uncontroverted that SWL failed to make its required royalty payments, and therefore breached the License Agreement. Accordingly, should this Court find that SWL's breach claim fails, we respectfully request that this Court enter summary judgment in our favor on our breach counterclaim.

## CONCLUSION

For the foregoing reasons as well as the reasons set forth in our opening brief, the United States respectfully requests that the Court enter summary judgment in its favor on Sterling, Winchester, and Long's claims as well as on the counterclaim of the United States.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
MICHAEL F. KIELY
Attorney
Law Department
United States Postal Service
Washington, D.C. 20260-1127
Tel: (202) 268-4037

April 14, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of April, 2008, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah